## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:                                          ) | Chapter 11 |
|                                                 ) | |
| KAISER GROUP INTERNATIONAL,                     ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| INC., et al.                                    ) | |
|                                                 ) | |
| Debtors                                         ) | |
|                                                 ) | |
|                                                 ) | |
| James D. Pippin and the Class of ICT            ) | |
| Spectrum Bankruptcy Claimants,                  ) | Civil Action No. _____ |
|                                                 ) | |
|                    Appellants,                  ) | |
|              v.                                 ) | |
|                                                 ) | |
| Kaiser Group International, Inc., et al.         ) | |
|                                                 ) | |
|                    Appellees.                   ) | |
|                                                 ) | |

### BRIEF IN SUPPORT OF
### EMERGENCY MOTION FOR EXPEDITED ACTION ON THE
### APPEAL OF THE BANKRUPTCY COURT'S JUNE 2, 2005 ORDER

Pamela S. Tikellis (DE Bar # 2172)          William R. Kane
A. Zachary Naylor  (DE Bar # 4439)          Michael S. Tarringer
CHIMICLES & TIKELLIS LLP                     MILLER FAUCHER AND CAFFERTY LLP
One Rodney Square                            One Logan Square, Suite 1700
P.O. Box 1035                                18th and Cherry Streets
Wilmington, DE  19899                        Philadelphia, PA  19103
Tel: (302) 656-2500                          Tel: (215) 864-2800

*Attorneys for Appellants,*

*James D. Pippin and the Class of ICT Spectrum Bankruptcy Claimants*

Dated:  June 10, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING . . . . . . . . . .1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

      A.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

      B.   Rule 8005 Provides the Bankruptcy Court With Jurisdiction
           To Preserve the Status Quo Pending an Appeal . . . . . . . . . . . . . . . . 10

      C.   Claimants Will Suffer Substantial Irreparable Injury
           Without A Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

      D.   A Balancing of Equities Weighs Heavily in Favor
           Of Granting A Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

## TABLE OF AUTHORITIES

**CASES**

In re Abbotts Dairies of Pennsylvania, Inc.,
    788 F.2d 143 (3rd Cir. 1986) ............................................................9

In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation,
    252 B.R. 309 (W.D. Pa. 1999) ..........................................................8

In re Best Reception Systems,
    219 B.R. 988 (Bankr. E.D. Tenn. 1998) ............................................8

In re Dakota Rail, Inc.,
    111 B.R. 818 (Bankr. D. Minn.1990) ................................................8

In re Duncan,
    107 B.R. 758 (W.D. Okla.1988) ......................................................10

In re Edwards,
    228 B.R. 573 (Bankr. E.D. Pa. 1999) ................................................8

Fellheimer, Eichen and Braverman P.C. v. Charter Technologies, Inc.,
    57 F.3d 1215 (3d Cir.1995).................................................................9

In re Gleasman,
    111 B.R. 595 (Bankr. W.D. Tex.1990) ......................................10, 11

Haines v. Liggett Group, Inc.,
    975 F.2d 81 (3d Cir.1992).................................................................10

In re Public Service Co. of New Hampshire,
    116 B.R. 347 (Bankr. D.N.H.1990) .................................................10

In re Rhoten,
    31 B.R. 572 (D.Tenn.1982) .............................................................10

In re Richardson,
    15 B.R. 930 (Bankr. E.D. Pa.1981) ...................................................8

In re Roth American, Inc.,
    90 B.R. 94 (Bankr. M.D. Pa. 1988) ...................................................8

In re Sharon Steel Corp.,
    159 B.R. 730 (Bankr. W.D. Pa.1993) ................................................8

In re Sharon Steel Corp.,
    871 F.2d 1217 (3d Cir.1989)..................................................................................................9

United States v. United States Gypsum Co.,
    333 U.S. 364 (1948)..........................................................................................................10

## STATUTES

28 U.S.C. § 158(a) ..................................................................................................................1

## RULES

Fed. R Bankr. P. Rule 8005 ..............................................................................................6, 9

Fed. R. Bankr. P. Rule 8005     ...................................................................... passim

Fed. R. Bankr. P. Rule 8011(d)    ...............................................................................1

Fed. R. Bankr. P. Rule 8013 ....................................................................................................9

## OTHER

Norton Bankruptcy Rules, 2004-2005, 2d Ed. ............................................................10

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

Appellants James D. Pippin and the Class of ICT Spectrum Claimants

("Appellants" or the "Spectrum Claimants") have appealed under 28 U.S.C. § 158(a)

from the Order entered by the Honorable Mary F. Walrath, Chief Bankruptcy Judge, on

June 2, 2005, denying the Spectrum Claimants' Motion for a Stay of the De-Registration

of Kaiser Group Holdings Common Stock Pending the Final Disposition of the

Bankruptcy Court's February 2, 2004 Order. *See* Exhibit A to the Tarringer Aff.[1]  The

Spectrum Claimants have filed this appeal on an emergency basis and hereby request

expedited action pursuant to Bankruptcy Rule 8011(d) on the ground that, to avoid

irreparable harm, relief is needed in less time than would normally be required for the

District Court to review and consider a bankruptcy appeal.

On February 2, 2004, the Bankruptcy Court entered an Order granting the Pippin

Motion for Resolution of the Class Claim after a full hearing on the matter.  Exhibit B to

Tarringer Aff.  In satisfaction of their Class Proof of Claim, the February 2 Order

awarded Pippin and the Class 247,350 shares of Kaiser Group Holdings New Common

Stock in addition to the 15,625 shares of New Common Stock already due to be

distributed to Pippin and the Class for the 1.5 million shares of Old Kaiser stock that they

received in 1998 at the time of the ICF Kaiser—ICT Spectrum Merger. *Id.*

Debtors then filed a Motion for Reconsideration of the Bankruptcy Court's

February 2 Order.  The motion was denied on March 24, 2004, after a full hearing on the

matter.

---

[1]  The Affidavit of Michael S. Tarringer in Support of Emergency Motion for Expedited
Action on the Appeal of the Bankruptcy Court's June 2, 2005 Order ("Tarringer Aff.")
with accompanying exhibits is being filed concurrently with Appellants' Motion and
Supporting Memorandum.

On March 29, 2004, Debtors filed a Notice of Appeal of the Bankruptcy Court's

February 2 Order. The appeal has been fully briefed and is currently pending before this

Court.

Later, when the Spectrum Claimants attempted to execute on the Bankruptcy

Court's judgment, Debtors moved for a Stay of the Bankruptcy Court's February 2, 2004

Order. On October 5, 2004, the Bankruptcy Court entered an Order granting Kaiser's

Motion for a Stay pending the final completion of all appellate proceedings, conditioned

on Kaiser continuing to set aside and hold all 262,975 shares of New Common Stock for

the benefit of the Spectrum Class, pending further Order of the Bankruptcy Court. *See*

Exhibits D and E to Tarringer Aff. Until a Final Order is issued regarding their claim, the

Spectrum Class can do nothing but wait.[2]

In an effort to protect the value of the shares of New Common Stock that the

Bankruptcy Court awarded, the Spectrum Class requested that a supersedeas bond be

posted by Debtors during the pendency of the appeal of the Bankruptcy Court's February

2, 2004 Order. At the close of the August 18, 2004 Hearing on Kaiser's Motion for a

Stay, the Bankruptcy Court denied the bond request, concluding that the rights of the

Spectrum Class, as claimants with Equity Interests, is limited only to stock under the

---

[2] Even the 15,625 shares of Kaiser New Common Stock that the Spectrum Class is
entitled to receive in exchange for the 1.5 million Old Kaiser Common Stock shares that
they were issued at the time of the 1998 Kaiser-Spectrum merger cannot be distributed to
the Spectrum Class because these shares are part of the Spectrum Class' "Equity
Interest," as defined by the Plan, which includes any rights (disputed and undisputed) the
Spectrum Class has by virtue of their status as holders of Old Kaiser Common Stock
shares. A bankruptcy hearing was held on December 8, 2003, regarding a motion filed
by Pippin and the Class for Distribution of Kaiser New Common Stock that sought to
have Debtors distribute the 15,625 New Common Stock shares for Old Kaiser shares that
the Spectrum Class received at the time of the Kaiser-Spectrum merger. Because of the
way the Plan defines "Equity Interest," however, the Bankruptcy Court concluded that no
such distribution could take place prior to a final resolution of the Class claim.

2

Plan.[3] *See* Hearing Transcript, dated 8/18/04, at 26-27, attached as Exhibit C to Tarringer

Aff. Now, over four years after the Plan was confirmed [4], Debtors are deliberately taking

action to change the registration status of the very stock that the Bankruptcy Court

awarded to the Spectrum Class by effectuating a significant change in the financial

structure of the Company to the detriment of the Spectrum Class whose ability to market

their shares will be severely impaired if Kaiser goes forward with its deregistration plans.

## II.    STATEMENT OF FACTS

Since the effective date of the Kaiser's Plan of Reorganization, including at the

time of the 2004 hearings on the Motion for Resolution of the Spectrum Class Proof of

Claim, Kaiser Group Holdings New Common Stock has been registered with the

Securities and Exchange Commission ("SEC").[5]

On April 7, 2005, Kaiser announced that its Board of Directors has approved a 1-

for-20 reverse stock split of its common stock. The proposed reverse split is subject to

approval by the holders of a majority of the voting power of issued and outstanding

---

[3] In section 14.03 of the Plan, Kaiser agrees to make and keep public information available, as those terms are understood and defined in SEC Rule 144, so long as the Company remains subject to the periodic reporting requirements under Section 13 or 15(d) of the Exchange Act. Exhibit I to Tarringer Aff.

[4] On December 5, 2000, the Bankruptcy Court confirmed Kaiser's Second Amended Plan of Reorganization. The Confirmation Order became effective on December 18, 2000.

[5] Kaiser New Common Stock is currently being traded over-the-counter on the "Pink Sheets" (common symbol KGHI.PK; preferred symbol KGHIP.PK). The "Pink Sheets" is a centralized quotation service that collects and publishes market maker quotes in real time, primarily though its web site, http://www.pinksheets.com.

3

shares of Kaiser Group common and preferred stock at Kaiser's next annual meeting, currently expected to be held some time in July of this year.[6]

The express purpose of the reverse split is to reduce the number of Kaiser stockholders to below 300, thereby allowing the Company to terminate its SEC reporting obligations. *See* Kaiser's Schedule 14A Preliminary Proxy Materials, attached as Ex. A to the Spectrum Class' Bankruptcy Motion (Exhibit F to Tarringer Aff.) at 5. As a result, Kaiser would no longer be required to file periodic reports, including Forms 10-K, 10Q and 8-K, and other information with the SEC, which Kaiser claims would result in cost-saving benefits to the Company.[7]

At the May 31, 2005 hearing before the Bankruptcy Court, the Spectrum Claimants argued that Kaiser's plan to deregister their common stock not only will negatively impact its marketability, but almost certainly will diminish its value to the detriment of the Spectrum Class and that this substantial injury to the Spectrum Class far outweighs any supposed cost savings benefit to Debtors that may result from

---

[6] "If put to a shareholder vote, the proposal is likely to pass, as two board members proposing the reverse split control approximately 60% of the shares outstanding. The proposal will benefit these controlling shareholders at the expense of minority shareholders." *See* McCann Decl., Exhibit B to Spectrum Stay Motion, attached as Exhibit F to Tarringer Aff.

[7] On page 18 of Kaiser's Schedule 14A, the Company states that it "is undertaking the Reverse Split at this time because, among other reasons, the Company believes that it will save substantial costs associated with having a significant number of small shareholders and compliance with the SEC Reporting Obligations. However, the Company's cost saving estimates may be inaccurate, and the actual savings to be realized from terminating the Company's SEC Reporting Obligations might be higher or lower than the Company's estimates." *See* Exhibit A to Claimants' Stay Motion, attached as part of Exhibit F to Tarringer Aff.

discontinuing the Company's reporting obligations.[8]  The Bankruptcy Court denied the

Spectrum Claimants' request to maintain the status quo, concluding that the it lacked

jurisdiction to get involved in post-confirmation corporate governance matters, even

"assuming [Kaiser' plan to deregister its stock is being done] just to deprive [the

Spectrum Class] of the value of [their] claims."  Exhibit H to Tarringer Aff. at 36.  The

Bankruptcy Court also ruled that it did not have the authority to issue any type of relief to

the Spectrum Claimants during the pendency of the appeal of the Bankruptcy Court's

February 2, 2004 Order under Kaiser's Plan of Reorganization.  *Id.  See also* Kaiser

Second Am. Plan of Reorganization, Exhibit I to Tarringer Aff.

In order to avoid irreparable harm resulting from Kaiser's immediate plans to

deregister its Common Stock, the Spectrum Claimants' hereby request expedited

consideration of their Appeal of the Bankruptcy Court's denial of their Motion.  Here,

emergency consideration is appropriate in order to maintain the status quo pending the

resolution of all appeals regarding the stock awarded to the Spectrum Claimants in

satisfaction of their Class Claim.

## III.    SUMMARY OF ARGUMENT

In March of 2004, Kaiser appealed the Bankruptcy Court's February 2, 2004

Order awarding the Spectrum Class a substantial number of shares of Kaiser Group

Holdings common stock.  With the appeal still pending and despite the express terms of a

---

[8]  In support of their motion, the Spectrum Claimants submitted the Declaration of Dr.
Craig McCann, President of Securities Litigation and Consulting Group. Ex. B to
Spectrum Claimants' Motion, attached as part of Exhibit F to Tarringer Aff.  According
to Dr. McCann, the Spectrum Claimants, as minority shareholders, are likely to suffer
substantial harm, many orders of magnitude larger than any supposed cost savings that
may result from the deregistration of Kaiser's common stock.  McCann Decl. at ¶ 14.
Kaiser offered no evidence to rebut Dr. McCann's conclusions.

conditional Stay[9] entered by the Bankruptcy Court, Kaiser now plans to deregister its common stock after initiating a 1-for-20 reverse-stock split. Kaiser's efforts to voluntarily terminate the registration of its common stock will have a substantial, negative impact on the value of Kaiser stock and greatly restrict both the marketability of the stock and the information now made available to the investing public.

As the prevailing party in the underlying bankruptcy litigation, the Spectrum Claimants filed with the Bankruptcy Court a Motion to Stay Kaiser's efforts to deregister the "New Common Stock" that was awarded to Claimant Pippin and the Class back on January 20, 2004, pending final disposition of the appeal of the Bankruptcy Court's February 2, 2004 Order.

On May 31, 2005, the Bankruptcy Court held a hearing on the matter and denied the motion, ruling, among other things, that no jurisdiction existed for the Bankruptcy Court to get involved in post confirmation corporate governance matters, despite the inequity of the circumstances. Hearing Transcript, dated 5/31/05, at 32-33 (attached in full as Exhibit H to Tarringer Aff.). Bankruptcy Rule 8005 provides, however, that "the bankruptcy judge may ... make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Fed. R. Bankr. P. Rule 8005.

Here, the marketability of Kaiser New Common Stock almost certainly will diminish between now and the end of the appellate process as a result of Kaiser's planned deregistration of its common stock with the SEC. As a result, the Bankruptcy Court erred

---

[9]  Debtors sought and obtained a stay of execution, without posting a supersedeas bond. The Stay was expressly conditioned on Kaiser agreeing to hold 262,975 shares of Kaiser New Common Stock for the Spectrum Claimants pending final resolution of all appeals. *See* Exhibit D to Tarringer Aff.

in refusing to enter a Stay or grant other relief to secure Pippin and the Class, as the prevailing party, against Kaiser's efforts to change the status quo to the detriment of the Spectrum Claimants, who have been forced to forgo execution on the Bankruptcy Court's judgment during the course of Debtors' appeal.

## IV.   **ARGUMENT**

At the close of the January 20, 2004 Bankruptcy hearing on the Spectrum Claimants' Motion for Resolution of the Class Claim, the Bankruptcy Court awarded the Spectrum Class 247,350 shares of Kaiser Group Holdings common stock in addition to 15,625 shares of New Common Stock already due to be distributed to Pippin and the Class. See Bankruptcy Court Order, dated 2/2/04, attached as Ex. B to Tarringer Aff. While the Bankruptcy Court has ruled that the Spectrum Claimants are only entitled to stock under the Second Amended Plan of Reorganization (the "Plan"), it is equally clear that since the effective date of the Plan, Kaiser Group Holdings New Common Stock has been registered with the Securities and Exchange Commission. As a result, all of the other claimants entitled to stock under Kaiser's Plan have enjoyed the benefit of the same type of stock. Now, Kaiser plans to de-register its common stock while the Debtors' appeal of the Bankruptcy Court's Order awarding a substantial number of Kaiser common shares to the Spectrum Class is pending before this Court. If Kaiser proceeds with the deregistration, the Spectrum Claimants will be treated in a way that is materially different when compared with other bankruptcy claimants who received stock under the Plan. Kaiser's proposal is not contemplated under the Plan or the October 5, 2004 Stay Order issued by the Bankruptcy Court; places the Spectrum Claimants at a material disadvantage as compared to other claimants; and is inequitable.

In order to obtain a stay pending appeal under Bankruptcy Rule 8005, a movant

must establish the elements necessary to obtain a preliminary injunction:

> (1) a strong likelihood of success on the merits of the appeal[10];

> (2) the movant will suffer substantial irreparable injury if the stay is denied;

> (3) substantial harm will not be suffered by other parties if the stay is granted; and

> (4) issuance of the stay would not harm the public interest.

*In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation*, 252

B.R. 309, 321 (W.D. Pa. 1999) (citing *Family Kingdom*, 225 B.R. at 69; *In re Blackwell*,

162 B.R. at 119; *In re Sharon Steel Corp.*, 159 B.R. 730, 733 (Bankr. W.D. Pa.1993)).

> While some courts have found that the movant's failure to
> persuade the court regarding any one of these factors is
> sufficient to deny the stay, *e.g. In re Blackwell*, 162 B.R. at
> 118, "the more common approach ... is to balance all
> factors in making this determination.  *E.g., In re Dakota
> Rail, Inc.*, 111 B.R. 818 (Bankr. D. Minn.1990); *In re
> Richardson*, 15 B.R. 930, 931 (Bankr. E.D. Pa.1981)." *In
> re Edwards*, 228 B.R. 573, 574-76 (Bankr. E.D. Pa. 1999).
> Stated otherwise, a court "should realize that these four
> factors structure the inquiry.  However, no one aspect will
> necessarily determine its outcome.  Rather, proper
> judgment entails a 'delicate balancing of all elements.' " *In
> re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr. M.D. Pa.
> 1988) (citations omitted).

*Allegheny Health*, 252 B.R. at 321.  Even assuming that the Spectrum Class will suffer

harm from the deregistration of Kaiser Group Holdings common stock from the resulting

---

[10]   As demonstrated in the Spectrum Claimants' motion papers before the Bankruptcy
Court, the Bankruptcy Court's decision granting Claimants' Motion at the January 20,
2004 Hearing clearly recognized the viability of such a claim and how its value should be
calculated and was based on well-established bankruptcy rules and principles.
Claimants' Supp. Mem. at pp. 8-9  (citing Hearing Transcript, dated 1/20/04, at 35-37),
attached as Ex. F to Tarringer Aff.  *Cf. In re Best Reception Systems*, 219 B.R. 988, 994
(Bankr. E.D. Tenn. 1998) (serious questions going to merits of court's conclusion were
not created by issue on appeal, as "court was simply following controlling authority by
which it is bound . . . .").

lack of marketability and inevitable diminishing value, the Bankruptcy Court ruled that it

had no power to grant any relief to Claimant Pippin and the Class. Exhibit H to Tarringer

Aff. at 32-37. Bankruptcy Rule 8005 provides, however, that "the bankruptcy judge may

. . . make any other appropriate order during the pendency of an appeal on such terms as

will protect the rights of all parties in interest." Fed. R. Bankr. P. Rule 8005.

Accordingly, the Bankruptcy did have jurisdiction in this matter to issue a Stay, or other

appropriate relief, under Bankruptcy Rule 8005. Indeed, the relief sought by the

Spectrum Claimants would require no more than an Order compelling Kaiser to comply

with the letter and the spirit of the Stay Order issued as a result of Kaiser's own motion.

Exhibit D to Tarringer Aff.

A.    **Standard of Review**

This Court must exercise plenary review of the choice and application of the legal

standard applied by the bankruptcy court. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222

(3d Cir.1989); *In re Abbotts Dairies*, 788 F.2d 143, 147 (3rd Cir. 1986). The lower court's

factual findings are reviewed to determine if they are clearly erroneous. *See Sharon*

*Steel Corp.*, 871 F.2d at 1221; Fed. R. Bankr. P. 8013 ("findings of fact shall not be set

aside unless clearly erroneous"). A factual finding is clearly erroneous if it is

"completely devoid of minimum evidentiary support displaying some hue of credibility

or ... bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen*

*and Braverman P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995).

Findings may also be deemed clearly erroneous where there may be some evidence to

support them, but the reviewing court is left with "the definite and firm conviction that a

mistake has been made." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir.1992)

(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"Although some courts have stated the decision of the bankruptcy court is

reversable only on a showing of abuse of discretion, *see In re Rhoten*, 31 B.R. 572, 577

(D.Tenn.1982); *In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D. Tex.1990), the

provisions of Rule 8005 clearly contemplate that the District Court makes a de novo

review, which is what some other district courts appear to be doing." *See In re Public*

*Service Co. of New Hampshire*, 116 B.R. 347, 349 n.2 (Bankr. D.N.H.1990) (*citing In re*

*Duncan*, 107 B.R. 758 (W.D. Okla.1988)).

### B.       Rule 8005 Provides the Bankruptcy Court with Jurisdiction to Preserve the Status Quo Pending an Appeal.

Bankruptcy Rule 8005 provides in relevant part:

> A motion for a stay of the judgment, order or decree
> of a bankruptcy judge, for approval of a supersedeas bond,
> or for other relief pending appeal must ordinarily be
> presented to the bankruptcy judge in the first instance.
> Notwithstanding Rule 7062 but subject to the power of the
> district court and the bankruptcy appellate panel reserved
> hereinafter, the bankruptcy judge may suspend or order the
> continuation of other proceedings in the case under the
> Code or **make any other appropriate order during the
> pendency of an appeal on such terms as will protect the
> rights of all parties in interest.** A motion for such relief,
> or for modification or termination of relief granted by a
> bankruptcy judge, may be made to the district court or the
> bankruptcy appellate panel, but the motion shall show why
> the relief, modification, or termination was not obtained
> from the bankruptcy judge. The district court or the
> bankruptcy appellate panel may condition the relief it
> grants under this rule on the filing of a bond or other
> appropriate security with the bankruptcy court.

Norton Bankruptcy Rules, 2004-2005, 2d Ed., 560-561 (emphasis added).

"Rule 8005 is by its design a flexible tool which permits a bankruptcy court to

uniquely tailor relief to the circumstances of the case, so that the appellate process will

neither undo nor overwhelm the administration of the bankruptcy case." *Gleasman v.*

*Jones, Day, Reavis & Pogue (In re Gleasman)*, 111 B.R. 595, 599 (Bankr. W.D. Tex.

1990).

At the hearing on Debtors' Motion for Stay of the Bankruptcy Court's February 2,

2004 Order, Debtors described the breadth of Rule 8005 as follows:

> Rule 8005 of the Federal Bankruptcy Rules gives
> the Court Substantial jurisdiction to condition or stay its
> orders or judgments pending appeal. The thrust of that
> discretion is to permit the Court to balance the rights of the
> parties in interest in order to appropriately protect their
> respective rights. The standards are identical – excuse me
> – similar to but not identical with the standards for common
> injunctive relief.

Hearing Transcript, dated 8/18/04, at 6, attached as Ex. C to Tarringer Aff.

While the breadth of Rule 8005 suited Debtors in their efforts to obtain a Stay,

Kaiser took a contrary position with respect to any relief suggested by the Bankruptcy

Court that would preserve the status quo for the Spectrum Claimants:

> THE COURT: Well, let me ask if I can grant the
> relief if I consider the motion as a motion to modify my
> prior stay order granted at your request?
>
> MR. MEYER: If Your Honor is considering
> eliminating the stay that you granted, I think you can. I
> mean, that's certainly something the Court did, and
> something the Court could undo.
>
> THE COURT: Or modify it.
>
> MR. MEYER: Well, I suppose it would depend on
> the matter in which it was modified.

11

THE COURT: Well, what if I modified it to require that you put the cash value, the current market value, of those stocks in escrow or obtain a bond in that amount?

MR. MEYER: Your Honor, I think that would amount to a modification of the plan, and that would be beyond the Court's jurisdiction notwithstanding a pending appeal.

THE COURT: Well, is it - - is it beyond my power in issuing a stay pending appeal? To require that the value of the stock as of that time be preserved? Or that the Debtor issue a bond - -

MR. MEYER: When the plan doesn't do that? Yes. I mean what - - preserving the status quo pending appeal is preserving the right to the party to the relief that they're seeking. Here the relief provided by the plan - -

THE COURT: Well, quite frankly, the relief provided by the plan didn't contemplate that they'd get a reverse stock split either.

MR. MEYER: No it didn't. Well, and it didn't contemplate that Kaiser may enter into a new contract with somebody that has an effect on the value of the shares, or may experience, you know, a catastrophic loss that has a value on the shares. I mean, there's a number of things that the plan doesn't adjust for. I don't think it is a necessary adjustment. The plan says that everyone receives proportional treatment. That's the essence of Bankruptcy Code treatment on claims. And proportional means proportional interest.

Hearing Transcript, dated 05/31/05, at 22-23, attached as Ex. H to Tarringer Aff.

Appellants' contend that the Bankruptcy Court erred in accepting Debtors' argument that Rule 8005 does not provide a jurisdictional basis for any relief to be obtained by the Spectrum Claimants during the pendency of the Debtors' appeal of the Bankruptcy Court's February 2, 2004 Order. Rule 8005 allows the Bankruptcy Court and this Court to "make any other appropriate order during the pendency of an appeal on such

terms as will protect the rights of all parties in interest." Given Kaiser's deliberate plans to deregister its common stock -- the very stock awarded by the Bankruptcy Court to the Spectrum Claimants – and the adverse effect that deregistration will have on the value of the securities held in escrow for the benefit of the Appellants, relief under Rule 8005 is especially appropriate under these circumstances.

Indeed, unless some type of relief is obtained in short time, the Spectrum Claimants will have no recourse but to sit and watch the stock that they have been awarded in satisfaction of their Class Claim diminish in value and become substantially less marketable due to the deliberate conduct of Debtors. Because Kaiser's actions will, in fact, alter the status quo, emergency relief to the Spectrum Claimants should be granted.

**C.    Claimants Will Suffer Substantial Irreparable Injury Without A Stay.**

Until the final disposition of this Court's February 2, 2004 Order, Claimant Pippin and the Class of former Spectrum shareholders will be unable to make any decisions with respect to both the 15,625 Kaiser shares of New Common Stock that they are due to receive as a result of Old Kaiser shares issued to them at the time of the ICF Kaiser-ICT Spectrum merger and the additional 247,350 New Common Stock shares awarded by the Bankruptcy Court.

In its preliminary proxy statement, Kaiser has identified a number of factors disfavoring its proposed reverse stock split. For example, one such factor is marketability:

> Cessation of Public Sale Opportunities. Following the Reverse Split, the Company will apply for the termination of its SEC Reporting Obligations. **It is possible that the public market for shares of the**

13

> **Company's Common Stock could be substantially reduced**, although the Company intends for its Common Stock to continue to trade thought the Pink Sheets.

Kaiser's Schedule 14A (Exhibit A hereto), "Substantive Factors Disfavoring the Reverse Split" at 13 (emphasis added), attached as part of Exhibit F to Tarringer Aff. According to Dr. Craig McCann, President of Securities Litigation and Consulting Group, Inc., existing studies of discounts for lack of marketability and of premiums paid for controlling blocks of shares provide a range of estimates for the harm (ranging from 20% to 40%) likely to be suffered by minority shareholders if the controlling shareholders are able to implement their proposal. *See* Dr. McCann's Declaration ("McCann Decl.") (attached to Claimants' Stay Motion as Exhibit B) at ¶ 11, attached as part of Exhibit F to Tarringer Aff.

In addition, upon the deregistration of Kaiser's stock, the Company's common and preferred shares will no longer be listed on the Over-the-Counter Bulletin Board.[11] Furthermore, the proposal will reduce the flow of information to unaffiliated shareholders and make the valuation of minority interests much more difficult, thereby reducing the value independent investors place on Kaiser's stock. *See* McCann Decl. at ¶¶ 9-10.

**D.    A Balancing of Equities Weighs Heavily in Favor of Granting A Stay.**

The single reason raised by Debtors in their preliminary proxy materials as the basis for Kaiser's planned deregistration of its common stock is the expected cost savings

---

[11] "The OTC Bulletin Board (OTCBB) is a regulated quotation service that displays real-time quotes, last-sales prices, and volume information in over-the-counter (OTC) equity securities. An OTC equity security generally is any equity that is not listed or traded on Nasdaq or a national securities exchange. OTCBB securities include national, regional, and foreign equity issues, warrants, units, American Depositary Receipts (ADRs), and Direct Participation Programs (DPPs)." OTC Bulletin Board website, http://www.otcbb.com/aboutOTCBB/overview.stm

associated with meeting the regulatory reporting requirements.  The cost savings

estimated by Debtors, however, may not even be accurate.  In this regard, the Company

states that:

> The Company is undertaking the Reverse Split at
> this time because, among other reasons, the Company
> believes that it will save substantial costs associated with
> having a significant number of small shareholders and
> compliance with the SEC Reporting Obligations.
> **However, the Company's cost saving estimates may be
> inaccurate, and the actual savings to be realized from
> terminating the Company's SEC Reporting Obligations
> might be higher or lower than the Company's estimates.**

Kaiser's Preliminary Proxy Statement (Exhibit A to Claimants' Stay Motion) at 18

(emphasis added), attached as part of Exhibit F to Tarringer Aff.  Furthermore, the

Company anticipates that it will continue to incur costs associated with soliciting proxies

for purposes of its annual meeting as required under Delaware law, as well as meeting

other state corporate law requirements.  *Id.* at 10.  In addition, there inevitably will be

costs associated with the reverse stock split and the Company's present intention to report

its quarterly and annual financial results through its web site and in press releases.  *See*

McCann Decl. at ¶¶ 12-14.  Thus, the harm suffered by the Spectrum Claimants will be

much greater than any real cost savings benefit claimed by Kaiser.  *Id.* at ¶13.

 Furthermore, the public will be impacted negatively if Kaiser is permitted to

proceed with its efforts to deregister its common stock.  In addition to substantially

reducing the public market for shares of the Company's Common Stock, the benefit from

Kaiser continuing to make public information available through, among other things, the

filing of annual and quarterly reports with the SEC will no longer be available.  Indeed,

Kaiser's preliminary proxy materials concede:

> **Upon terminating the Company's SEC Reporting Obligations, the Company will no longer file, among other things, annual or quarterly reports with the Commission.** Information regarding the Company's business, results of operations and financial condition that is currently available to the general public and the Company's investors will not be available once the Company terminates the registration of the Company's securities and the Company's SEC Reporting Obligations. **As a result of the Company's SEC Reporting Obligations, the remaining stockholders after the Reverse Split will not receive the benefit of the protection provided to stockholders of a company subject to SEC Reporting Obligation,** including, but not limited to, certain corporate governance, reporting, and management certifications required under the Sarbanes-Oxley Act of 2002 and disclosure and liability applicable to reports and statements made pursuant to the requirements of the Exchange Act. The Company intends to continue to report to its stockholders in accordance with Delaware Law. In addition, the Company presently intends to report its quarterly and annual financial results through its web site and in press releases.

Kaiser Schedule 14A (attached as part of Ex. F to Tarringer Aff.) at 13-14 (emphasis added).

Remarkably, Kaiser's Board of Directors has taken the position that the "Cessation of Publicly Available Information" does not make the transaction unfair to unaffiliated stockholders "because any detriment to unaffiliated stockholders that may result from the termination of the registration of the Company's securities and the Company's periodic filings will be offset by the anticipated cost-saving benefits to the Company of no longer publicly filing such reports." *Id.* This reasoning is clearly self-serving, especially in light of the actual cost savings that would result. *See* McCann Decl. at ¶¶ 9, 13 and 14. Thus, the public interest can only benefit from Kaiser continuing to report to the SEC under its regulatory requirements. *Id.* at ¶15 ("If Kaiser's

proposal passes, these insiders who already have an informational advantage will continue to have the same information but minority shareholders and potential minority shareholders will have much less information.").

## V.   CONCLUSION

For all of the above reasons, the Spectrum Claimants request that this appeal of the Bankruptcy Court's June 2, 2005 Order be reviewed and considered on an emergency basis. After expedited review, Debtors should be directed to cease all common stock deregistration efforts, pending the final disposition of the February 2, 2004 Order granting the Pippin Motion for Resolution of the Class Claim. Alternatively, Pippin and the Class request that a supersedeas bond be posted to protect the Spectrum Claimants against any losses resulting from Kaiser's actions.

Date:  June 10, 2005

Respectfully Submitted:

Pamela S. Tikellis (DE Bar # 2172)
A. Zachary Naylor  (DE Bar # 4439)
**CHIMICLES & TIKELLIS LLP**
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899
Tel: (302) 656-2500

William R. Kane
Michael S. Tarringer
**MILLER FAUCHER AND CAFFERTY LLP**
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA  19103
Tel:  (215) 864-2800

Attorneys for Appellants,
James D. Pippin and the Class of ICT Spectrum Claimants

17