# EXHIBIT   C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 00-2263(MFW)
                                    .
                                    .
  KAISER GROUP INTERNATIONAL,       . 824 Market Street
    INC., et al,                    . Wilmington, Delaware  19801
                                    .
                Debtors.            .
                                    . August 18, 2004
. . . . . . . . . . . . . . . . . . . 4:02 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                Saul Ewing LLP
                                By:  DONALD J. DETWEILER, ESQ.
                                222 Delaware Avenue
                                Suite 1200
                                Wilmington, DE  19801

                                Squire, Sanders & Dempsey, LLP
                                By:  CHRISTOPHER MEYER, ESQ.
                                312 Walnut Street
                                Suite 3500
                                Cincinnati, OH  45202

Audio Operator:                 Danielle Cherry

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

APPEARANCES (Cont'd.):


For ICT Spectrum Claimants:    Miller Faucher And Cafferty LLP
                               By:  MICHAEL S. TARRINGER, ESQ.
                               One Logan Square, Suite 1700
                               18th & Cherry Streets
                               Philadelphia, PA  19103

1        THE COURT:  Good afternoon.

2        MR. DETWEILER:  Good afternoon, Judge Walrath.  Your

3  Honor, may it please the Court.  Donald Detweiler of Saul Ewing

4  on behalf of Kaiser Group International, Inc. and its

5  reorganized entities.  With me today, Your Honor knows Mr.

6  Meyer -- Christopher Meyer, Squire Sanders firm.

7        THE COURT:  Yes.

8        MR. DETWEILER:  Your Honor, we filed yesterday an

9  amended notice of agenda matters.  I don't know if Your Honor

10  has that.

11        THE COURT:  I have it.

12        MR. DETWEILER:  The first matter was a stipulation

13  for modification of discharge injunction and resolution of

14  claims of claim number 1424.

15        THE COURT:  I entered the order already.

16        MR. DETWEILER:  Okay.  I didn't check the docket on

17  that.  I apologize.

18        THE COURT:  That's all right.

19        MR. DETWEILER:  Your Honor, matters number two and

20  three are somewhat interrelated.  Two is the motion of claimant

21  Pippin for approval of a plan of distribution, and then item

22  number three is the reorganized entities' motion for stay

23  pending appeal.  We leave it in Your Honor's discretion as to

24  which way to go from here, but it seems that the motion for

25  stay pending appeal should be heard first prior to the motion

J&J COURT TRANSCRIBERS, INC.

1  as that would moot the motion --

2       THE COURT:  Well, it wouldn't moot it, but it would
3  stay it.

4       MR. DETWEILER:  It would stay it.  Yes, that's a
5  better way to say it, Your Honor.  So Mr. Meyer is ready to
6  present the motion for stay pending appeal to Your Honor.

7       THE COURT:  All right.  Let's hear that first.

8       MR. DETWEILER:  Okay.  Thank you, Your Honor.

9       MR. MEYER:  Thank you, Your Honor.  For the record,
10  Christopher Meyer, Squire, Sanders, and Dempsey, on behalf of
11  Kaiser.  Your Honor, these two motions are another facet of the
12  continuing claim battle between Kaiser and the ICT claimants.
13  An earlier ruling by Your Honor subordinating their claim was
14  appealed to the District Court by ICT and affirmed.  Thereafter
15  on February 2nd your order was entered which held that as a
16  combination of an equity interest and a subordinated claim that
17  the ICT claimants were entitled to a distribution of
18  approximately 263,000 common shares.  Kaiser has appealed that
19  ruling to the District Court.  The briefing has been completed,
20  but no appellate decision has been rendered as yet.

21       So what we have today is a claim dispute that remains
22  on appeal.  We believe that the terms of the confirmed Kaiser
23  plan, which is binding on the ICT claimants, provide a complete
24  basis to deny their motion for approval of a plan of
25  distribution to the extent that it purports to require Kaiser

1  to distribute securities prior to a final determination of the

2  pending appeal.  We have not sought to argue about the internal

3  mechanics of the plan.  We believe that once the entitlement is

4  final, that the specifics of the distribution are really

5  intermural to the claimants and not something in which we have

6  a direct interest, however, we do take issue with the motion to

7  the extent that we believe that it contravenes the provisions

8  of the plan.

9       Under the terms of Kaiser's plan of reorganization no

10  creditor or equity security holder is entitled to a

11  distribution while its claim remains in dispute.

12       THE COURT:  Well then are you arguing the motion for

13  distribution or the stay pending appeal?  If you're correct, no

14  stay pending appeal is needed.

15       MR. MEYER:  As Mr. Detweiler said, I think they're

16  somewhat intertwined.  I think Your Honor could rule on either

17  ground, and I think they are tied.  As we read Your Honor's

18  order, it orders us to set aside shares.  They suggest that

19  they find a basis in that order for a current distribution.  To

20  the extent that there is such a basis in Your Honor's view, we

21  would ask that the order be stayed, so it -- the stay loops

22  back around on the question of whether there is an entitlement

23  under the existing order to a current distribution of common

24  shares.

25       THE COURT:  Well, why should I -- if they're entitled

J&J COURT TRANSCRIBERS, INC.

1  to a distribution now, why should I stay it?

2           MR. MEYER:  Okay.  The brief that we've submitted in
3  support of our motion sets forth the standards for granting a
4  stay pending appeal.  Rule 8005 of the Federal Bankruptcy Rules
5  gives the Court substantial jurisdiction to condition or stay
6  its orders or judgments pending appeal.  The thrust of that
7  discretion is to permit the Court to balance the rights of the
8  parties in interest in order to appropriately protect their
9  respective rights.  The standards are identical -- excuse me --
10 similar to but not identical with the standards for common
11 injunctive relief.  We believe that we meet the requirements to
12 be granted the stay, and for such stay to be issued without the
13 requirement of the supersedeas bond.

14          The first factor for consideration on a motion for
15 stay is whether the appeal presents important legal questions.
16 This element is the area where a stay pending appeal probably
17 differs most from the standards for common injunctive relief.
18 For an injunction motion the comparable factor is the
19 likelihood of success on the merits.  Obviously, a stay pending
20 appeal involves a setting in which the Bankruptcy Court has
21 already ruled on the merits of the issues on appeal.  In such a
22 setting it makes little sense to ask Your Honor to reach a
23 conclusion which undercuts your own earlier substantive
24 decision.  So case law dealing with stays pending appeal have
25 said that you look instead at whether there are important and

J&J COURT TRANSCRIBERS, INC.

1 significant issues for the appeal.  We acknowledge that this
2 Court ruled on the ICT claim in a manner which you believe was
3 merited by the facts of the law, however, we do believe that
4 the issue on appeal presents serious, important, substantial,
5 or difficult issues, and those are some of the terms used by
6 courts.

7          THE COURT:  Well is there a split in the circuits, or
8 is there some dispute as --

9          MR. MEYER:  I don't know that there is any decision
10 that's on all fours with this about a manner in which a dollar
11 denominated claim fits through a plan where the only
12 distribution in the plan is in shares.  So that conversion and
13 the combination of 510(b) with what is a otherwise dollar
14 denominated claim, we're unable to find any decision on all
15 fours let alone a split of the circuits.  So we believe that's
16 a significant issue and one that requires consideration on
17 appeal.

18          The second consideration for granting a stay is
19 irreparable injury.  We think it's beyond serious question that
20 a current -- requiring a current distribution of Kaiser common
21 shares would constitute an irreparable injury to Kaiser.  Once
22 distributed those shares could be sold, and the proceeds could
23 be distributed.  If Kaiser succeeded on its appeal, there is
24 really no way that it could effectively recover the shares or
25 probably even the proceeds of those shares from the parties who

1  have received them.

2          Even the ICT papers acknowledge that a current
3  distribution would probably moot the Kaiser appeal of Your
4  Honor's decision.  That evisceration of an appellant's rights
5  was cited as irreparable harm in both the Fourteen Firearms and
6  also the Coastal States Gas case, the latter being a decision
7  of the Third Circuit.  We believe that that factor also
8  supports the granting of a stay in this case.

9          THE COURT:  Well but the courts have not said that
10  simply because it will moot the appeal is sufficient to find
11  irreparable harm.  Do they?

12          MR. MEYER:  I don't think that there is any factor
13  which is a determinative factor under Rule 8005.  There are
14  considerations that go into a balancing by the Court of the
15  relative rights of the parties, so I agree that there are cases
16  that just say -- that say harm alone does not sustain a
17  conclusion on appeal, but we believe the combination of factors
18  in this case does sustain that burden.

19          The third stay factor is an absence of harm to the
20  appealing parties.  The arguments that are advanced by the ICT
21  claimants pall down to a complaint that they'll have to wait
22  until the appeal is concluded before having a right of
23  distribution.  That process was one that was incorporated in
24  Kaiser's confirmed plan of reorganization, a plan that is
25  binding not only on these plaintiffs -- claimants but also on

J&J COURT TRANSCRIBERS, INC.

1  all other claimants in the case.

2      Moreover, a substantial portion of the delay in
3  resolution is the product of the ICT claimants' own action.
4  They availed themselves of the appellate process in challenging
5  Your Honor's decision on subordination.  In addition, the
6  timing and the process leading up to this current motion were
7  also one of their choosing and not of any action by Kaiser.

8      Your Honor, the potential for delay is inherent in
9  our system of appellate review.  That fact alone we believe
10  cannot support an argument of harm to the appellee for purposes
11  of denying a motion for stay.  If that were the fact, there
12  would never be a case in which one could stay the parties in a
13  status quo pending appeal.  The delay is a necessary part of
14  the process.  That is a process that is afforded parties under
15  the -- our federal system of jurisdiction and argue that the
16  system itself is the basis for irreparable harm to the appellee
17  we believe is an argument without merit.

18      Finally, the fourth factor for consideration is
19  whether the public interest militates in favor of either party.
20  As we said in our brief, we believe that it cannot be said that
21  it is in the public interest to require Kaiser to issue shares
22  against the terms of its plan and to cause what may be a
23  permanent dilution in the rights of third parties pending a
24  resolution of the appeal process now commenced.  Aside from
25  pronouncing our views as self-serving, the ICT claimants don't

1 really offer anything to suggest that public policy requires

2 one thing or another in terms of denying a stay.

3        The final issue presented in the motion is whether

4 the Court should condition a stay by requiring that we post a

5 supersedeas bond.  Having first argued that we were not

6 entitled to a stay, the ICT claimants then abandoned their own

7 argument when they say at footnote five on page six of their

8 brief, "Claimants do not dispute debtors right to a stay

9 pending appeal if a supersedeas bond is posted by Kaiser."

10       Kaiser agrees that we met the standards for the

11 granting of a stay, however, we disagree that such a stay

12 should be conditioned upon the posting of a supersedeas bond.

13 The basis for a bond pending appeal is to assure that the

14 appellant will be able to meet its obligations under the order

15 at the conclusion of the appeal and to protect the other party

16 should the appellant fail to meet those obligations.  In this

17 instance the arguments that ICT advances are based on a flawed

18 premise.  They argue that they are required -- entitled to

19 require Kaiser to protect them against fluctuations in the

20 share price of the common shares that may be issued to them.

21       Your Honor, we believe that they're attempting to

22 manufacture rights equivalent to those in the contract in which

23 they base their original lawsuit.  As the Court may recall,

24 this was a pre-petition agreement in which Kaiser agreed to

25 maintain a floor place for the shares of stock issued in an

J&J COURT TRANSCRIBERS, INC.

1  acquisition transaction.  As indicated by these proceedings,
2  that proved to be a very ill-considered agreement on the part
3  of Kaiser.  In this respect Kaiser has learned from its error.
4  The Kaiser plan contains no such guarantee for any party,
5  either for these claimants or for any other creditor entitled
6  issuance of shares under the Kaiser plan.  What the creditors
7  are entitled to is a calculated number of shares.  The value of
8  the shares may fluctuate from time to time based on market
9  conditions, but no party is entitled to any protection from
10  Kaiser as to share value.

11          As reflected in the Hamlet affidavit that was filed
12  with our brief, Kaiser has already reserved the full number of
13  shares that would be required to be issued to the ICT claimants
14  should this Court's ruling be affirmed on appeal.  Kaiser will
15  maintain that reserve pending the conclusion of litigation.
16  That reserve fully satisfies our potential obligation to the
17  ICT claimants.  That reserve is the full protection that the
18  confirmed plan provides to any holder of a disputed claim.
19  There is no legal or equitable reason to afford these claimants
20  a special protection that was not shared by other creditors in
21  this case.  The price of the common shares on the date the
22  litigation is concluded simply has no bearing on the nature of
23  their rights under the plan.  What they're entitled to is a
24  calculated number of shares, the value of those shares may
25  fluctuate both before or after issuance, but it is not the

1  responsibility of Kaiser to assure an outcome.

2          As an incidental footnote, I would point out that the
3  ICT claimants have hardly been disadvantaged by the movement of
4  the Kaiser common shares since plan confirmation.  Rights of
5  creditors to plan distributions were fixed upon the effective
6  date of the plan, and the reserve went into play at that date.
7  Since that time the price has risen dramatically by a multiple
8  factor.  I confirmed earlier today that the market price of
9  Kaiser common shares at midday today was $25.25 a share.  That
10 is slightly higher than the price quoted prior to public
11 announcement of this Court's February 2nd ruling.

12         Following the announcement the price fell to
13 approximately $19 a share but then returned to prices in the
14 area of $22 in the spring and then to the 24 an 25 dollar
15 levels in the last month or so.  However, although interesting,
16 this share price information doesn't change the basic fact that
17 there is simply no entitlement for any creditor for protection
18 against market fluctuation during litigation.  In their brief
19 the claimants cite as support for their conclusion that such
20 protection is necessary.  The very argument that they made to
21 Your Honor on May 18th.  We believe that citing one's own
22 advocacy is disingenuous at best.

23         As the Court indicated in its colloquy with counsel
24 on May 18th, they're entitled to, "at most escrow of their
25 distribution until the claim is no longer disputed."  As

1  indicated in our affidavit -- the Hamlet affidavit, we are

2  maintaining the contested shares in reserve and will do so

3  until all litigation is completed.  Nothing further should be

4  required of us.  There is no basis for concluding that the

5  pending appeal will have detriment to the rights of the ICT

6  claimants, and no reason that a supersedeas bond is needed to

7  protect any damage that might be done to those rights.

8          So we believe that either (1) based on the plan

9  itself and the provisions of the plan, that the Court should

10  find that there is no right to a current distribution of

11  shares, or if Your Honor believes that they are correct when

12  they suggest that your February 2 order provides a basis for

13  such a distribution, we would ask for a stay of that order

14  pending appeal, and for that stay to be granted without the

15  requirement of a supersedeas bond.

16          THE COURT:  All right.

17          MR. MEYER:  Thank you.

18          MR. TARRINGER:  Good afternoon, Your Honor.  My name

19  is Michael Tarringer.  I'm with the law firm Miller, Faucher,

20  and Cafferty, class counsel in this case for the ICT Spectrum

21  of claimants.  When these parties were last before you, we were

22  here on claimants' request for the posting of supersedeas bond,

23  and during that hearing Your Honor concluded that perhaps we

24  had other relief in the form of submitting a plan of

25  distribution and posting a bond at that time would not be

1 granted because of the other relief.  We have now done that.

2 We have now submitted a plan --

3          THE COURT:  Well, I also suggested there was no

4 motion for stay pending appeal, so --

5          MR. TARRINGER:  That's --

6          THE COURT:  -- you don't post a supersedeas bond if

7 there's no motion for stay pending appeal.

8          MR. TARRINGER:  I understand Your Honor's ruling, and

9 we respect that, and we have now submitted a plan of

10 distribution and request for approval of the notice to the

11 class and for setting of the final approval hearing.

12          In response to our motion the debtors have requested

13 a stay.  They have not made any substantive objections to the

14 form of notice.  They have not made any substantive objections

15 to the plan of distribution, so while I am about to address

16 their motion for a stay, I submit to Your Honor that should you

17 decide to deny their motion for a stay, we ask that you approve

18 our plan of distribution and form of notice, since there are no

19 substantive objections to those documents.

20          As far as their motion for stay, I think Kaiser wants

21 to have it both ways.  They want the Court to protect their

22 rights during the pendency of their appeal, but they don't want

23 the Court to protect claimants' rights.  Now --

24          THE COURT:  Well, I don't think that's true.  They're

25 saying you are protected by the stock escrow.

                    J&J COURT TRANSCRIBERS, INC.

1    MR. TARRINGER:  I understand, and they have provided
2  an affidavit to this Court which states that they've set aside
3  the shares, but what we're talking about here is a balancing of
4  equities, and that's not enough in our view.

5    THE COURT:  Why?

6    MR. TARRINGER:  Because of harm that we will suffer
7  if that stock price goes down during the pending of the appeal.
8  When Your Honor reached her decision back on January 20th, the
9  stock had a price that -- at that point.  It was $23 a share,
10  as I recall.  It had a value, and we were not -- they were not
11  the only ones standing in our way of having the distribution go
12  forward.  We had to submit a plan of distribution, as Your
13  Honor recognized, back on May 18.  Okay.  We've done that now.

14    Now they want to stop us, so we can't get those
15  shares still, but those shares are subject to -- the price of
16  those shares are subject to fluctuation as --

17    THE COURT:  Up and down.

18    MR. TARRINGER:  Up and down, but if it --

19    THE COURT:  But --

20    MR. TARRINGER:  I'm sorry.

21    THE COURT:  But isn't that true under the terms of
22  the plan you wouldn't be entitled to the distribution if your
23  claim is still in dispute, and doesn't that cover an appeal as
24  well as the period before my decision?

25    MR. TARRINGER:  We don't think it does, Your Honor,

J&J COURT TRANSCRIBERS, INC.

1  because we think that once Your Honor reached your decision,

2  Rule 8005 applies and provides a procedural mechanism to

3  preserve the status quo and protect the prevailing party during

4  the pendency of that appeal.  We can't move forward now if Your

5  Honor grants the stay.

6          THE COURT:  Well what about their argument that they

7  don't need a stay?  That the plan provides the stay.

8          MR. TARRINGER:  I submit to Your Honor that we feel

9  that your order as entered said that you will await a

10  submission of plan of distribution, and pending approval of

11  that  plan we can proceed forward.

12          THE COURT:  Where's my order?

13          MR. MEYER:  If it please the Court, I have a copy if

14  you'd like or --

15          THE COURT:  Yes, you may hand it up.  Well let's

16  assume I enter an order approving the plan of distribution and

17  they appeal that, under the terms of the plan are you entitled

18  to the distribution going forward?

19          MR. TARRINGER:  If they appeal it?

20          THE COURT:  Yes, or is it still a disputed claim?

21          MR. TARRINGER:  If they appeal Your Honor's approval

22  of the plan of distribution, I would think that we would have

23  to go then argue in front of the District Court.

24          THE COURT:  I mean it would be a disputed claim.  The

25  stock would not be distributed.

1          MR. TARRINGER:  Well, I -- with all due respect, Your
2  Honor, I guess we would have to worry about that when we cross
3  that path.  Let us take them up there and argue with them.  I
4  would say that the Bankruptcy Court has approved our plan, and
5  they want to stop us.  I mean they have -- that's a procedural
6  mechanism that I'd be happy to deal with when the time comes,
7  but right now we're talking about a balancing of the equities,
8  and it goes both ways.  It goes both ways.

9          We are the prevailing party in this case, and Rule
10  8005 sets forth that you can craft an order that's going to
11  preserve the status quo, so that the prevailing party is
12  protected during the --

13          THE COURT:  But the status quo, if they're correct on
14  the plan, is you don't get the stock until the appeal is
15  resolved.

16          MR. TARRINGER:  Well, they've pointed to two sections
17  in the plan, 6.03 and 6 point -- I think it's 6.02 and 6.03.  I
18  didn't see anything in there that says that you -- that Rule
19  8005 is eliminated, and all the --

20          THE COURT:  No.  No, but 8005 is to maintain the
21  status quo.

22          MR. TARRINGER:  And while protecting the prevailing
23  party's rights.

24          THE COURT:  No.  Well --

25          MR. TARRINGER:  Well, I mean protecting the

1  prevailing party from any --

2         THE COURT:  That's a step, too, but, first of all,

3  the status quo -- if the status quo under the plan is no

4  distribution until there's a final order, the status quo is you

5  don't get the stock.  Now let's go to protecting your rights.

6  Your rights are only to the stock -- the distribution of the

7  stock when the dispute is over, and if they've escrowed the

8  stock, aren't you protected.  Aren't your rights protected?

9         MR. TARRINGER:  If that's the interpretation that

10  Your Honor is incorporating into this analysis -- that it's

11  only -- that the distribution will only go forward until the --

12  well, our position is that the dispute is over in the

13  Bankruptcy Court.  You reached your decision.

14         THE COURT:  Well but what is the definition of

15  dispute under the plan?

16         MR. TARRINGER:  The plan --

17         THE COURT:  Good, and don't we have to determine

18  that?

19         MR. MEYER:  If I might, Your Honor, I think it's the

20  concept of allowed claim that is going to be relevant to this,

21  which is a defined --

22         THE COURT:  So the definition rather than dispute is

23  of allowed?

24         MR. MEYER:  It's of allowed claim, and an allowed

25  claim is only an allowed claim entitled to distribution at a

                    J&J COURT TRANSCRIBERS, INC.

1   time when all litigation on the claim is completed.

2           THE COURT:  Let me see the definition of allowed

3   claim.  "Or as to which any objection has been determined by a

4   final order of the Bankruptcy Court allowing such claim."

5           MR. TARRINGER:  Bankruptcy Court.

6           THE COURT:  Well but final order is capitalized.

7   "Shall mean an order as to which any appeal that has been taken

8   has been finally determined or dismissed, or the time for

9   filing a notice of appeal has expired."  So I think that would

10  mean that you don't have an allowed claim until the District

11  Court renders its decision.

12          MR. TARRINGER:  So the plan in effect, if that's --

13  oh, I'm sorry.  You look like you're going to say something.

14          THE COURT:  No.

15          MR. TARRINGER:  If Kaiser's interpretation of the

16  plan is applied, it is our view that it basically eliminates

17  the protection that Rule 8005 provides for prevailing parties.

18          THE COURT:  No.

19          MR. TARRINGER:  Because we can't have a --

20          THE COURT:  No.

21          MR. TARRINGER:  -- bond posted to protect any

22  diminishing value in the stock during the pendency of the

23  appeal.

24          THE COURT:  No, it doesn't eliminate your rights

25  under 8005.  It simply means that in determining what the

                    J&J COURT TRANSCRIBERS, INC.

1 status quo is under 8005 I have to look to the plan to see what

2 is the status quo, and that if the plan in effect provided that

3 no distribution will occur until the appeal is resolved --

4           MR. TARRINGER:  But we're not -- but what we're

5 seeking here is let's have a bond posted -- we -- one thing

6 that opposing counsel did mention that I agreed with -- a lot

7 of it I didn't agree with, but one thing I did agree with is

8 this.  That we -- that if they post the bond -- and they have

9 provided this Court nothing to show that they can't post the

10 bond -- then we do not object to a stay.

11           THE COURT:  Yes but they're saying they don't need to

12 post a bond.  What they need to do under the terms of -- what

13 they need to do is to protect your right to a distribution

14 under the plan, and under the plan, assuming you win the

15 appeal, you would be entitled to the 263,000 shares of stock.

16 That they put in escrow.  That proves they're able to perform

17 if they lose the appeal, and that's all you're entitled to.

18           MR. TARRINGER:  Well but when Your Honor awarded us

19 that stock, it had a value, and I go back to 8005 says that --

20           THE COURT:  But my order isn't final.  Your right as

21 far as value -- your right to distribution is when the order is

22 final.  That is the appeal is resolved, and that would depend

23 on the value at the time the appeal is resolved.  Wouldn't it?

24           MR. TARRINGER:  I think it's basically the interplay

25 between Rule 8005 and the plan.  Does the -- can a plan

J&J COURT TRANSCRIBERS, INC.

1  eliminate the ability of a claimant who wins a distribution of

2  stock -- can it eliminate that claimant's ability to preserve

3  the value of that distribution?

4          THE COURT:  Well, 8005 does not say you're to

5  preserve the value of the judgment that you got --

6          MR. TARRINGER:  It says --

7          THE COURT:  -- to protect your rights.  But your

8  right is not to the value of the stock as of the day I rendered

9  my decision.

10          MR. TARRINGER:  Well there are -- there certainly is

11  case law out there that where decisions have been rendered by

12  courts to preserve the -- any diminishing value in property

13  that's been awarded to claimants in bankruptcies, and the fact

14  is that property might diminish in value, and they have a bond

15  set, and they say we'll condition the stay on the posting of a

16  bond, because that property may very well go down in value, or

17  it's subject to decrease in value, and that's whey we want the

18  bond for the protection of the prevailing party's interest.

19          THE COURT:  But did those deal with cases where you

20  don't have an allowed claim until it's final order?

21          MR. TARRINGER:  Well that's -- I didn't find any that

22  talked about the interplay between a plan -- I certainly

23  looked.  I'll tell you that -- between the interplay between a

24  plan of reorganization and Rule 8005.  There's --

25  unfortunately, there's nothing that was on point for this

1  particular issue before the Court today.

2       THE COURT:  Well, I think you're bound by the plan,

3  and since the plan says no distribution until a final order, I

4  think --

5       MR. TARRINGER:  But are we talking about a

6  distribution, or are we talking about preserving the status --

7  I mean here --

8       THE COURT:  Well but that's what I say.  There are

9  two prongs to this versus what are your rights under the plan

10 that have to be protected under Rule 8005, and under the plan

11 you would not be entitled to a distribution.  You would not be

12 entitled to any protection in the diminution of the value of

13 the stock between confirmation and the time the distribution is

14 made.  There's no allowance for allocation for that.

15      MR. TARRINGER:  Well, I still think that Rule 8005 --

16 if I could get the language?

17      THE COURT:  Yes.

18      MR. TARRINGER:  Would you bear with me as I read?

19 Rule 8005 states, "A motion for a stay of the judgment, order,

20 or decree of a bankruptcy judge for approval of a supersedeas

21 bond or for other relief pending appeal must ordinarily be

22 presented to the bankruptcy judge in the first instance

23 notwithstanding Rule 7062 but subject to the power of the

24 District Court and the bankruptcy appellate panel reserved

25 hereinafter.  The bankruptcy judge may suspend or order the

J&J COURT TRANSCRIBERS, INC.

1  continuation of other proceedings in the case under the Code or

2  make any other appropriate order during the pendency of an

3  appeal on such terms as will protect the rights of all parties

4  in interest."

5  THE COURT:  And I have to determine what your rights

6  are that need to be protected, and don't I have to look to the

7  plan?

8  MR. TARRINGER:  I think the circumstances of this

9  case are unique.  I think they -- I think that the ICT Spectrum

10  claimants -- if you talk about the balancing test that opposing

11  counsel went over a moment ago -- let's talk about the

12  balancing test.  The first prong, it actually is likelihood of

13  success on the merits, although other courts have looked to

14  important issues raised by the appeal.  I don't think Kaiser

15  has met that.  I think that we talked about that in our brief.

16  That this Court followed well-settled bankruptcy principles and

17  rules in deciding in favor of the claimants in this case.

18  Irreparable injury.  We just went through this. I

19  don't --

20  THE COURT:  Well, no, we haven't gone through the

21  irreparable injury to the debtor.  The debtors' assertion is if

22  we issue the stock, we can't get it back, because it may have

23  been sold in the interim.  In addition, in their papers they

24  argue that we also will have to issue stock to the other

25  classes because of the percentage set forth in the plan.  If we

1  do that, we have even more of an inability to recover the stock

2  back, unless they're going to issue you the stock, and you're

3  going to hold on to it.

4           MR. TARRINGER:  I understand, and that certainly is

5  legitimate.  I guess what I have to say back is what about the

6  congressional mandate to promptly adjudicate stay litigation,

7  and wouldn't that be violated if a debtor who has lost in

8  bankruptcy has the benefit of a stay pending an appeal without

9  being required to offer the prevailing party any protection?

10          THE COURT:  That's dealing with the relief from stay

11 litigation.  Isn't that different?

12          MR. TARRINGER:  Well, I guess if you apply it to this

13 case --

14          THE COURT:  Especially since Congress put into the

15 Code the 30-day requirement for final hearing and for decision,

16 so that there wouldn't be an inordinate delay.

17          MR. TARRINGER:  Well, I guess what they're going to

18 have here is their cake, and they're going to get to eat it too

19 here as far as this --

20          THE COURT:  How?  How are they benefitted by this?

21          MR. TARRINGER:  Well, they're benefitted -- well,

22 let's see how -- I think the weighing here is how the -- who's

23 hurt, and who's hurt more, because I viewed this when I came

24 here today as if they post the bond, I think a stay goes to

25 them.  I think they should get the stay, because then we're

1  protected.  But if they don't issue the stay --

2          THE COURT:  But are you entitled to that protect --

3  rights --

4          MR. TARRINGER:  I hear what you're --

5          THE COURT:  That protects rights that you may not be

6  -- that you are not entitled to under the plan.

7          MR. TARRINGER:  Well if the stock goes down to 12

8  cents a share as it was when -- the day before they declared

9  bankruptcy --

10          THE COURT:  Right.

11          MR. TARRINGER:  -- from 24 --

12          THE COURT:  Let's assume it's 12 cents a share.  But

13  so what?

14          MR. TARRINGER:  We certainly weren't damaged --

15          THE COURT:  But under the plan you're not entitled to

16  that --

17          MR. TARRINGER:  Well, I under --

18          THE COURT:  -- stock until the day that an order is

19  issued and whether it's worth 12 cents or 12 hundred dollars on

20  that day, that's all you're entitled to.  You're not entitled

21  to dollars.

22          MR. TARRINGER:  I understand Your Honor's position.

23  I didn't -- I certainly didn't see them argue this in their

24  briefs.

25          THE COURT:  Well, they did as to the plan terms.

1        MR. TARRINGER:  They talked about 6.02 and 6.03.
2  They didn't talk about definition of allowed, and they didn't
3  talk about --

4        THE COURT:  Well but I'm the one that said you had to
5  look to whether 6.02 or 6.03 applied by looking at exactly --

6        MR. TARRINGER:  Right.  Well, they didn't --

7        THE COURT:  -- what the definition is.

8        MR. TARRINGER:  That step was taken today during this
9  hearing.

10        THE COURT:  Right.

11        MR. TARRINGER:  And it wasn't taken -- if it was
12  taken in the briefs, I certainly would've looked harder than I
13  did before this hearing.  We didn't have much time to get our
14  response in.  We did the best we could.  But I mean now that
15  this is an issue, I understand your position.  I guess I still
16  feel that we're certainly basically -- I think that the
17  interplay between Rule 8005 and the plan -- it sounds like the
18  plan trumps 8005 because of their language in the plan, and
19  that to me is just -- it just sounds like our guys are left out
20  to dry.

21        THE COURT:  Well, I don't think that -- quite
22  frankly, I don't think 8005 is really in conflict with the
23  plan.  Eight thousand and five is to protect the rights of the
24  parties, balance the various harms to the parties inherent in
25  the delay in the appeal.

1          MR. TARRINGER:  That's what --

2          THE COURT:  But your right is not to money.  Your

3    right is not to stock worth $25.  Your right is to the stock,

4    and that was true under the plan.  The plan said people get

5    stock.  It didn't say people will get stock worth $25 each.

6          MR. TARRINGER:  That's true.  That's true.

7          THE COURT:  It didn't say everybody will get stock

8    with a value as of the effective date.

9          MR. TARRINGER:  That's true, but our position was

10   when I came in here today -- and I still think it has merit --

11   is that when Your Honor on January 20th at the end of that

12   hearing said I think that the Spectrum claimants are correct, I

13   think that they should get the stock, and it had a value on

14   that date, and that's when we -- it was up to us to give you a

15   plan of distribution to move forward.

16         THE COURT:  Except that the plan said that if they

17   appealed, that you don't get the distribution until the appeal

18   is decided.  In fact, the plan says you don't get a

19   distribution until there's a final order allowing your claim

20   anyway, and that's true not just for you, but for others.

21         MR. TARRINGER:  Well, we looked at a final order as

22   being a final order of this Court, and that's why we're here.

23         THE COURT:  Well --

24         MR. TARRINGER:  I mean that's --

25         THE COURT:  But I think the plan is different, and I

                    J&J COURT TRANSCRIBERS, INC.

1  think -- I mean whether or not I agree with their success on
2  the merits, it is always difficult in a stay pending appeal.  I
3  didn't think it was a difficult issue, but apparently I'm the
4  only one that's dealt with the issue, so -- I may be wrong, and
5  I'm happy to have somebody tell me I'm wrong if I'm wrong.

6          But I think the harm to them if the stock is actually
7  distributed does exceed any harm to you when I consider what
8  rights you're entitled to under the plan.  So I think they are
9  entitled to a stay pending appeal if a stay is even necessary,
10 because the plan may, in fact, prohibit the distribution.  I
11 think it does prohibit the distribution until the appeal is
12 decided.  Just so it's clear, I will enter the stay pending
13 appeal.  I won't require a bond.  I will require as a condition
14 of it that the stock remain in escrow until the appeal is
15 decided by final order of whomever decides it.

16         MR. TARRINGER:  We appreciate your time today, Your
17 Honor.  Thank you.

18         THE COURT:  All right.

19         MR. MEYER:  Your Honor, we will prepare and submit an
20 order both to counsel and to Your Honor.

21         THE COURT:  All right.  Thank you.

22         MR. TARRINGER:  Do you have the copy of the plan?

23         THE COURT:  You may have it back.  Thank you.

24         MR. TARRINGER:  Thank you.

25         THE COURT:  All right.

                    J&J COURT TRANSCRIBERS, INC.

1          MR. DETWEILER:  Thank you, Your Honor, for your time.

2          THE COURT:  All right.  We'll stand adjourned.  Thank

3    you.

4          MR. MEYER:  Thank you.

5                        * * * * *

6                       **CERTIFICATION**

7          I, PATRICIA C. REPKO, court approved transcriber,

8    certify that the foregoing is a correct transcript from the

9    official electronic sound recording of the proceedings in the

10   above-entitled matter.

11

12   _____              Date:   September 16, 2004

13   PATRICIA C. REPKO

14   J&J COURT TRANSCRIBERS, INC.

J&J COURT TRANSCRIBERS, INC.