# EXHIBIT   F

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KAISER GROUP INTERNATIONAL, | ) Case Nos. 00-2263 to 00-2301 (MFW) |
| INC., et al. | ) |
| | ) (Jointly Administered Under |
| | ) Case No. 00-2263 (MFW)) |
| Debtors | ) |
| | ) Objection Deadline: May 19, 2005 at 4:00 PM |
| | ) Hearing Date: May 26, 2005 at 2:00 PM |

## NOTICE OF MOTION OF CLAIMANT PIPPIN AND THE CLASS OF ICT SPECTRUM CLAIMANTS FOR A STAY OF THE DE-REGISTRATION OF KAISER GROUP HOLDINGS COMMON STOCK PENDING THE FINAL DISPOSITION OF THE BANKRUPTCY COURT'S FEBRUARY 2, 2004 ORDER

TO:  **Debtor**
     Kaiser Group International, Inc.

**All Notice Parties on
the 2002 Service List**

**Co-Counsel for the Debtors**
Mark Minuti, Esquire
Saul Ewing, LLP

Christopher Meyer, Esquire
Squire, Sanders & Dempsey, LLP

PLEASE TAKE NOTICE that Claimant James D. Pippin and the Class of

ICT Spectrum Claimants have filed a **Motion for a Stay of the De-Registration of**

**Kaiser Group Holdings Common Stock** which seeks to have the Bankruptcy Court

issue a Stay of Debtors' efforts to voluntarily terminate the registration of its common

stock pending the final disposition of the Bankruptcy Court's February 2, 2004 decision

granting Claimants' Motion for Resolution of the Class Proof of Claim.

PLEASE TAKE NOTICE that any response or objection to the Motion must be in writing, filed with the Clerk of the Bankruptcy Court, and served upon and received by the undersigned counsel on or before May 19, 2005, at 4:00 p.m.

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed, served and received, the Court may enter an order approving the Motion of Claimant Pippin and the Class of ICT Spectrum Claimants for a Stay of the De-Registration of Kaiser Group Holdings Common Stock without further notice or hearing. If objections and/or responses are timely filed, served and received, a hearing with respect to the Motion for a Stay of the De-Registration of Kaiser Group Holdings Common Stock will be held on May 26, 2005 at 2:00 p.m. before the Honorable Mary F. Walrath, United States Bankruptcy Court, 824 Market Street, 6th Floor, Wilmington, DE. Only those objections and/or responses made in writing and timely filed and received will be considered by the Court at such hearing.

Date: May 6, 2005          Respectfully Submitted:

Pamela S. Tikellis (No. 2172)
A. Zachary Naylor (No. 4439)
**CHIMICLES & TIKELLIS LLP**
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Phone: (302) 656-2500

J. Dennis Faucher
Michael S. Tarringer
**MILLER FAUCHER AND CAFFERTY LLP**
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA 19103
Phone: (215) 864-2800

Attorneys for Claimant James D. Pippin and the Class

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KAISER GROUP INTERNATIONAL, INC., et al. | ) Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) |
| | ) (Jointly Administered Under |
| | ) Case No. 00-2263 (MFW)) |
| Debtors | ) |
| | ) Objection Deadline: May 19, 2005 at 4:00 PM |
| | ) Hearing Date: May 26, 2005 at 2:00 PM |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2005, upon

consideration of the Motion of Claimant James D. Pippin and the Class of ICT Spectrum

Claimants, pursuant to Bankruptcy Rule 8005, for a Stay of the De-Registration of Kaiser

Group Holdings Common Stock Pending Final Disposition of the Bankruptcy Court's

February 2, 2004 Order, granting Claimants' Motion for Resolution of the Class Proof of

Claim, and any Objections thereto, it is hereby ORDERED that the Motion is

GRANTED.  Debtors are hereby directed to STAY all efforts to deregister Kaiser Group

Holdings common stock pending final disposition of the February 2, 2004 Order granting

the Pippin Motion for Resolution of the Class Claim.

BY THE COURT:

_____
Mary F. Walrath, United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KAISER GROUP INTERNATIONAL, | ) Case Nos. 00-2263 to 00-2301 (MFW) |
| INC., et al. | ) |
| | ) (Jointly Administered Under |
| | ) Case No. 00-2263 (MFW)) |
| Debtors | ) |
| | ) Objection Deadline: May 19, 2005 at 4:00 PM |
| | ) Hearing Date: May 26, 2005 at 2:00 PM |

## MOTION OF CLAIMANT PIPPIN AND THE CLASS OF ICT SPECTRUM CLAIMANTS FOR A STAY OF THE DE-REGISTRATION OF KAISER GROUP HOLDINGS COMMON STOCK PENDING THE FINAL DISPOSITION OF THE BANKRUPTCY COURT'S FEBRUARY 2, 2004 ORDER

Pursuant to Bankruptcy Rule 8005, Claimant James D. Pippin and the Class of ICT Spectrum Claimants hereby move this Court for a Stay of Debtors' efforts to voluntarily terminate the registration of Kaiser Group Holdings common stock pending final disposition of the Bankruptcy Court's February 2, 2004 decision granting Claimants' Motion for Resolution of the Class Proof of Claim, and in support thereof aver as follows:

1. On February 2, 2004, the Bankruptcy Court entered an Order granting the Pippin Motion for Resolution of the Class Claim after a full hearing on the matter.

2. In satisfaction of their Class Proof of Claim, the February 2 Order awarded Pippin and the Class 247,350 shares of Kaiser Group Holdings New Common Stock in addition to the 15,625 shares of New Common Stock to be distributed to Pippin and the Class for the 1.5 million shares of Old Kaiser stock that they received at the time of the ICF Kaiser—ICT Spectrum Merger.

3.    Debtors then filed a Motion for Reconsideration of the Bankruptcy Court's February 2 Order. The motion was denied on March 24, 2004, after a full hearing on the matter.

4.    On March 29, 2004, Debtors filed a Notice of Appeal of the Bankruptcy Court's February 2 Order. The appeal has been fully briefed and is currently pending before Judge Farnan of the United States District Court for the District of Delaware.

5.    Since the effective date of the Plan of Reorganization, including at the time of the 2004 hearings on the Motion for Resolution of the Pippin Class Proof of Claim when the Bankruptcy Court granted and denied reconsideration of the Motion, Kaiser Group Holdings New Common Stock has been registered with the Securities and Exchange Commission.

6.    On October 5, 2004, the Bankruptcy Court granted Kaiser's Motion for a Stay of the Court's February 2, 2004 Order pending the final completion of all appellate proceedings, conditioned on Kaiser continuing to set aside and hold all 262,975 shares of New Common Stock for the benefit of the Spectrum Class, pending further Order of the Bankruptcy Court.

7.    Kaiser Group Holdings New Common Stock is currently being traded over the counter on the "Pink Sheets" (common symbol KGHI.PK; preferred symbol KGHIP.PK). The "Pink Sheets" is a centralized quotation service that collects and publishes market maker quotes in real time, primarily though its web site, http://www.pinksheets.com.

8.    On April 7, 2005, Kaiser announced that its Board of Directors has approved a 1-for-20 reverse stock split of its common stock. The proposed reverse split

is subject to approval by the holders of a majority of the voting power of issued and

outstanding shares of Kaiser Group common and preferred stock at Kaiser's next annual

meeting, currently expected to be held in May or June of this year.

        9.      If the reverse split is approved by Kaiser stockholders and implemented,

Kaiser Group expects to have fewer than 300 common stockholders of record, which

would enable Kaiser to voluntarily terminate the registration of its common stock under

the Securities Exchange Act of 1934. As a result, Kaiser would no longer be required to

file periodic reports, including Forms 10-K, 10Q and 8-K, and other information with the

Securities and Exchange Commission, which Kaiser claims would result in cost-saving

benefits to the Company, although it intends to publish by press release and on its website

quarterly and annual results following deregistration.

        10.     Kaiser's own preliminary proxy materials, recently filed for consideration

by the SEC, state:

> Cessation of Public Sale Opportunities. Following the Reverse
> Split, the Company will apply for the termination of its SEC Reporting
> Obligations. It is possible that the public market for shares of the
> Company's Common Stock could be substantially reduced, although the
> Company intends for its Common Stock to continue to trade thought the
> Pink Sheets. Additionally, the Company does not have any present
> intention or plans to sell the Company or enter into any other transaction
> that would provide liquidity for the shares.

Kaiser's Schedule 14A, "Substantive Factors Disfavoring the Reverse Split" at 13.

        11.     Upon the deregistration of Kaiser's stock, the Company's common and

preferred shares will no longer be listed on the Over-the-Counter Bulletin Board.

        12.     Rule 8005 provides that "[a] motion . . . for other relief pending appeal

must ordinarily be presented to the bankruptcy judge in the first instance . . . . [T]he

bankruptcy judge may . . . make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

13.     Because the marketability of Kaiser New Common Stock almost certainly will diminish between now and the end of the appellate process as a result of Kaiser's planned deregistration of its common stock with the SEC, a Stay of Debtors' deregistration efforts should be entered to secure Pippin and the Class, as the prevailing party, against Kaiser's efforts to change in the status quo to the detriment of the Spectrum Class, who has been forced to forgo execution on the Bankruptcy Court's judgment during the course of Debtors' appeal.

14.     In this case, all of the elements necessary for a stay to be entered are present in that: (1) there is a strong likelihood that Pippin and the Class will be successful on the merits of the appeal of this Court's February 2, 2004 Order; (2) the Spectrum Class will suffer substantial irreparable injury if the stay is denied; (3) substantial harm will not be suffered by other parties if the stay is granted; and (4) issuance of the stay would not harm the public interest.

WHEREFORE, Claimant Pippin and the Class request that the Bankruptcy Court stay Debtors' efforts to deregister its common stock pending final disposition of the February 2, 2004 Order granting the Pippin Motion for Resolution of the Class Claim.

Date: May 6, 2005                         Respectfully Submitted:

Pamela S. Tikellis (DE Bar #2172)
A. Zachary Naylor  (DE Bar #)4439)
CHIMICLES & TIKELLIS
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899
Tel: (302) 656-2500

J. Dennis Faucher
Michael S. Tarringer
MILLER FAUCHER AND CAFFERTY LLP
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA 19103
Tel: (215) 864-2800

Attorneys for Claimant Pippin and the Class

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| KAISER GROUP INTERNATIONAL, | ) Case Nos. 00-2263 to 00-2301 (MFW) |
| INC., et al. | ) |
|  | ) (Jointly Administered Under |
|  | ) Case No. 00-2263 (MFW)) |
| Debtors | ) |
|  | ) Objection Deadline: May 19, 2005 at 4:00 PM |
|  | ) Hearing Date: May 26, 2005 at 2:00 PM |

## MEMORANDUM IN SUPPORT OF
## MOTION OF CLAIMANT PIPPIN AND THE CLASS OF ICT
## SPECTRUM CLAIMANTS FOR A STAY OF THE DE-REGISTRATION OF
## KAISER GROUP HOLDINGS COMMON STOCK PENDING THE FINAL
## DISPOSITION OF THE BANKRUPTCY COURT'S FEBRUARY 2, 2004 ORDER

Claimant James D. Pippin and the Class of ICT Spectrum Claimants hereby

submit this Memorandum in support of their motion for a Stay of Debtors' efforts to

voluntarily terminate the registration of Kaiser Group Holdings common stock pending

the final disposition of the Bankruptcy Court's February 2, 2004 decision granting

Claimants' Motion for Resolution of the Class Proof of Claim, in accordance with

Bankruptcy Rule 8005.

## I.    INTRODUCTION

Over a year has passed since Debtors appealed this Court's February 2, 2004

Order awarding the Spectrum Class a substantial number of shares of Kaiser Group

Holdings common stock.  With the appeal still pending, Kaiser now plans to deregister its

common stock after initiating a 1-for-20 reverse-stock split.  Kaiser's efforts to

voluntarily terminate the registration of its common stock will have a substantial,

negative impact on the marketability of Kaiser stock and greatly restrict the information now made available to the investing public.

As the prevailing party in this bankruptcy litigation, the Spectrum Class should have its Equity Interest protected during the pendency of the appeal of this Court's February 2, 2004 Order. Accordingly, a Stay of Kaiser's efforts to deregister the "New Common Stock" that was awarded to Claimant Pippin and the Class back on January 20, 2004 should be entered, pending final disposition of the appeal.

## II.    BACKGROUND

On February 2, 2004, the Bankruptcy Court entered an Order granting the Pippin Motion for Resolution of the Class Claim after a full hearing on the matter. In satisfaction of their Class Proof of Claim, the February 2 Order awarded Pippin and the Class 247,350 shares of Kaiser Group Holdings New Common Stock in addition to the 15,625 shares of New Common Stock to be distributed to Pippin and the Class for the 1.5 million shares of Old Kaiser stock that they received at the time of the ICF Kaiser—ICT Spectrum Merger.

Debtors then filed a Motion for Reconsideration of the Bankruptcy Court's February 2 Order. The motion was denied on March 24, 2004, after a full hearing on the matter.

On March 29, 2004, Debtors filed a Notice of Appeal of the Bankruptcy Court's February 2 Order. The appeal has been fully briefed and is currently pending before Judge Farnan of the United States District Court for the District of Delaware ("Delaware District Court").

2

On October 5, 2004, the Bankruptcy Court granted Kaiser's Motion for a Stay of the Court's February 2, 2004 Order pending the final completion of all appellate proceedings, conditioned on Kaiser continuing to set aside and hold all 262,975 shares of New Common Stock for the benefit of the Spectrum Class, pending further Order of the Bankruptcy Court. Until a Final Order is issued regarding their claim, the Spectrum Class can do nothing but wait. As this Court has ruled, even the 15,625 shares of Kaiser New Common Stock that the Spectrum Class is entitled to receive in exchange for the 1.5 million Old Kaiser Common Stock shares that they were issued at the time of the Kaiser-Spectrum merger cannot be distributed to the Spectrum Class because these shares are part of the Spectrum Class' "Equity Interest," as defined by the Plan, which includes any rights (disputed and undisputed) the Spectrum Class has by virtue of their status as holders of Old Kaiser Common Stock shares.[1]

In an effort to protect the value of the shares of New Common Stock that the Bankruptcy Court awarded, the Spectrum Class requested that a supersedeas bond be posted by Debtors during the pendency of the appeal of this Court's February 2, 2004 Order. On April 18, 2004, the Bankruptcy Court denied the motion, concluding that the rights of the Spectrum Class, as claimants with Equity Interests, is limited only to stock under the Plan.[2] Now, over four years after the Plan was confirmed [3], Debtors are

---

[1]   A bankruptcy hearing was held on December 8, 2003, regarding a motion filed by Pippin and the Class for Distribution of Kaiser New Common Stock that sought to have Debtors distribute the 15,625 New Common Stock shares for Old Kaiser shares that the Spectrum Class at the time of the Kaiser-Spectrum merger. Because of the way the Plan defines "Equity Interest," however, the Bankruptcy Court concluded that no such distribution could take place prior to a final resolution of the Class claim.

[2]   In section 14.03 of the Plan, Kaiser agrees to make and keep public information available, as those terms are understood and defined in SEC Rule 144, so long as the Company remains subject to the periodic reporting requirements under Section 13 or 15(d) of the Exchange Act.

3

deliberately taking action to change the registration status of the very stock that the Bankruptcy Court awarded to the Spectrum Class by effectuating a significant change in the financial structure of the Company to the detriment of Equity Interest holders like the Spectrum Class whose ability to market their shares will be severely impaired if Kaiser goes forward with its deregistration plans.

Kaiser Group Holdings New Common Stock is currently being traded over-the-counter on the "Pink Sheets" (common symbol KGHI.PK; preferred symbol KGHIP.PK). The "Pink Sheets" is a centralized quotation service that collects and publishes market maker quotes in real time, primarily though its web site, http://www.pinksheets.com.

On April 7, 2005, Kaiser announced that its Board of Directors has approved a 1-for-20 reverse stock split of its common stock. The proposed reverse split is subject to approval by the holders of a majority of the voting power of issued and outstanding shares of Kaiser Group common and preferred stock at Kaiser's next annual meeting, currently expected to be held in May or June of this year.

If the reverse split is approved by Kaiser stockholders and implemented, Kaiser Group expects to have fewer than 300 common stockholders of record, which would enable Kaiser to voluntarily terminate the registration of its common stock under the Securities Exchange Act of 1934. As a result, Kaiser would no longer be required to file periodic reports, including Forms 10-K, 10Q and 8-K, and other information with the Securities and Exchange Commission, which Kaiser claims would result in cost-saving

---

[3] On December 5, 2000, the Bankruptcy Court confirmed Kaiser's Second Amended Plan of Reorganization. The Confirmation Order became effective on December 18, 2000.

benefits to the Company, although it intends to publish by press release and on its website quarterly and annual results following deregistration.[4]

According to Kaiser's bankruptcy counsel, the Spectrum Class claim is one of four matters that remain open in this case, the only one of which involves an Equity claim for shares of Kaiser Group Holdings common stock. *See* Hearing Transcript, dated 4/18/05, at 4. *See also* Kaiser's Schedule 14A at 6 ("Apart from holders of the International common Stock, the only holders of Equity Interests of which the Company is aware are the former shareholders of ICT Spectrum Constructors, Inc. . . ."), attached hereto as Exhibit A. As demonstrated below, Kaiser's plan to deregister their common stock not only will negatively impact its marketability, but almost certainly will diminish its value to the detriment of the Spectrum Class. This substantial injury to the Spectrum Class, if Kaiser proceeds with the deregistration of its common stock, far outweighs any cost savings benefit to Debtors that may result from discontinuing the Company's reporting obligations. Accordingly, an Order granting this Motion for a Stay of Kaiser's efforts to deregister its common stock should be entered.

## III.    ARGUMENT

Bankruptcy Rule 8005 provides that "[a] motion . . . for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance . . . . [T]he bankruptcy judge may . . . make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

---

[4] On page 18 of Kaiser's Schedule 14A, the Company states that it "is undertaking the Reverse Split at this time because, among other reasons, the Company believes that it will save substantial costs associated with having a significant number of small shareholders and compliance with the SEC Reporting Obligations. However, the Company's cost saving estimates may be inaccurate, and the actual savings to be realized from terminating the Company's SEC Reporting Obligations might be higher or lower than the Company's estimates."

In this case, the Bankruptcy Court has awarded the Spectrum Class 247,350 shares of Kaiser Group Holdings common stock in addition to the 15,625 shares of New Common Stock to be distributed to Pippin and the Class for the 1.5 million shares of Old Kaiser stock that they received at the time of the ICF Kaiser—ICT Spectrum Merger. While it is clear that the Spectrum Class is only entitled to stock under the Second Amended Plan of Reorganization (the "Plan"), since the effective date of the Plan, Kaiser Group Holdings New Common Stock has been registered with the Securities and Exchange Commission.

Now, Kaiser plans to de-register its common stock while the Debtors' appeal of the Bankruptcy Court's Order awarding a substantial number of Kaiser common shares to the Spectrum Class is pending before the Delaware District Court. In this regard, Kaiser's own preliminary proxy materials, recently filed for consideration by the SEC, state:

> [T]he Company could be required to issue an additional 247,350 shares of Common Stock to former ICT Spectrum shareholders, which would compromise approximately 13.4% of the Company's aggregate Common Stock outstanding. Should the Company be required to issue additional shares of Common Stock after the Effective Date of the Reverse Split, such issuance will be made to former ICT Spectrum shareholders on a post-split basis, such that each former ICT Spectrum shareholder would receive one share of Common Stock for every 20 shares such person was entitled to pursuant to the Bankruptcy Court's ruling. The Company does not intend to issue fractional shares to the former ICT Spectrum shareholders and would instead pay, in lieu of fractional shares, $29.25 for each share of the Company's Common Stock that such former ICT stockholders would be entitled to receive immediately prior to the Effective Date of the Reverse Split.

Notice of Annual Meeting of Stockholders; Special Factors, at p. 6.

Here, the lack of marketability resulting from a deregistration of Kaiser Group

Holdings common stock and the inevitable diminishing value to the Spectrum Class

outweighs any benefit to the Debtors from reduced costs of public reporting.  Because the

marketability of Kaiser New Common Stock almost certainly will diminish between now

and the end of the appellate process as a result of Kaiser's planned deregistration of its

common stock with the SEC, a Stay should be entered to secure Pippin and the Class, as

the prevailing party, against Kaiser's efforts to change in the status quo to the detriment

of the Spectrum Class, who has been forced to forgo execution on the Bankruptcy

Court's judgment during the course of Debtors' appeal.

> In order to obtain a stay pending appeal under
> Bankruptcy Rule 8005, a movant must establish the
> elements necessary to obtain a preliminary injunction:  (1)
> a strong likelihood of success on the merits of the appeal;
> (2) the movant will suffer substantial irreparable injury if
> the stay is denied;  (3) substantial harm will not be suffered
> by other parties if the stay is granted; and (4) issuance of
> the stay would not harm the public interest.  *Family
> Kingdom*, 225 B.R. at 69; *In re Blackwell*, 162 B.R. at 119;
> *In re Sharon Steel Corp.*, 159 B.R. 730, 733 (Bankr. W.D.
> Pa.1993). While some courts have found that the movant's
> failure to persuade the court regarding any one of these
> factors is sufficient to deny the stay, *e.g. In re Blackwell*,
> 162 B.R. at 118, "the more common approach ... is to
> balance all factors in making this determination.  *E.g., In
> re Dakota Rail, Inc.*, 111 B.R. 818 (Bankr. D. Minn.1990);
> *In re Richardson*, 15 B.R. 930, 931 (Bankr. E.D. Pa.1981)."
> *In re Edwards*, 228 B.R. 573, 574-76 (Bankr. E.D. Pa.
> 1999).  Stated otherwise, a court "should realize that these
> four factors structure the inquiry.  However, no one aspect
> will necessarily determine its outcome.  Rather, proper
> judgment entails a 'delicate balancing of all elements.' "  *In
> re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr. M.D. Pa.
> 1988) (citations omitted).

*In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation*, 252

B.R. 309 (W.D. Pa. 1999).  As demonstrated below, Claimant Pippin and the Class have

met their burden of demonstrating that a discretionary stay is warranted under

Bankruptcy Rule 8005.

A.    **Strong Likelihood Of Success On The Merits Of The Appeal**

In granting Claimants' Motion at the January 20, 2004 Hearing, this Court clearly

recognized the viability of such a claim and how its value should be calculated:

> THE COURT: . . . All Congress did, under Section
> 510(b), was subordinate such claims It did not eliminate
> those and, in fact, **I think it's clear that Shareholders
> may have claims, other than, simply, ownership in the
> stock, but may have claims for damages arising from
> purchase, from sale of the debtor's stock, from
> rescission, or other claims under the State or Federal
> law. And the Pippin class have such claims, under their
> contract.**
>
>       \*      \*      \*      \*
>
> **As far as calculation, I think 365 has to be the
> place to look to the calculation for the Pippin class
> claim.** Unfortunately, in this instance it may inure to the
> benefit of the claimant, but in most instances I think it is
> the debtor that asserts the benefits of 365(g).
>
> But, again, Congress enacted the Section to give a
> bright-line date, by which claims must be calculated. I
> don't think there's an indication that Congress did it in
> order to limit the dollar amount of a claim, but simply to
> change the status of the claim, again, since 510(b) is
> reducing the rejection claim even further. The fact that
> 365(g) converts it from a potential post-petition claim to a
> prepetition claim is no really relevant.
>
> But, **I think that is the appropriate time to value
> the claim, because of <u>the language of 365(g), which,
> specifically says that the rejection of an executory
> contract results in a breach of that contract, as of the
> day before the petition, or immediately before the
> petition.</u>**
>
> So based on all that, I think that the Pippin class is
> entitled to stock, premised on a claim equal to the amount
> of shares they had, plus the amount of damages suffered by

> them, as a result of a rejection, and, thereby, termination of
> the fill-up provisions in their agreement.

Hearing Transcript, dated 1/20/04, at 35-37 (emphasis added).

As demonstrated above, this Court's decision was based on well-established bankruptcy rules and principles. *Cf. In re Best Reception Systems*, 219 B.R. at 994 (serious questions going to merits of court's conclusion were not created by issue on appeal, as "court was simply following controlling authority by which it is bound . . . ."). While Kaiser's appeal certainly is important to the parties in this case, the issues presented by the appeal do not present "difficult legal questions" and Debtors cannot credibly show that they are likely to prevail on the merits.

**B.      Claimants Will Suffer Substantial Irreparable Injury Without A Stay.**

Until the final disposition of this Court's February 2, 2004 Order, Claimant Pippin and the Class of former Spectrum shareholders will be unable to make any decisions with respect to both the 15,625 Kaiser shares of New Common Stock that they are due to receive as a result of Old Kaiser shares issued to them at the time of the ICF Kaiser-ICT Spectrum merger and the additional 247,350 New Common Stock shares awarded by this Court.

Meanwhile, in its preliminary proxy statement, Kaiser has identified a number of factors disfavoring its proposed reverse stock split. For example, one such factor is:

> Cessation of Public Sale Opportunities. Following
> the Reverse Split, the Company will apply for the
> termination of its SEC Reporting Obligations. **It is
> possible that the public market for shares of the
> Company's Common Stock could be substantially
> reduced,** although the Company intends for its Common
> Stock to continue to trade thought the Pink Sheets.

9

Kaiser's Schedule 14A (Exhibit A hereto), "Substantive Factors Disfavoring the Reverse Split" at 13 (emphasis added). According to Dr. Craig McCann, President of Securities Litigation and Consulting Group, Inc., existing studies of discounts for lack of marketability and of premiums paid for controlling blocks of shares provide a range of estimates for the harm (ranging from 20 to 40 %) likely to be suffered by minority shareholders if the controlling shareholders are able to implement their proposal. *See* Dr. McCann's Declaration ("McCann Decl.") (attached hereto as Exhibit B) at ¶ 11.

In addition, upon the deregistration of Kaiser's stock, the Company's common and preferred shares will no longer be listed on the Over-the-Counter Bulletin Board.[5] Furthermore, the proposal will reduce the flow of information to unaffiliated shareholders and make the valuation of minority interests much more difficult, thereby reducing the value independent investors place on Kaiser's stock. *See* McCann Decl. at ¶¶ 9-10.

**C.    Granting A Stay Will Not Cause Substantial Harm To Other Parties.**

The single reason that Debtors have raised as their basis for the planned deregistration of their common stock is the expected cost savings associated with meeting the regulatory reporting requirements. The cost savings estimated by Debtors, however, may not even be accurate. In this regard, the Company states that:

> The Company is undertaking the Reverse Split at this time because, among other reasons, the Company believes that it will save substantial costs associated with having a significant number of small shareholders and compliance with the SEC Reporting Obligations. However, the Company's cost saving estimates may be

---

[5] "The OTC Bulletin Board (OTCBB) is a regulated quotation service that displays real-time quotes, last-sales prices, and volume information in over-the-counter (OTC) equity securities. An OTC equity security generally is any equity that is not listed or traded on Nasdaq or a national securities exchange. OTCBB securities include national, regional, and foreign equity issues, warrants, units, American Depositary Receipts (ADRs), and Direct Participation Programs (DPPs)." OTC Bulletin Board website, http://www.otcbb.com/aboutOTCBB/overview.stm

> inaccurate, and the actual savings to be realized from
> terminating the Company's SEC Reporting Obligations
> might be higher or lower than the Company's estimates.

Kaiser's Preliminary Proxy Statement (Exhibit A) at 18. Furthermore, the Company

anticipates that it will continue to incur costs associated with soliciting proxies for

purposes of its annual meeting as required under Delaware law, as well as meeting other

state corporate law requirements. *Id.* at 10. In addition, there will inevitably be costs

associated with the reverse stock split and the Company's present intention to report its

quarterly and annual financial results through its web site and in press releases. *See*

McCann Decl. at ¶¶ 12-14. Thus, the harm suffered by minority shareholders will be

much greater than any real cost savings benefit claimed by Kaiser. *Id.* at ¶13.

### D.    The Public Interest Factor Weighs Heavily In Favor Of A Stay.

The public will be negatively impacted if Kaiser is permitted to proceed with its

efforts to deregister its common stock. In addition to substantially reducing the public

market for shares of the Company's Common Stock, the benefit from Kaiser continuing

to make public information available through, among other things, the filing of annual

and quarterly reports with the SEC will no longer be available. Indeed, Kaiser admits in

its preliminary proxy materials that:

> **Upon terminating the Company's SEC**
> **Reporting Obligations, the Company will no longer file,**
> **among other things, annual or quarterly reports with**
> **the Commission. Information regarding the**
> **Company's business, results of operations and financial**
> **condition that is currently available to the general**
> **public and the Company's investors will not be**
> **available once the Company terminates the registration**
> **of the Company's securities and the Company's SEC**
> **Reporting Obligations. As a result of the Company's**
> **SEC Reporting Obligations, the remaining stockholders**
> **after the Reverse Split will not receive the benefit of the**

> **protection provided to stockholders of a company
> subject to SEC Reporting Obligation,** including, but not
> limited to, certain corporate governance, reporting, and
> management certifications required under the Sarbanes-
> Oxley Act of 2002 and disclosure and liability applicable to
> reports and statements made pursuant to the requirements
> of the Exchange Act. The Company intends to continue to
> report to its stockholders in accordance with Delaware
> Law. In addition, the Company presently intends to report
> its quarterly and annual financial results through its web
> site and in press releases.

Kaiser Schedule 14A (Exhibit A) at 13-14 (emphasis added). In addition, Kaiser

explains in its proposed proxy materials that stockholders who are cashed out as a result

of the Reverse Split will have no further interest in the Company with respect their

cashed out shares and thus will not have the opportunity to participate in the potential

upside of any increase in the value of such shares unless they acquire sufficient shares in

the open market so that they hold at least 20 shares in the account immediately prior to

the Reverse Split. *Id.* at 14.

Remarkably, Kaiser's Board of Directors has taken the position that the

"Cessation of Publicly Available Information" does not make the transaction unfair to

unaffiliated stockholders "because any detriment to unaffiliated stockholders that may

result from the termination of the registration of the Company's securities and the

Company's periodic filings will be offset by the anticipated cost-saving benefits to the

Company of no longer publicly filing such reports." *Id.* This reasoning is clearly self-

serving, especially in light of the actual cost savings that would result. *See* McCann

Decl. at ¶¶ 9, 13 and 14. Thus, the public interest can only benefit from Kaiser

continuing to report to the SEC under its regulatory requirements. *Id.* at ¶15 ("If Kaiser's

proposal passes, these insiders who already have an informational advantage will

12

continue to have the same information but minority shareholders and potential minority shareholders will have much less information.").

## IV.    CONCLUSION

For all of the above reasons, Claimant Pippin and the Class request that the Bankruptcy Court direct Debtors to cease all common stock deregistration efforts, pending the final disposition of the February 2, 2004 Order granting the Pippin Motion for Resolution of the Class Claim.

Date: May 6, 2005

Respectfully Submitted:

Pamela S. Tikellis (DE Bar # 2172)
A. Zachary Naylor (DE Bar # 4439)
CHIMICLES & TIKELLIS
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899
Tel: (302) 656-2500

J. Dennis Faucher
Michael S. Tarringer
MILLER FAUCHER AND CAFFERTY LLP
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA  19103
(215) 864-2800

Attorneys for Claimant Pippin and the Class

# EXHIBIT   A

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.    )

Filed by the Registrant  ☒

Filed by a Party other than the Registrant  ☐

Check the appropriate box:

☒  Preliminary Proxy Statement
☐  **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**
☐  Definitive Proxy Statement
☐  Definitive Additional Materials
☐  Soliciting Material Pursuant to §240.14a-12

---

**Kaiser Group Holdings, Inc.**

(Name of Registrant as Specified In Its Charter)

---

N/A

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

---

Payment of Filing Fee (Check the appropriate box):

☒  No fee required.
☐  Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    (1)  Title of each class of securities to which transaction applies:

    (2)  Aggregate number of securities to which transaction applies:

    (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)  Proposed maximum aggregate value of transaction:

    (5)  Total fee paid:

☐  Fee paid previously with preliminary materials.
☐  Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

    (1)  Amount Previously Paid:

    (2)  Form, Schedule or Registration Statement No.:

    (3)  Filing Party:

    (4)  Date Filed:

      Persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

### KAISER GROUP HOLDINGS, INC.

**9300 Lee Highway**
**Fairfax, Virginia 22031**

Dear Stockholder:

The 2005 Annual Meeting of Stockholders (the "Annual Meeting") of Kaiser Group Holdings, Inc. (the "Company") will be held on [            ], [            ], 2005, in the auditorium at 9302 Lee Highway, Fairfax, Virginia 22031-1207. The matters on the meeting agenda are described on the following pages. The meeting will start promptly at 10:30 a.m.

This year you are being asked to approve an amendment to the Company's Certificate of Incorporation to effectuate a one for 20 reverse stock split, which if approved would enable the Company to cease its periodic reporting obligations under the Securities Exchange Act of 1934, as amended. You are also being asked to elect four directors, each to a one-year term expiring at the 2006 Annual Meeting of Stockholders.

If you were a stockholder of record on [            ], [            ], you will receive a proxy card for the shares of Kaiser Group Holdings, Inc. Common Stock, par value $0.01 per share, and Preferred Stock, par value $0.01 per share, you hold in your own name. To vote your shares, you must mail back your proxy card so that it is received by the Company's stock transfer agent before the close of business on [            ], [            ], 2005. Please use the enclosed postage-paid, addressed envelope to vote your shares.

A very high percentage of our stockholders hold their stock in street name, which means that the shares are registered in their brokers' names rather than in the stockholders' names. If you want to vote your street-name shares personally, you must contact your broker directly in order to obtain a proxy issued to you by your broker. A broker letter that identifies you as a stockholder is not the same thing as a broker-issued proxy. If you fail to bring a broker-issued proxy to the meeting, you will not be able to vote your broker-held shares at the Annual Meeting.

We urge you to mail your proxy card to our stock transfer agent as promptly as possible using the envelope provided. Please mail your proxy card whether or not you plan to attend the Annual Meeting. Giving your proxy will not affect your right to vote the shares you hold in your own name if you decide to attend the Annual Meeting.

Sincerely,

/s/Douglas W. McMinn

Douglas W. McMinn
President and Chief Executive Officer

[        ], 2005