# EXHIBIT   G

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | Case No. 00-2263 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | | Related to Docket No. 1724 |

### KAISER'S RESPONSE TO THE ICT CLAIMANTS' MOTION
### FOR A STAY OF THE DE-REGISTRATION OF KAISER
### GROUP HOLDINGS COMMON STOCK

Kaiser Group International, Inc., and its affiliated debtor subsidiaries, the debtors and debtors-in-possession and, from and after the Effective Date, as that term is defined in the Second Amended Plan of Reorganization confirmed on December 5, 2000 (the "Plan"), Kaiser Holdings Group, Inc. ("Kaiser") respectfully submits this response to James D. Pippin and the Class of ICT Spectrum Claimants' ("ICT Claimants") motion for a stay.

### INTRODUCTION

The ICT Claimants make an unprecedented request that the Court should use Federal Bankruptcy Rule 8005 to order that Kaiser cease "all common stock deregistration efforts." That request should be denied.

At the outset, the ICT Claimants' motion is procedurally improper. The ICT Claimants are attempting to use Rule 8005 as a shortcut to *enjoin* Kaiser from proceeding to submit to a shareholder vote a board-approved corporate transaction governed by Delaware state law. Such sweeping relief is dramatically beyond the scope of Rule 8005, which deals primarily with staying the execution of bankruptcy court orders while they are appealed. Rule 8005 is *not* an alternative to the procedure designed for seeking injunctive relief in a bankruptcy court: the filing of an adversary

proceeding in accordance with Rule 7001(7). The ICT Claimants offer no authority for their novel proposition that Rule 8005 can be used to sidestep other provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The ICT Claimants' motion is procedurally improper and should be denied on this ground alone.

More fundamentally, this Court lacks subject matter jurisdiction to issue the relief the ICT Claimants seek, even if sought appropriately through the filing of an adversary proceeding. A bankruptcy court has limited post-confirmation jurisdiction. At the heart of this case, the ICT Claimants are asking this Court to decide on the desirability of a corporate transaction, an issue Delaware corporate law reserves to the company's board and shareholders. To the extent that the ICT Claimants are presently owners of shares, they will be entitled to vote their interests as they choose. However, there is no nexus between the corporate transaction the ICT Claimants attack and any rights they have under the Kaiser Plan. Their disputes are not a sufficient basis to support bankruptcy court jurisdiction.

The ICT Claimants' interests remain intact and protected during the appeal process, as the preliminary proxy materials submitted to the Securities and Exchange Commission show and the ICT Claimants themselves recognize. Instead, the ICT Claimants place great weight on their claim that the proposed reverse-stock split will negatively affect the value of the common stock of reorganized Kaiser. However, even if that claim were true, and as this Court has already recognized, nothing in the Plan confirmed by the Court gives the ICT Claimants (or any other claimant) any rights concerning the market value of the shares issued under the Plan. The speculation of the ICT Claimants about share value is an irrelevant smokescreen that does not support the exercise of jurisdiction.

2

For these reasons, and as more fully set forth below, the ICT Claimants' motion should be denied.

## ARGUMENT

### A.    The ICT Claimants' Motion Is Procedurally Improper and Should Be Denied.

The principal purpose of Rule 8005 is to enable a court to issue a "stay pending appeal from a judgment, order, or decree of a bankruptcy judge." **In re Polaroid Corp.**, 2004 U.S. Dist. LEXIS 1917, at *3 (D. Del. Feb. 9, 2004) (attached as Exhibit A); **In re ANC Rental Corp.**, 2002 U.S. Dist. LEXIS 9409, at *4 (D. Del. May 22, 2002) (attached as Exhibit B).  Rule 8005 provides:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.  Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. . . . .

FED. R. BANKR. PRO. 8005.

Although the ICT Claimants style their motion as requesting a "stay," they are not requesting relief with regard to the order of this Court currently on appeal.  In actuality, they are seeking the extraordinary remedy of an *injunction* enjoining the reorganized company.  They seek to prevent Kaiser from proceeding with a proposed transaction governed by state law, approved by its board of directors, and subject to an upcoming shareholder vote.  (See ICT Claimants' Br., at 13 (requesting that the Court "direct Debtors to cease all common stock deregistration efforts . . . .").

The ICT Claimants premise their motion on general language in Rule 8005 that the bankruptcy judge may provide "other relief pending appeal."  But the broad reading that the ICT Claimants urge is simply wishful thinking.  That general language clearly does not supplant other

provisions of the Bankruptcy Code and Rules of Bankruptcy Procedure, and it does not constitute an unlimited grant of power authorizing a far-reaching, post-confirmation injunction like the one the ICT Claimants seek. Bankruptcy Rule 7001(7) specifies that a proceeding to obtain an injunction or other equitable relief is an adversary proceeding. See FED. R. BANKR. PRO. 7001(7) ("An adversary proceeding is governed by the rules of this Part VII. It is a proceeding . . . (7) to obtain an injunction or other equitable relief[.]").

Courts have repeatedly held that a party seeking an injunction in the bankruptcy court *must* comply with Rule 7001(7). See **In re Continental Airlines**, 236 B.R. 318, 324 (Bankr. D. Del. 1999) ("*Rule 7001(7) requires the commencement of an adversary proceeding 'to obtain an injunction or other equitable relief.*'") (emphasis added); **In re Conxus Communs., Inc.**, 262 B.R. 893, 899 (D. Del. 2001) ("Motorola waited until the eleventh hour to pursue its request for an injunction, skirting the requirement that such proceedings be filed as an adversary proceeding . . . . Indeed, *that Motorola failed to file the required adversary proceeding was alone sufficient reason for the Bankruptcy Court to deny Motorola's request for an injunction.*") (emphasis added) (*citing* **In re Best Prods. Co.**, 203 B.R. 51 (Bankr. E.D. Va. 1996)); **In re Lykes Bros. S.S. Co.**, 221 B.R. 881, 883-84 (Bankr. M.D. Fla. 1997) ("As noted earlier, the Motion for Stay in the last analysis seeks an injunction, which request is procedurally improper because the procedure to obtain injunctive relief by virtue of F.R.B.P. 7001(7) requires an adversary proceeding."); **In re Aico Rec. Props., LLC**, 2003 Bankr. LEXIS 387, at *20 (Bankr. D. Idaho April 11, 2003) (stating

that "*an injunction may be sought only through an adversary proceeding*.") (emphasis added) (attached as Exhibit C).[1]

The ICT Claimants have not even attempted to comply with the established procedure for seeking injunctive relief. Instead, they hope that this Court, under the auspices of Rule 8005, will simply issue an order enjoining all common stock deregistration efforts. However, the words "other relief pending appeal" do not simply erase the requirements of Rule 7001. Rule 8005 is not a procedural shortcut to obtain such sweeping injunctive relief. For this reason, the ICT Claimants' motion should be denied. See **In re Conxus Communs., Inc.**, 262 B.R. at 899.

**B.    This Court Lacks Jurisdiction Over A Dispute About Delaware Corporate Law.**

In addition to being procedurally improper, this Court lacks subject matter jurisdiction over what boils down to a dispute regarding the propriety of the corporate transaction with which the ICT Claimants apparently disagree.

The bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The bankruptcy court's jurisdiction is broad but not unlimited; moreover, it is more limited post-confirmation. To uphold bankruptcy court jurisdiction over a post-confirmation matter, the essential inquiry is whether there is a *close nexus* to the bankruptcy plan or whether the dispute is *central to* the bankruptcy proceeding:

> Though courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter. . . . . At the post-confirmation stage, the claim must affect an integral aspect of the

---

[1]    These types of issues are not summarily decided. Indeed, the Declaration of Craig J. McCann attached to the ICT Claimants' motion only underscores why the ICT Claimants have not complied with proper bankruptcy procedures. Dr. McCann challenges the fairness of the transaction. At a minimum, Kaiser would need to depose Dr. McCann (and/or subject him to cross-examination) and present witnesses and evidence of its own.

> bankruptcy process–there must be a close nexus to the bankruptcy
> plan or proceeding.

**In re Resorts Int'l, Inc.**, 372 F.3d 154, 166, 167 (3[d] Cir. 2004); see also **In re LaRoche Indus.**,

312 B.R. 249, 257 (Bankr. D. Del. 2004) ("[T]he jurisdiction of the non-Article III bankruptcy

courts is limited after confirmation of a plan. . . . Since there is a serious question whether we have

jurisdiction to hear this suit, we will abstain from hearing it.") (citation omitted); **In re Craig's**

**Stores of Tex., Inc.**, 266 F.3d 388, 390-91 (5th Cir. 2001) (post-confirmation bankruptcy

jurisdiction ceases to exist "other than for matters pertaining to the implementation or execution of

the plan").

By way of illustration, the **In re Resorts International** court pointed out that in **Donaldson**

**v. Bernstein**, 104 F.3d 547 (3[d] Cir. 1997), the court properly exercised jurisdiction because the case

did "not involve a dispute essentially collateral to the bankruptcy case," but instead "implicated the

integrity of the bankruptcy process." 372 F.3d at 167. Similar exceptional circumstances are not

present in this case.

The ICT Claimants advance no cogent reason why this Court should exercise jurisdiction

over a corporate governance issue involving the business judgment of the reorganized company's

board of directors and shareholders. The ICT Claimants have not demonstrated that there is a "close

nexus" between this dispute and the Plan, that the dispute is central to the bankruptcy proceeding, or

that the dispute implicates the integrity of the bankruptcy process.

The rights of the ICT Claimants under the Plan are limited to receiving common shares at

the time the appeal is resolved; that is, when this Court's February 2, 2004 Order is final. Nowhere

do the ICT Claimants claim—because they cannot—that the reverse stock split will eliminate stock

to which they claim to be entitled. On the contrary, the ICT Claimants' interest *is explicitly*

*acknowledged and protected*. The preliminary Proxy Statement filed pursuant to Section 14(a) of

the Securities Exchange Act of 1934 *expressly* recognizes the pending appeal, the ICT Claimants'

claimed interest, and the possibility that the Company could be required to issue an additional

247,350 shares of Common Stock to former ICT Spectrum shareholders:

> [T]he Company could be required to issue an additional 247,350
> shares of Common Stock to former ICT Spectrum shareholders,
> which would compromise approximately 13.4% of the Company's
> aggregate Common Stock outstanding.  Should the Company be
> required to issue additional shares of Common Stock after the
> Effective Date of the Reverse Split, such issuance will be made to
> former ICT Spectrum shareholders on a post-split basis, such that
> each former ICT Spectrum shareholder would receive one share of
> Common Stock for every 20 shares such person was entitled to
> pursuant to the Bankruptcy Court's ruling.

Schedule 14A, a 6 (attached as Exhibit A to the ICT Claimants' brief).

The battle in which the ICT Claimants seek to engage this Court concerns their

speculative conclusion that the reverse split is not fair and could have a negative impact on the

marketability of Kaiser stock.  (See ICT Claimants' Br., at 7, 10).  But their "marketability"

argument is nothing more than a rehash of arguments previously rejected by this Court.  The ICT

Claimants unsuccessfully argued in opposition to Kaiser's motion to stay the February 2, 2004

Order that a stay could cause a diminution in the value of Kaiser stock.  The argument, however,

assumed incorrectly that the ICT Claimants were presently entitled to stock at a certain value.

Under the Plan, however, they are not, as the Court recognized:

> THE COURT:  But my order isn't final.  Your right as far as value—
> your right to a distribution is when the order is final.  That is [when]
> the appeal is resolved, and that would depend on the value at the time
> the appeal is resolved. . . .
>
> . . . .
>
> THE COURT:  Well but that's what I say.  There are two prongs to
> this versus what are your rights under the plan that have to be
> protected under Rule 8005, and under the plan you would not be
> entitled to a distribution.  *You would not be entitled to any*

7

> *protection in the diminution of the value of the stock between*
> *confirmation and the time the distribution is made.* There is no
> allowance for that.
>
> . . . .
>
> THE COURT: But your right is not to money. Your right is not to
> stock worth $25. Your right is to the stock, and that was true under
> the plan. The plan said that people get stock. It didn't say people get
> stock worth $25.
>
> MR. TARRINGER: That's true. That's true.

8/8/04 Tr. at 22, 27 (emphasis added).[2]

The issues raised by the ICT Claimants involve the financial desirability of corporate transactions involving the reorganized Kaiser. They have absolutely nothing to do with this bankruptcy case or the rights of the ICT Claimants under the Plan. On the same theory as presented here, the ICT Claimants could ask this Court to enjoin an election of directors or even the execution of a major contract by reorganized Kaiser. Any of such transactions could, theoretically, have an impact on the price of Kaiser common shares. However, as with the transaction attacked in the ICT Claimants' motion, those are matters for decision by the management, Board of Directors, or shareholders of reorganized Kaiser. They do not affect the interpretation, implementation, consummation, execution, or administration of the confirmed Plan. They have nothing to do with this bankruptcy case and do not satisfy the close nexus required to support post-confirmation bankruptcy court jurisdiction.

The ICT Claimants urge this Court, without even perfunctory process, to summarily disenfranchise *all* Kaiser shareholders and to determine the financial desirability of the corporate transaction proposed for consideration in accordance with Delaware corporate law and

---

[2]    Pertinent pages of the transcript are attached as Exhibit D.

applicable SEC procedures. The subject matter jurisdiction of this Court simply does reach that far.[3]

## CONCLUSION

For the foregoing reasons, Kaiser respectfully requests that the Court deny the ICT Claimants' motion.

Mark Minuti (No. 2659)
Patrick J. Reilley (No. 4451)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6800
(302) 421-5873 (Fax)
Email: mminuti@saul.com

-and-

G. Christopher Meyer (Ohio #0016268)
Christine Murphy Pierpont (Ohio #0051286)
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
(216) 479-8500

Attorneys for the Debtors and
Debtors-in-Possession

Dated: May 24, 2005

---

[3]    Kaiser's proposed corporate action has nothing to do with the claims of the ICT Claimants. Kaiser has proposed to de-list its common stock in order to eliminate the increased costs it incurs by being an SEC registered company. Kaiser notes in passing that the dramatically increased costs associated with Sarbanes-Oxley Act compliance have driven hundreds of companies similarly situated with Kaiser to de-list their shares. See *Max & Erma's Moves to Reduce Costs*, at 33 The Columbus Dispatch (January 20, 2005) (attached as Exhibit E). The ICT Claimants' argument—based on a single, self-serving, and untested affidavit—that deregistering the company's common stock will harm the public and other parties and is unfair is unsupported.

# EXHIBIT "A"

2004 U.S. Dist. LEXIS 1917, *

In re: POLAROID CORPORATION, et al., Debtors. STEPHEN J. MORGAN,
Appellant, v. POLAROID CORPORATION, et al., Appellees.

Civil Action No. 02-1353 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 1917

February 9, 2004, Decided

SUBSEQUENT HISTORY: Motion granted by, Appeal dismissed by Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 U.S. Dist. LEXIS 1879 (D. Del., Feb. 9, 2004)

PRIOR HISTORY: [*1] Bankruptcy Case No. 01-10864 PJW.

DISPOSITION: Appellant's motion for stay pending appeal denied.

LexisNexis(R) Headnotes

COUNSEL: Stephen J. Morgan, Pro Se Appellant.

Gregg M. Galardi, Esquire, Mark L. Desgrosseilliers, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.

Of Counsel: Eric W. Kaup, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois. Attorneys for Debtors and Debtors-in-Possession, Appellees.

Joseph Malfitano, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.

Of Counsel: Nava Hazan, Esquire of AKIN GUMP STRAUSS HAUER & FELD, LLP, New York, New York. Co-Counsel to the Plan Administrator.

JUDGES: JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

OPINIONBY: JOSEPH J. FARNAN, JR.

OPINION:

MEMORANDUM OPINION

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan. (D.I. 31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

BACKGROUND

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy [*2] filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

I. Parties' Contentions

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required. [*3]

In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly

2004 U.S. Dist. LEXIS 1917, *

serve it and its counsel as required by the Federal Rules of Civil Procedure.

## DISCUSSION

Federal Bankruptcy Rule 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting Federal Bankruptcy Rule 8005 have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. In re 421 Willow Corp., 2003 U.S. Dist. LEXIS 18029, 2003 WL 22318022 at *3 (E.D. Pa. Oct. 9, 2003). If a party fails to establish one of the four prongs, a court may deny the requested stay. [*4] Hertz Corp. v. ANC Rental Corp.(In re ANC Rental Corp.), 2002 U.S. Dist. LEXIS 9409, 2002 WL 1058196 at *2 (D. Del. May 22, 2002) (citing In re Blackwell, 162 B.R. 117, 120 (E.D. Pa. 1993)). Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

Likelihood of success on the merits means that a movant has a "'substantial case,' or a strong case on appeal." In re Columbia Gas Sys., 1992 U.S. Dist. LEXIS 3253 at *4 (D. Del. March 10, 1992) (quoting In re Public Serv. Co. of N.H., 116 BR 347, 349 (Bankr. D. N.H. 1990). Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has [*5] not demonstrated a strong likelihood of success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion. n1

> n1 Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I. 31) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

EXHIBIT "B"

2002 U.S. Dist. LEXIS 9409, *

In re: ANC RENTAL CORP., et al., Debtors. THE HERTZ CORPORATION, et al., Appellants, v. ANC RENTAL CORP., et al., Appellees.

Civil Action Nos. 02-154, 02-175, 02-288, 02-289, 02-290, 02-291, 02-292, 02-293, 02-294, 02-295, 02-296, 02-297, 02-298, 02-299, 02-360 and 02-364 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 9409

May 22, 2002, Decided

**SUBSEQUENT HISTORY:** [*1] As Amended May 22, 2002.

**PRIOR HISTORY:** Chapter 11, Bankruptcy Case No. 01-11220 (MFW) (Jointly Administered).

**DISPOSITION:** Appellants' Motion for a Stay Pending Appeal DENIED. Hertz's Emergency Motion for a Stay Pending Appeal DENIED. Avis' Emergency Motion for a Stay Pending Appeal DENIED. None of the cases in this litigation stayed pending this appeal.

**LexisNexis(R) Headnotes**

**COUNSEL:** Bonnie Glantz Fatell, Blank Rome Comisky & McCauley LLP, Wilmington, DE, for ANC IT Collector Corporation, debtor.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Sleet

**OPINION:**

### AMENDED MEMORANDUM AND ORDER

On February 27, 2002, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc. ("Avis") filed the first of several expedited appeals from the orders of the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware. Several subsequent appeals were filed. (Case Nos. 02-175 and 02-288 though and including 02-299). In particular, the appellants sought review of the January 28, 2002 and March 20, 2002 orders of the bankruptcy court that permitted [*2] the debtor to reject certain of their concession contracts and subsequently negotiate more favorable contracts at seven national airports. On March 25, 2002, Hertz filed a motion for a stay pending the

appeals (D.I. 18 - 02-154), and Avis joined in that motion. (D.I. 20 - 02-154). On May 3, 2002, the bankruptcy court entered another order that permitted the debtor to reject contracts at four more airports. An appeal of this order was filed on May 10, 2002. (D.I. 1 - 02-360.) Hertz filed an emergency motion for a stay pending this appeal on May 13, 2002. (D.I. 2 - 02-360.) Avis also joined in this motion. ( D.I. 1 - 02-364.) The court finds that Hertz and Avis have failed to demonstrate the necessary irreparable harm. Moreover, the court finds that a stay will be harmful to the debtor. Therefore, both of the motions to stay will be denied.

The briefly stated facts of this case are as follows: The debtor, ANC Rental Corp ("ANC"), is the parent company of the Alamo Rent-A-Car and National Car Rental System companies. As the name makes obvious, Alamo and National are car rental companies. Hertz and Avis are also engaged in the car rental business.

The rental car industry is particularly [*3] active in the nation's airports. According to the parties, the normal procedure for operating at an airport requires that the rental car company first bid for a contract with the local airport authority. If the bid is acceptable, the airport authority will issue a contract to the winning bidder that will permit it to operate a rental car booth, or concession, at the local airport. The parties assert that the terms of such concession contracts usually include terms stating that the concessionaire must earn a certain profit each year. This is called the minimum annual guarantee ("MAG"). Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth. This practice is commonly known as "dual branding." The parties do not dispute that the contracts at issue contain MAG requirements, but the debtor disputes that the contracts contain prohibitions on dual branding. n1

n1 To the extent that the debtor disputes this contention, for the purposes of this motion only, the court will accept that the contracts contain terms and conditions that prohibit dual branding.

[*4]

ANC, National, and Alamo filed for Chapter 11 bankruptcy on November 13, 2001. As part of their reorganization plan, National and Alamo sought to reject the concession contracts and have ANC, as the debtor-in-possession, assume the contracts pursuant to § 365 of the bankruptcy code. The bankruptcy court permitted this rejection and assumption in each of its three orders. The appellants assert that the effect of the orders is to permit Alamo and National to operate at the same concession, which effectively permits the dual branding that the appellants contend is prohibited by the concession contracts. The appellees further argue that when the contracts with the airport authorities were renegotiated with ANC, the MAG was also effectively reduced because only one of the companies at the concession would be subject to the MAG requirement. The orders of the bankruptcy court currently affect concession contracts at eleven airports nationwide.

Federal Rule of Bankruptcy Procedure 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court. See FED. R. BANKR. P. 8005. The court may grant such a stay when the party seeking the stay can demonstrate that: (1) [*5] it has a likelihood of success on the merits of the appeal; (2) it will be subject to irreparable harm if the stay is not granted; (3) the granting of the stay will not substantially harm other interested parties; and (4) the granting of the stay would serve the public interest. See In re Edwards, 228 B.R. 573, 575 (Bankr. E.D. Pa.1999). If the movant fails to make a showing on any one of these four factors, the court may deny the stay. See In re Blackwell, 162 B.R. 117, 120 (E.D.Pa.1993).

Hertz and Avis both assert that they will suffer irreparable harm if the bankruptcy court's orders are not stayed and the debtor's reorganization plan is permitted to continue. The only argument the appellants present in support of this contention is that ANC, National, and Alamo will gain a "competitive advantage" if the reorganization scheme is permitted to continue because they will be able to operate at a lower cost than Hertz and Avis. The court is not persuaded by this argument. First, the amount of money the debtors will save during the consolidation process has been quantified. The fact that the savings can be quantified weighs against a finding of irreparable [*6] harm. See In re Shelly's, Inc., 87 B.R.931, 935 (Bankr. S.D.Ohio1988) (indicating that even where there might be some intangible loss to

reputation, if injury is "at bottom, financial" and could be calculated, there was no irreparable injury).

Second, where a business is threatened with serious financial harm (i.e. going out of business) as a result of a competitor's actions, irreparable harm may be present. See Sprint Corp. v. Deangelo, 12 F. Supp. 2d 1188, 1194 (D. Kan. 1998) (collecting cases). However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because "revenues and customers lost to competition which can be regained through competition are not irreparable." Central & Southern Motor Freight Tariff Ass'n v. Household Goods Carrier's Bureau, 244 U.S. App. D.C. 226, 757 F.2d 301, 309 (D.C. Cir. 1985). In other words, the marketplace should eventually be able to correct any harm suffered by Hertz and Avis.

Third, although Hertz and Avis claim that they will be irreparably harmed in the absence of a stay, they have failed to adduce evidence of the putative injury on the record [*7] before the court. "To constitute irreparable harm, however, an injury cannot be speculative, it must be certain, great, and actual." Sprint, 12 F. Supp. 2d at 1194 (citations and internal quotations omitted). Although the appellants have provided some evidence of the alleged advantage the ANC companies will receive, they have failed to make even a prima facie showing which demonstrates a tangible financial or other loss to Hertz or Avis. In the absence of such evidence, any loss to Hertz or Avis is merely speculative.

Finally, the bankruptcy court orders thus far will only affect ANC operations at eleven airports nationwide. In contrast, there are eighty-seven international airports and over 700 other commercial airports in this country. n2 Moreover, the majority of the eleven affected airports are relatively small. Given the small number of airports that are affected at this time versus the large number of airports in this nation, the court is not persuaded that allowing the ANC companies to consolidate operations threatens irreparable harm at present. Additionally, although there is a possibility that the plan may be implemented at many more airports, the court [*8] also notes that both the appellants and the appellees have access to markets outside of the nation's airports. For all of the above reasons, the court finds that the appellants have failed to demonstrate irreparable harm.

n2 This information was obtained through telephone and electronic-mail communication with the Federal Aviation Administration ("FAA"). See E-mail from Ben Castalano, FAA, to Althea Brown, Judicial Administrator to the

2002 U.S. Dist. LEXIS 9409, *

Honorable Gregory M. Sleet (May 21, 2002) (on file with chambers).

Turning to harm to other interested parties, it is clear that granting a stay would have a substantial and detrimental effect on the debtor's plan of reorganization. According to the debtors, once the plan is fully implemented, savings of $ 136,000,000 will be achieved. The appellants argue that any savings at present, prior to the national implementation of the plan, will only amount to $ 6,000,000. The court finds that even a savings of $ 6,000,000 is important to a bankrupt estate. Moreover, a one year delay [*9] in implementing the plan might well seriously jeopardize the plan. n3 Thus, the court concludes that the granting of the stay would produce substantial harm to other parties.

> n3 One year is the time the parties estimate for the appeal in the absence of a stay.

Since the appellants have failed to demonstrate irreparable harm or lack of substantial harm to other interested parties, the court will deny their motions for a stay of these proceedings. Therefore, none of the pending cases will be stayed on appeal. n4

> n4 Although the motions to stay were only filed in case numbers 02-154, 02-360, and 02-364, it is clear that the motions are intended to affect all of the pending cases. Therefore, the

denial of the stay means that none of the pending cases will be stayed. The parties should therefore not attempt, absent a showing of good cause, to file additional motions to stay in the remaining cases.

[*10]

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:

> 1. The appellants' Motion for a Stay Pending Appeal (D.I. 18 - 02-154) is DENIED.
>
> 2. Hertz's Emergency Motion for a Stay Pending Appeal (D.I. 1 - 02-360) is DENIED.
>
> 3. Avis' Emergency Motion for a Stay Pending Appeal (D.I. 1 - 02-364) is DENIED.
>
> 4. None of the cases in this litigation [Case Nos. 02-154, 02-175, 02-288 through and including 02-299, 02-360, and 02-364] will be stayed pending this appeal.

Dated: May 22, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT "C"

IN RE AICO RECREATIONAL PROPERTIES, LLC, dba Indian Springs Resort, Debtor.

Case No. 01-40539

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF IDAHO

2003 Bankr. LEXIS 387

April 11, 2003, Decided
April 11, 2003, Filed

DISPOSITION: [*1] Debtor's motion seeking relief from the Court's Order of June 7, 2002 denied.

LexisNexis(R) Headnotes

JUDGES: HONORABLE TERRY L. MYERS, UNITED STATES BANKRUPTCY JUDGE.

OPINIONBY: TERRY L. MYERS

OPINION:

MEMORANDUM OF DECISION

HONORABLE TERRY L. MYERS, UNITED STATES BANKRUPTCY JUDGE

INTRODUCTION

This chapter 11 case comes before the Court n1 for resolution of a contested matter. Fed. R. Bankr. P. 9014. Hearing has been held, and the parties have made their arguments. The applicable facts are established by the pleadings and documents of record in the Court's file, which have been considered by the Court under Fed. R. Evid. 201. Additionally, certain of these pleadings were submitted by Debtor and are subject to consideration as admissions under Fed. R. Evid. 801(d). *See In re Webb,* 03.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003).

> n1 Chief Bankruptcy Judge Jim D. Pappas was initially assigned Debtor's case, and he presided over it from its inception in March 2001 through February 10, 2003, when an Order of Recusal was entered, Doc. No. 130, and the case was transferred to the undersigned Bankruptcy Judge.

[*2]

BACKGROUND AND FACTS

AICO Recreational Properties, LLC ("Debtor") is a chapter 11 debtor in possession. It filed its voluntary petition for relief in March 2001. Doc. No. 1. The petition was executed by Terry W. Andersen as the "managing member" of the limited liability company. *Id.* The petition also indicates that 83% of Debtor is owned by the "Terry W. Andersen and Rosanna Andersen Living Revocable Trust, Dated February 1, 1991" of which Terry Anderson is trustee. *Id.* at 4; *see also,* response to question 21, statement of financial affairs, Doc. No. 8 (indicating 83% of equity security interest in Debtor held by such trust; 17% held by Todd and Penny Andersen). n2 Debtor was at the time of filing represented by attorney Craig Jorgensen.

> n2 Todd is the son of Terry and Rosanna Andersen. *See* Second Amended Disclosure Statement, Doc. No. 146, at 28.

Secured creditors Everett and Ardis McKinney ("Creditor") in May 2001 filed a motion for relief from the § 362(a) stay. Doc. No. 12. At [*3] a hearing later that month, the Court was advised that the motion was tentatively resolved. *See* Doc. No. 18 (minute entry). Counsel for Creditor was to submit a written stipulation and order. *Id.* Issues arose in regard to obtaining documentation of the parties' agreement, and no written agreement was filed.

In December 2001, Creditor filed another motion for relief from the automatic stay. Doc. No. 31. This stay relief motion was ultimately set for a final hearing under § 362(e) to occur on January 16, 2002. A subsequent motion of Creditor for stay relief, Doc. No. 38, was also set for a final evidentiary hearing at the same time. *See* Doc. No. 41 (minute entry).

The hearing was held as scheduled on January 16, 2002. n3 Debtor appeared at this hearing through its

2003 Bankr. LEXIS 387, *

counsel, Mr. Jorgensen. Counsel for Creditor, Craig Christensen, also appeared and recited orally on the record, in detail, the terms of a stipulated resolution reached between Debtor and Creditor. Creditor noted that the parties agreed to memorialize their agreement both orally at such hearing and again later in writing.

> n3 The transcript of that hearing is a matter of record, see Doc. No. 69, and it establishes what transpired and the terms of the parties' agreement, which are only here summarized. The Court will therefore eschew page and line citations to the transcript in this Decision.

[*4]

The agreement included Debtor's assumption of an obligation to make certain adequate protection payments to Creditor commencing in February and monthly thereafter; to file a disclosure statement and plan by February 28, 2002; to prepare and file operating reports and budgets; and to pay post-petition real property taxes. If the adequate protection payments were not timely made or if Debtor defaulted on any other aspect of agreed performance, Creditor was entitled to stay relief if such default(s) were not cured within 10 days of written notice. Such relief would be without further notice or hearing and could be sought from the Court ex parte. Creditor could also, on such uncured default, seek an ex parte order dismissing the case.

Debtor, through Mr. Jorgensen, confirmed and acknowledged that the recitation by Creditor was accurate, and that Debtor agreed and would be bound thereby. Mr. Jorgensen also noted that the agreement had been discussed in detail with the Andersens, who were present in the courtroom during the hearing and heard the recitation on the record, and that they also consented to the agreement.

The Court announced that it accepted the parties' agreement [*5] and expressly declared that its terms would be binding on the parties. Counsel for Creditor was to thereafter file a written stipulation and order. This written stipulation was never finalized or filed.

In May, 2002, Creditor filed an "ex parte motion" seeking relief from stay based on Debtor's violation of the agreement of January 16. See Doc. No. 72 (motion); Doc. No. 73 (affidavit). The transcript of the January 16 hearing was submitted in support of Creditor's request. Based upon the record before it, this Court on June 7, 2002, entered an order in favor of Creditor terminating the automatic stay of § 362(a). See Doc. No. 75 (the "Order").

On July 3, 2002, a notice of appeal was filed regarding the Order. Doc. No. 81. n4 There has been no motion made to this Court for entry of a stay pending appeal, which motion must in the first instance be presented to this Court. Fed. R. Bankr. P. 8005. n5

> n4 It is the prerogative of the appellate court (i.e., the U.S. District Court for this District, in Case No. CV-02-387-E-BLW), and not this Court, to rule upon the timeliness of that notice of appeal. However, it is obvious from this Court's files and records that the notice of appeal was not filed within the 10 days allowed by Fed. R. Bankr. P. 8002(a). That record additionally establishes that there were no motions of the sort identified in Rule 8002(b) filed which would extend or vary the time for appeal, nor any request made to extend the time for appeal under Rule 8002(c). [*6]

> n5 The Court notes that the record in Case No. CV-02-387-E-BLW includes an Order entered on February 27, 2003, denying an "Ex Parte Motion for Temporary Restraining Order and Stay of Sale and Other Proceedings to Enforce Decree of Foreclosure and Order of Sale" which had been filed by Debtor.

In July, 2002, Debtor's counsel, Mr. Jorgensen, sought leave to withdraw. Doc. No. 89. This request was granted. See Doc. No. 92 (minute entry); Doc. No. 93 (order). Hearings occurred over the next several months on Mr Jorgensen's compensation request, during which this Court heard from Debtor's managing member about his (unsuccessful) efforts to find new counsel. Finally, in November, an order was entered that required the appearance of counsel for Debtor by December 13 or the case would be dismissed. Doc. No. 107. From December 11 to 13, pleadings were filed indicating Debtor's retention and employment of Philip Hughes as its counsel. See Doc. Nos. 111, 112, 113. n6

> n6 As best as the Court can determine, there has never been a request by the Debtor to have the employment of Mr. Hughes as counsel approved, as required by § 327. Lack of such a request for approval, and the absence of Court approval, has several consequences, but the Court need not address them here.

[*7]

In early 2003, Debtor faced a motion of the United States Trustee to convert or to dismiss, *see* Doc. Nos. 122 and 123, and continued litigation over its former counsel's compensation. The undersigned became the presiding Judge on February 10, following a hearing on the compensation issue and the entry of a recusal order.

On March 4, 2003, Debtor, through Mr. Hughes, filed a "Motion for New Trial and Reinstatement of Automatic Stay." Doc. Nos. 137 and 138 (the "Motion"). Debtor there moved "for reconsideration or alternatively for a new trial on [the Court's] order granting relief of automatic stay on or about June 7, 2002, and for [an] order to Reinstate the Automatic Stay, and enjoin further action against the Estate by disputed claimant McKinneys outside the venue of the Bankruptcy Court." *Id.* at 1. The Motion was "based on Rules 59 and 60 of the Federal Rules of Civil Procedure." *Id.* at 2. n7

> n7 An "amended" motion was filed on March 11, *see* Doc. No. 141. It does not alter the Court's analysis, and reference will simply be made to the Motion. Use of that term in this Decision will encompass both the original and the amended motions.

[*8]

The Motion came on for hearing before the Court on March 31, 2003, and was taken under advisement at the conclusion of that hearing. n8 The present Decision constitutes the Court findings of fact and conclusions of law on the Motion. Fed. R. Bankr. P. 9014, 7052. n9

> n8 At a hearing held on March 5, Debtor's counsel indicated that a motion to reconsider the June 7, 2002 Order or to reinstate the stay was coming before the Court and would need to be heard as soon as possible. He indicated that it would be based solely on matters already of record and legal argument. The Court therefore set the March 31 hearing on this matter by video conference, noting that no new evidence would be entertained at that hearing. The Court also set an evidentiary hearing on April 30 on other matters. All this was done at the March 5 hearing with the knowledge and concurrence of all counsel.

> On March 31, Debtor filed a "Request for Evidentiary Hearing on Motion for New Trial and Reinstatement of Automatic Stay." Doc. No. 149. Not only was this untimely, being filed at or about the time the hearing was being held, it was inconsistent with Mr. Hughes' representations

made almost a month earlier. To the extent this motion is properly before the Court, it is denied. [*9]

> n9 It is appropriate to note that the evidence before the Court, upon which factual findings and legal conclusions herein are based, does not include either side's factual allegations or representations made through their counsel at the March 31 hearing. Argument has never constituted evidence. Particularly after Fed. R. Bankr. P. 9014 was amended in 2002 to add subpart (d), litigants are on notice of the need for proper presentation of evidence in regard to disputed factual matters. The instant Decision, therefore, is based on matters established by this Court's existing record. Fed. R. Evid. 201, 801.

## DISCUSSION AND DISPOSITION

### A. Motion for "new trial"

Federal Rule of Civil Procedure 59, cited by Debtor, is incorporated in bankruptcy proceedings by Fed. R. Bankr. P. 9023. However, there are several reasons why Debtor's "motion for new trial" under that Rule is not well taken.

First, such a motion -- whether for a "new trial" or to "alter or amend" the judgment — must be filed not later than 10 days after entry of the subject judgment. *See* Fed. R. Civ. P. 59(b), (e). Here,  [*10]  the subject judgment is the June 7, 2002 Order. The March 4, 2003 motion is clearly untimely and must be denied. *Id.; see also Thomason Farms, Inc. v. Tri-River Chemical Co. (In re Thomason Farms, Inc.),* 02.2 I.B.C.R. 107, 108 (Bankr. D. Idaho 2002) (discussing timeliness of Rule 59 motion). n10

> n10 The Court also there noted that an untimely Rule 59 motion does not toll the 10 day time period for filing a notice of appeal. 02.2 I.B.C.R. at 108 n.1.

Second, a Rule 59 motion provides a means to seek a "new trial ... in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity[.]" Fed. R. Civ. P. 59(a). Here, there was no trial. The Order was entered pursuant to the earlier express agreement of the parties as to facts or conditions, provable on affidavit, which would authorize immediate *ex parte* relief. This Rule is inapplicable.

## B. Motion for relief from judgment or order

Debtor also cites to Fed. R. Civ. P. 60(b), which addresses [*11] motions seeking relief from a judgment or order for certain specified reasons. This rule is incorporated by Fed. R. Bankr. P. 9024. This Rule allows the Court to enter relief from a prior judgment on the basis of mistake or "excusable neglect" (Rule 60(b)(1)); newly discovered evidence (Rule 60(b)(2)); fraud or misconduct (Rule 60(b)(3)); voidness of the judgment (Rule 60(b)(4)); satisfaction or release (Rule 60(b)(5)); or "any other reason justifying relief" from the judgment (Rule 60(b)(6)).

A request under Rule 60(b) is equitable in nature, and is committed to the discretion of the Court. *In re RVP, Inc.,* 01.4 I.B.C.R. 142, 143 (Bankr. D. Idaho 2001) (citing *Briones v. Riviera Hotel & Casino,* 116 F.3d 379 (9th Cir. 1997)). The concept surrounding such relief is "elastic" and the Court's equitable consideration will take into account all relevant circumstances. *Id.*

The Motion states:

> This motion is based upon alleged defects in the security which was the subject of the Motion to for [*sic*] Relief from Automatic Stay, to wit: (i) the obligation which was secured by the McKinney mortgage was never an obligation of the Debtor; (ii) the mortgage [*12] agreement was at best an executory contract within the meaning of the Bankruptcy Code; (iii) the mortgage was delivered into escrow to be recorded only if an "option" was entered by third parties in writing, (said option never having been exercised in writing or in any other manner); and (iv) the property affected by the Order for Relief from the Automatic Stay is a core asset of the estate requisite to its rehabilitation.

Doc. No. 137 and 138, at 1-2.

The types of contentions Debtor raises (*e.g.,* questions as to the *bona fides* of Creditor's security documents) are matters which should have been raised in response to the original motion for stay relief or, at a minimum, should have been taken into consideration by Debtor at the time of the January 16 hearing when its agreement to resolve the § 362 motion was read into the record. n11 The alleged "basis" of the Motion as quoted above, and as discussed at further length in the Motion, does not explain or justify a motion for Rule 60(b) relief some eight months after entry of the Order.

n11 In addition, Creditor filed a proof of claim on April 25, 2001. See Claim No. 8. No objection has ever been filed by Debtor or any other party, and the claim is therefore allowed. § 502(a). The proof of claim constitutes *prima facie* evidence of the validity and amount of that claim. Fed. R. Bankr. P. 3001(f).

[*13]

### 1. The effect of the January 16 agreement

Debtor argues that the Order should be subject to reconsideration because the oral agreement of January 16 was never reduced to writing or filed with the Court. *See, e.g.,* Amended Motion, Doc. No. 141, at 9, PP 1, 2. n12 These arguments are not persuasive.

n12 This "amended" motion adds these two paragraphs, which were missing from the Motion, Doc. No. 137/138. Otherwise the two pleadings are identical.

First of all, the transcript of the January 16 hearing, Doc. No. 69, makes it quite clear that the terms of the agreement as orally presented were agreed and consented to by Debtor, without qualification. The Court expressly declared and ordered that the terms so recited were binding. Creditor (perhaps, as it turns out, for good reason) apparently decided to take a "belt-and-suspenders" approach, having the agreement and its terms confirmed by Debtor on the open record as well as seeking to reduce it to a written stipulation and order. This cautious approach, [*14] however, does not vitiate or impair the effectiveness of the oral agreement. Debtor did not make its announced consent to the terms of the agreement contingent on anything, including a later written document.

The Ninth Circuit in *Doi v. Halekulani Corp.,* 276 F.3d 1131 (9th Cir. 2002), considered a similar issue. There, after the material terms of an agreement were read into the record in open court, Doi unambiguously (albeit ungrammatically) voiced her consent. She later claimed the consent was conditional, and that she did not intend to be bound until there was a written agreement. 276 F.3d at 1137. n13

n13 Doi had stated, in response to a question from the bench, "after I see the documents." The Court of Appeals nevertheless "[found] no merit in this argument [that her consent was conditional]." *Id.* Here, there wasn't even that

degree of alleged equivocation, as Debtor's consent was express and unconditional.

The court rejected Doi's several arguments, and held that she [*15] had entered into a binding settlement agreement in open court, and the trial court did not abuse its discretion in enforcing it. 276 F.3d at 1137-40. Among other authorities, *Doi* cited *Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) ("it is well established that an oral agreement is binding on the parties, particularly when the terms are memorialized into the record"); and *In re Christie*, 173 B.R. 890, 891 (Bankr. E.D. Tex. 1994) ("An agreement announced on the record becomes binding even if a party has a change of heart after [she] agreed to its terms but before the terms are reduced to writing.") 276 F.3d at 1138.

Decisional law is rife with observations about the importance of negotiated settlements of disputes. They are, for several prudential reasons, to be encouraged. This might be viewed as particularly true in bankruptcy litigation, where the preciousness of both time and money is accentuated. To be of value, however, settlements must be enforceable and must be enforced. If parties were at liberty to disavow or modify their prior agreements, there would be a serious impact on the utility of freely-bargained settlements [*16] of disputes. These views are in accord with those of Chief Judge Pappas, who wrote:

> This Court has repeatedly emphasized the importance of strict compliance with stipulations negotiated by parties in pending bankruptcy cases. Such stipulations play a critical role in the bankruptcy process. If obedience to the promises made in connection with a bankruptcy case is easily excused, negotiations between parties will be chilled and the process of obtaining cooperation and consensus in bankruptcy cases will be impaired. The Court declines to compromise the integrity of such agreements without a compelling reason to do so.

*In re Blele*, 03.1 I.B.C.R. 85, 86 (Bankr. D. Idaho 2003) (citations omitted).

This Court has therefore been loath to tolerate a party's attacks on or disavowal of its prior settlement agreements. *Id.*, *see also In re Bish's Boys, LLC*, 02.1 I.B.C.R. 6 (Bankr. D. Idaho 2002); *In re Burrows*, 95 I.B.C.R. 26, 28 (Bankr. D. Idaho 1995) (refusing to allow a chapter 12 debtor to modify a plan in a fashion which would negate a prior "drop-dead" stipulation,

noting that parties "should be required to show compelling cause why they should be excused from [*17] a negotiated agreement containing a default condition" and such cause "should be both unanticipated and consist of circumstances for which [they] should not be justly held accountable.") *Accord*, *In re Wald*, 211 B.R. 359, 361 (Bankr. D.N.D. 1997).

In *Bish's Boys*, the Court considered a Rule 60(b)(1) "excusable neglect" contention raised in connection with a prior agreement and order. While recognizing the remedial power of Rule 60(b) should be liberally applied, the Court noted that "'not even a liberal interpretation of excusable neglect will excuse every error or omission in the conduct of litigation.'" 02.1 I.B.C.R. at 7 (quoting *In re Wahobin*, 225 B.R. 756, 758, 98.4 I.B.C.R. 97 (Bankr. D. Idaho 1998)). After noting the applicable factors in an excusable neglect analysis, n14 the Court rejected the attempt to obtain relief. *Id.* It noted that "as a matter of policy, [the Court] should be reluctant to disturb the obligations undertaken by parties in stipulations reached in the context of a contested bankruptcy proceeding, where negotiation and compromise play so vital a role in the reorganization process." *Id.* While the agreement [*18] there in question, first made on the open record and then memorialized, may have been regretted or even made by the lawyer without his client's consent, it was nevertheless entitled to be enforced, and "'neither ignorance nor carelessness on the part of the litigant *or his attorney* provide grounds for relief under Rule 60(b)(1).'" *Id.* (quoting *Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992)). n15

---

n14 These factors include the length of delay and its potential impact on judicial proceedings, and the reason for the delay including whether it was within the reasonable control of the movant. 02.1 I.B.C.R. at 7 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)). Both these factors weigh heavily against Debtor here.

n15 Debtor argues here that failure to reconsider the Order will effect the loss of a "core asset" of the estate required for reorganization. *See, e.g.*, Motion, at 1. A similar plea in *Bish's Boys* was unavailing: "Needless to say, the Court appreciates that enabling Debtor's primary secured creditor to repossess and sell its collateral if it chooses to do so could complicate, perhaps even practically preclude, Debtor's attempt to successfully reorganize ... The time to consider the severity of the remedy for Debtor's default ...

2003 Bankr. LEXIS 387, *

was ... when Debtor and its lawyer agreed to the 'drop-dead clause,' not now." 02.1 I.B.C.R. at 8.

[*19]

The Court finds, after evaluation of all Debtor's submissions and arguments, that no credible basis has been alleged, much less shown, to support relief from Debtor's prior binding agreement. Even if not faced with the compelling policies in favor of enforcement of settlement agreements, Debtor has failed to establish any grounds for reconsideration of or relief from the Order under any of the subdivisions of Rule 60(b).

### C. Reinstatement of the § 362(a) stay

Debtor also asks that the Court "reinstate" the automatic stay of § 362(a). No legal authority or analysis supporting this suggested relief is stated in the Motion, nor has any been advanced through Debtor's arguments and submissions at hearing. That no basis exists allowing the Court to reimpose or reinstate the automatic stay once it has been terminated was made clear by this Court some time ago in *Jones v. Wood (In re Wood)*, 33 B.R. 320, 322-23, 83 I.B.C.R. 112, 114-15 (Bankr. D. Idaho 1983). n16 *Wood* remains good law. *Accord, Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 n.1 (9th Cir. 2002).

> n16 *Wood* was discussed and followed in *United States v. Marine Power & Equipment Co. (In re Marine Power & Equipment Co.)*, 71 B.R.

925, 928-30 (W.D. Wash. 1987), and cited with approval in *Official Creditors' Committee v. Metzger (In re Dominelli)*, 788 F.2d 584, 586 (9th Cir. 1986).

[*20]

The Motion also asks that this Court "enjoin" Creditor from pursuit of its state law rights and remedies as a secured creditor. Debtor has not established a right to injunctive relief. *See, e.g., Morrow v. Torrance Bank (In re Morrow)*, 189 B.R. 793, 802 n.7 (Bankr. C.D. Cal. 1995) (noting Ninth Circuit standards for injunctive relief); *see also* Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 65). Moreover, an injunction may be sought only through an adversary proceeding. *See* Fed. R. Bankr. P. 7001(7). Debtor has not properly sought such relief, and this is an additional basis for denial of the request. *Great Western Bank v. Snow (In re Snow)*, 201 B.R. 968, 977 (Bankr. C.D. Cal. 1996); *Ramirez v. Whelan (In re Ramirez)*, 188 B.R. 413, 416 (9th Cir. BAP 1995) (Klein, J, concurring).

### CONCLUSION

For the foregoing reasons, Debtor's Motion seeking relief from the Court's Order of June 7, 2002, will be denied. Counsel for Creditor may submit a proposed order in accord herewith.

Dated this 11th day of April, 2003.

# EXHIBIT "D"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                  . Case No. 00-2263(MFW)
                                        .
                                        .
KAISER GROUP INTERNATIONAL,             . 824 Market Street
  INC., et al,                          . Wilmington, Delaware  19801
                                        .
                      Debtors.          .
                                        . August 18, 2004
. . . . . . . . . . . . .               . 4:02 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:              Saul Ewing LLP
                              By:  DONALD J. DETWEILER, ESQ.
                              222 Delaware Avenue
                              Suite 1200
                              Wilmington, DE  19801

                              Squire, Sanders & Dempsey, LLP
                              By:  CHRISTOPHER MEYER, ESQ.
                              312 Walnut Street
                              Suite 3500
                              Cincinnati, OH  45202


Audio Operator:               Danielle Cherry

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail: jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

1693

2

APPEARANCES (Cont'd.):

For ICT Spectrum Claimants:    Miller Faucher And Cafferty LLP
                               By:  MICHAEL S. TARRINGER, ESQ.
                               One Logan Square, Suite 1700
                               18th & Cherry Streets
                               Philadelphia, PA  19103

1 status quo is under 8005 I have to look to the plan to see what
2 is the status quo, and that if the plan in effect provided that
3 no distribution will occur until the appeal is resolved --

4     MR. TARRINGER:  But we're not -- but what we're
5 seeking here is let's have a bond posted -- we -- one thing
6 that opposing counsel did mention that I agreed with -- a lot
7 of it I didn't agree with, but one thing I did agree with is
8 this.  That we -- that if they post the bond -- and they have
9 provided this Court nothing to show that they can't post the
10 bond -- then we do not object to a stay.

11     THE COURT:  Yes but they're saying they don't need to
12 post a bond.  What they need to do under the terms of -- what
13 they need to do is to protect your right to a distribution
14 under the plan, and under the plan, assuming you win the
15 appeal, you would be entitled to the 263,000 shares of stock.
16 That they put in escrow.  That proves they're able to perform
17 if they lose the appeal, and that's all you're entitled to.

18     MR. TARRINGER:  Well but when Your Honor awarded us
19 that stock, it had a value, and I go back to 8005 says that --
20     THE COURT:  But my order isn't final.  Your right as
21 far as value -- your right to distribution is when the order is
22 final.  That is the appeal is resolved, and that would depend
23 on the value at the time the appeal is resolved.  Wouldn't it?
24     MR. TARRINGER:  I think it's basically the interplay
25 between Rule 8005 and the plan.  Does the -- can a plan

22

1   particular issue before the Court today.

2          THE COURT:  Well, I think you're bound by the plan,

3   and since the plan says no distribution until a final order, I

4   think --

5          MR. TARRINGER:  But are we talking about a

6   distribution, or are we talking about preserving the status --

7   I mean here --

8          THE COURT:  Well but that's what I say.  There are

9   two prongs to this versus what are your rights under the plan

10  that have to be protected under Rule 8005, and under the plan

11  you would not be entitled to a distribution.  You would not be

12  entitled to any protection in the diminution of the value of

13  the stock between confirmation and the time the distribution is

14  made.  There's no allowance for allocation for that.

15         MR. TARRINGER:  Well, I still think that Rule 8005 --

16  if I could get the language?

17         THE COURT:  Yes.

18         MR. TARRINGER:  Would you bear with me as I read?

19  Rule 8005 states, "A motion for a stay of the judgment, order,

20  or decree of a bankruptcy judge for approval of a supersedeas

21  bond or for other relief pending appeal must ordinarily be

22  presented to the bankruptcy judge in the first instance

23  notwithstanding Rule 7062 but subject to the power of the

24  District Court and the bankruptcy appellate panel reserved

25  hereinafter.  The bankruptcy judge may suspend or order the

25

1  protected.  But if they don't issue the stay --

2            THE COURT:  But are you entitled to that protect --

3  rights --

4            MR. TARRINGER:  I hear what you're --

5            THE COURT:  That protects rights that you may not be

6  -- that you are not entitled to under the plan.

7            MR. TARRINGER:  Well if the stock goes down to 12

8  cents a share as it was when -- the day before they declared

9  bankruptcy --

10           THE COURT:  Right.

11           MR. TARRINGER:  -- from 24 --

12           THE COURT:  Let's assume it's 12 cents a share.  But

13 so what?

14           MR. TARRINGER:  We certainly weren't damaged --

15           THE COURT:  But under the plan you're not entitled to

16 that --

17           MR. TARRINGER:  Well, I under --

18           THE COURT:  -- stock until the day that an order is

19 issued and whether it's worth 12 cents or 12 hundred dollars on

20 that day, that's all you're entitled to.  You're not entitled

21 to dollars.

22           MR. TARRINGER:  I understand Your Honor's position.

23 I didn't -- I certainly didn't see them argue this in their

24 briefs.

25           THE COURT:  Well, they did as to the plan terms.

J&J COURT TRANSCRIBERS, INC.

1          MR. TARRINGER:  That's what --

2          THE COURT:  But your right is not to money.  Your

3     right is not to stock worth $25.  Your right is to the stock,

4     and that was true under the plan.  The plan said people get

5     stock.  It didn't say people will get stock worth $25 each.

6          MR. TARRINGER:  That's true.  That's true.

7          THE COURT:  It didn't say everybody will get stock

8     with a value as of the effective date.

9          MR. TARRINGER:  That's true, but our position was

10    when I came in here today -- and I still think it has merit --

11    is that when Your Honor on January 20th at the end of that

12    hearing said I think that the Spectrum claimants are correct, I

13    think that they should get the stock, and it had a value on

14    that date, and that's when we -- it was up to us to give you a

15    plan of distribution to move forward.

16         THE COURT:  Except that the plan said that if they

17    appealed, that you don't get the distribution until the appeal

18    is decided.  In fact, the plan says you don't get a

19    distribution until there's a final order allowing your claim

20    anyway, and that's true not just for you, but for others.

21         MR. TARRINGER:  Well, we looked at a final order as

22    being a final order of this Court, and that's why we're here.

23         THE COURT:  Well --

24         MR. TARRINGER:  I mean that's --

25         THE COURT:  But I think the plan is different, and I

                    J&J COURT TRANSCRIBERS, INC.

EXHIBIT "E"

Columbus Dispatch (Ohio) January 20, 2005 Thursday, Home Final Edition

Copyright 2005 The Columbus Dispatch
Columbus Dispatch (Ohio)

January 20, 2005 Thursday, Home Final Edition

SECTION: BUSINESS; Pg. 01D

LENGTH: 558 words

HEADLINE: MAX & ERMA'S MOVES TO REDUCE COSTS ;
Changing its stock registration will save thousands, chain says

BYLINE: Barnet D. Wolf, THE COLUMBUS DISPATCH

BODY:

Citing the high cost of meeting federal regulations, Max & Erma's Restaurants will cancel its stock registration, allowing the company to stop filing its financial data with the Securities and Exchange Commission.

Although the Columbus-based restaurant chain will continue to have publicly traded stock, the move is expected to save at least $450,000 in the first year after deregistration and $350,000 annually afterward.

The 98-restaurant chain earned $1.1 million on revenues of $185 million in the fiscal year that ended Oct. 31.

"The costs associated with Max & Erma's being an SEC-reporting company are no longer justified by the limited benefits," said Todd Barnum, chairman, chief executive and president of the company.

Max & Erma's decision is part of a growing trend of companies deciding to "go dark" -- giving up their registration but keeping publicly traded stock -- as a result of the costs involved with the 2002 Sarbanes-Oxley Act, a federal law designed to provide more accountability for publicly traded companies.

A recent report by professors at the Wharton School of Business and the University of Maryland found that nearly 200 companies went dark during 2003 alone, the year after Sarbanes-Oxley, almost triple the number in 2002 and more than 14 times more than in 2000.

In addition to the rising number of companies that have decided to go dark, others have chosen to become privately owned businesses.

Max & Erma's board of directors yesterday approved a 1-for-200 reverse stock split, which will leave the company with about 200 investors owning at least one share. SEC registration requires 300 or more shareholders.

Most of Max & Erma's 700 shareholders will own less than a share after the split. Those investors will get $16 per share based on their pre-split holdings, a 21 percent premium over Tuesday's closing price of $13.25 per share. No trading was reported yesterday.

The company estimates it will repurchase about 53,000 pre-split shares.

Immediately after the reverse split, there will be a 200-for-1 forward split that will leave the remaining shareholders with the same amount of stock they had before the first split.

After the transactions, Max & Erma's stock will move from the Nasdaq exchange to the over-the-counter markets.

Shareholders are expected to vote on the plan in late April.

Sarbanes-Oxley was passed in reaction to the financial blowups at Enron, WorldCom and other companies that cost investors billions of dollars and revealed serious corporate governance gaps.

The biggest burden from Sarbanes-Oxley is that it requires companies to document and test their internal systems of checks and balances that are supposed to limit errors.

A study by executive recruiting firm Korn/Ferry International last year found that the average large U.S. company will spend $5.1 million to comply with Sarbanes-Oxley.

Even small companies are spending $100,000 to $500,000 more to meet the law's requirements, according to other surveys.

"A lot of companies will have to decide whether the benefit of external financing overcomes the cost of being a publicly traded company now," said David D. Williams, associate professor of accounting at Ohio State University.

"I think more and more companies will decide not."

bwolf@dispatch.com

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
|  | ) |  |
| **KAISER GROUP INTERNATIONAL,** | ) |  |
| **INC., *et al.*,** | ) | **Case No. 00-2263 (MFW)** |
|  | ) |  |
| Debtors. | ) | **(Jointly Administered)** |

### CERTIFICATE OF SERVICE

I, Patrick J. Reilley, Esquire, hereby certify that on May 24, 2005, I caused a copy of the foregoing **Kaiser's Response To The ICT Claimants' Motion For A Stay Of The De-Registration Of Kaiser Group Holdings Common Stock** to be served on the parties on the attached service list in the manner indicated therein.

Patrick J. Reilley (No. 4451)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6800

521450.1 5/24/05

**KAISER GROUP INTERNATIONAL, INC.,** *et al.*
**2002 Service List**

**Via Hand Delivery:**
Pamela S. Tikellis, Esquire
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899

**Via Telecopy and U.S. Mail:**
Michael S. Tarringer, Esquire
Miller Faucher & Cafferty LLP
One Logan Square
18th and Cherry Streets, Suite 1700
Philadelphia, PA  19103

**Via U.S. Mail:**
Joel A. Waite, Esquire
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Charlene D. Davis, Esquire
Elio Battista, Jr., Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

U.S. Attorney's Office
1201 Market Street
Suite 1100
Wilmington, DE 19899

William P. Bowden, Esquire
Christopher S. Sontchi, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE 19899

Derek C. Abbott, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Curtis J. Crowther, Esquire
White and Williams LLP
824 N. Market Street
Wilmington, DE  19899-0709

David Buchbinder, Esquire
Office of the U.S. Trustee
844 King Street, Room 2313
Lockbox 35
Wilmington, DE  19801

Neal J. Levitsky, Esquire
L. Jason Cornell, Esquire
Fox Rothschild LLP
919 N. Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE  19899

Michelle McMahon, Esquire
Jeffrey C. Wisler, Esquire
Connolly Bove Lodge & Hutz, LLP
1007 Orange Street. 8th Floor
P.O. Box 2207
Wilmington, DE 19801

Ellen W. Slights, Esquire
Assistant U.S. Attorney
1201 Market St., Suite 1100
PO Box 2046
Wilmington, DE  19899-2046

Scott D. Cousins, Esquire
William E. Chipman, Esquire
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

Gregg M. Galardi, Esquire
Eric M. Davis, Esquire
Skadden Arps Slate Meagher
 & Flom LLP
One Rodney Square, PO Box 636
Wilmington, DE 19899

Laurie Selber Silverstein, Esquire
Potter Anderson & Corroon
Hercules Plaza
1313 N. Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19899

Robert J. Dehney, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

Michael D. DeBaecke, Esquire
Blank Rome LLP
Chase Manhattan Center, Suite 800
1201 Market Street
Wilmington, DE 19801-4226'

Lisa C. McLaughlin, Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Adam G. Landis, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1401
Wilmington, DE 19801

David J. Carickhoff, Jr., Esquire
Cozen and O'Connor
1201 N. Market Street, #1400
Wilmington, DE 19806

Thomas G. Macauley, Esquire
Zuckerman Spaeder LLP
919 Market St., Suite 1705
P.O. Box 1028
Wilmington, DE 19899

Theodore J. Tacconelli, Esquire
Ferry & Joseph, P.A.
824 Market Street, #904
PO Box 1351
Wilmington, DE 19899

William D. Sullivan, Esquire
Buchanan Ingersoll PC
The Nemours Building
1007 N. Orange Street, Suite 1100
Wilmington, DE 19801

Lori Simpson, Esquire
Lori Simpson, P.A.
2 N. Charles Street, Suite 500
Baltimore MD 21201

G. Christopher Meyer, Esquire
Lynn Rowe Larsen, Esquire
Christine Murphy Pierpont, Esquire
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, OH 44114-1304

John Scott, Esquire
Kaiser Group International, Inc.
9300 Lee Highway, 2nd Floor
Fairfax, VA 22301

Kevin T. Lantry, Esquire
Sidley Austin Brown & Wood
555 West 5th Street, Suite 4000
Los Angeles, CA 90013-1010

Frederick D. Holden, Jr., Esquire
Orrick, Herrington & Sutcliffe LLP
Old Federal Reserve Bank Building
400 Sansome Street
San Francisco, CA  94111-3143

Richard P. Swanson, Esquire
Craig E. Freeman, Esquire
Thelen Reid & Priest LLP
875 3rd Avenue, Floor 9
New York, NY  10022-7228

Christopher J. Ryan
Manager of Collections
Baker Hughes, Inc.
3900 Essex Lane, Suite 1200
Houston, TX  77027-5177

The Bank of New York
Attn:  Loretta A. Lundberg, Vice Pres.
101 Barclay St., 21 West
New York, NY  10286

James Gadsden, Esquire
Carter, Ledyard & Milburn
2 Wall Street
New York, NY  10005-2072

Kenneth Jenkins, Esquire
Stone & Webster
100 Technology Center Drive
Stoughton, MA  02072-4710

Hollace T. Cohen, Esquire
Jenkens & Gilchrist Parker Chapin
The Chrysler Building
405 Lexington Avenue
New York, NY  10174

Todd W. Ruskamp, Esquire
Shook Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118

Ronald R. Peterson, Esquire
Craig C. Martin, Esquire
Jenner & Block
One IBM Plaza
Chicago, IL  60611

Robert A. Kargen, Esquire
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA  19103-7395

Attn:  Danita Garner
A.G. Edwards & Sons, Inc.
3801 Clark Avenue
St. Louis, MO  63103

Newton G. Pritchett, Jr., Esquire
Assistant Attorney General
PO Box 629
Raleigh, NC  27602-0629

Phillip Seligman
US Dept. of Justice
PO  Box 875
Franklin Station
Washington, DC  20044

Susan Sherrill
U. S. Securities and Exchange Commission
Atlanta Regional Office of Reorganization
3475 Lenox Road NE, Suite 1000
Atlanta, Georgia 30326-1232

Missouri Dept. of Revenue
Attn: Gary L. Barnhart, Esquire
Bankruptcy Unit
301 W. High St., Room 670
PO Box 475
Jefferson City, MO  65105-0475

Jeffrey R. Dollinger, Esquire
Scruggs & Carmichael, PA
1 Southeast 1st Avenue
Gainsville, FL 32601

Steven Ferst, Esquire
Florida Department of Transportation
605 Suwannee Street
Tallahassee, FL 32399

Lawrence G. Widem
Assistant Attorney General
55 Elm Street
PO Box 120
Hartford, CT 06106

Ronald M. Martin, Esquire
Holland & Hart
90 S. Cascade Ave., Suite 1000
Colorado Springs, CO 80903

J. Thomas Macdonald, Esquire
Otten, Johnson, Robinson, Neff
 & Ragonetti, PC
950 17th Street, Suite 1600
Denver, CO 80202

Arnold S. Albert, Esquire
Albert & Schulwolf, LLC
77 S. Washington Street, Floor 1
Rockville, MD 20850-4251

Tisha Federico, Esquire
Attorney for Commissioner of Revenue
Legal Services, 27th Floor
812 8th Avenue North
Nashville, TN 37243

Roger G. Jones, Esquire
Boult, Cummins, Conners & Berry
414 Union Street, Suit 1600
PO Box 198062
Nashville, TN 37219

Holly L. Tomchey, Esquire
David J. Fischer, Esquire
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Chicago, IL 60606

Richard M. Beheler, Esquire
Blackwell Sanders Peper Martin, LLP
2300 Main Street, Suite 1100
PO Box 419777
Kansas City, M0 64108

Frederick R. Brock, Esquire
Gartner, Brock and Simon
PO Box 10697
Jacksonville, FL 32247-0697

Bart Hartman
Teasurer-Tax Collector
County of San Diego
Attn: Elizabeth Molina
1600 Pacific Highway, Room 162
San Diego, CA 92101

John P. Dillman, Esquire
Linebarger Heard Goggan Blair
 Graham Pena & Sampson, LLP
PO Box 3064
Houston, TX 772533064

Traci L. Cotton, Esquire
The University of Texas System
Office of the General Counsel
201 W. Seventh Street
Austin, TX 78701

Lawrence E. Rifken, Esquire
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102

Alison K. North, Esquire
Deputy County Attorney
Civil Division
Pima County Attorney's Office
32 N. Stone, Suite 2100
Tucson, AZ 85701

Elizabeth Weller, Esquire
Linebarger Heard Goggan Blair
 Graham Pena & Sampson, LLP
2323 Bryan St., Suite 1720
Dallas, TX 75201-2691

Leslie Ann Berkoff, Esquire
Morritt, Hock, Hamroff & Horowitz, LLP
400 Garden City Plaza, Suite 202
Garden City, NY 11530

Edgar J. Lana, Esquire
P. O. Box 2180
18 Orinda Way
Orinda, CA 94563

Samuel J. Fortier
Fortier & Mikko, P. C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503

AT&T Corp.
Attn: Judith Archer, Esquire
900 US Highway 202/206
Bedminster, NJ 07921-2691
Andrew L. Swope, Esquire
Kirkpatrick & Lockhart Nicholson Graham
240 North Third Street
Harrisburg, PA 17101

Paul K. Skvarna
c/o Wm. J. Simon, Esquire
The Law Offices of Wm. J. Simon
P.O. Box 1705
San Bernardino, CA 92402-1705

Michael D. Cooper, Esquire
Wendel, Rosen, Balck & Dean, LLP
1111 Broadway, 24th Fl.
Oakland, CA 94607

International Finance Corporation
2121 H Street, NW
Washington, DC 20433

Attn: Ing. Svatopluk Velkoborsky
Attn: Ing. Gerhard Pretsch
Vratimovska 689
707 02 Ostrava Kuncice
Czech Republic

Raymond J. Urbanik, Esquire
Russell L. Munsch, Esquire
Munsch Hardt Kopf & Harr, P.C.
4000 Fountain Place
1445 Ross Avenue
Dallas, TX 75202-2790

Michael B. Schaedle, Esquire
Blank Rome Comisky & McCauley
One Logan Square
Philadelphia, PA 19103

Denise Ann Faulk, Esquire
State of Arizona
Office of the Attorney General
1275 West Washington
Phoenix, AZ 85007

Anita L. Blaney, Esquire
1815 Greenplace Terrace
Rockville, MD 20580

Martha E. Romero, Esquire
Law Offices of Martha E. Romero
 and Associates
7743 South Painter Avenue, Suite A
Whittier, CA 90602

Allison Weiss, Esquire
LeBoeuf, Lamb, Greene & MacRae
125 W. 55th Street
New York, NY  10019-5389

Joseph M. Korte
744 Eastridge Place
Boise, ID  83712

William M. Rossi-Hawkins, Esquire
Phillips, Lytle, Hitchcock, Blaine
 & Huber LLP
437 Madison Avenue, 34th Floor
New York, NY  10022

Kevin Bannon
Lampe Conway Co. LLC
680 5th Avenue, Suite 1202
New York, NY  10019-5429