# EXHIBIT   I



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KAISER GROUP INTERNATIONAL, INC. et al., | Case Nos. 00-2263 to 00-2301 (GMS) |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED PLAN OF REORGANIZATION

Kaiser Group International, Inc. and its affiliated debtor subsidiaries,[1] debtors and debtors in possession hereby propose the following joint plan of reorganization, which shall supersede any plan previously filed by the undersigned in these proceedings:

## ARTICLE 1
## DEFINITIONS

1.01    <u>Terms Defined in the Plan.</u>  Capitalized terms used in the Plan shall have the respective meanings specified in Exhibit A to the Plan.

1.02    <u>Terms Defined in the Bankruptcy Code.</u>  Capitalized terms used in the Plan which are not defined in Exhibit A to the Plan but which are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code.

---

[1] The affiliated debtor subsidiaries are EDA, Incorporated, Kaiser/Georgia Wilson, Inc., Kaiser Engineers Massachusetts, Inc., Kaiser Technology Holdings, Inc., Kaiser Advanced Technology, Inc., Tudor Engineering Company, Cygna Group, Inc., Liability Risk Management, Inc., Kaiser Europe, Inc., Kaiser Engineers Group, Inc., International Waste Energy Systems, Inc., Henry J. Kaiser Company, Kaiser Engineers, Inc., ICF Kaiser Advanced Technology of New Mexico, Inc., Kaiser Engineers & Builders, Inc., Kaiser Engineers Corporation, Kaiser Engineers International, Inc., Kaiser Engineers (California) Corporation, KE Services Corporation, Kaiser Engineers of Michigan, Inc., Kaiser Engineers and Constructors, Inc., Kaiser Overseas Engineering, Inc., KE Livermore, Inc., Kaiser Engineers Pacific, Inc., Kaiser Hanford Company, Phase Linear Systems Incorporated, Kaiser R.G.P. No. 1, Inc., Henry J. Kaiser Development Corporation, Inc., Global Trade & Investment, Inc., HBG Hawaii, Inc., HBG International, Inc., Kaiser Holdings Unlimited, Inc., American Venture Investments Incorporated, American Venture Holdings, Inc., Excell Development Construction, Inc., Kaiser Leasing Corporation, Inc., Kaiser DPI Holding Co., Inc., and Cygna Consulting Engineers and Project Management, Inc.

1.03   Rules of Interpretation.  For purposes of the Plan:  (i) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means such document substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit means such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; and (v) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply, except to the extent inconsistent with the express provisions of this Section 1.03 of the Plan.

1.04   Exhibits.  Exhibits to the Plan may be amended from time to time, and amended Exhibits may be filed with the Bankruptcy Court from time to time, but in no event later than five (5) business days before the initial date set for the hearing on the confirmation of the Plan or such other date as may be authorized by the Bankruptcy Court.  Current copies of Exhibits may be obtained by reference to the Bankruptcy Court's files or shall be provided to parties in interest upon written request to the Debtors.

1.05   Time Periods.  Bankruptcy Rule 9006(a) applies to the computation of any period of time prescribed or allowed by the Plan, and Bankruptcy Rules 9006(b) and 9006(c) apply respectively to the enlargement or reduction of any period of time prescribed or allowed by the Plan.

## ARTICLE 2
## PAYMENT OF ADMINISTRATIVE EXPENSES, TAX CLAIMS AND CERTAIN UNCLASSIFIED CLAIMS

2.01   Administrative Expenses.  Except as otherwise provided in Section 2.02 of the Plan, administrative expenses of the kind specified in Section 507(a)(1) of the Bankruptcy Code, including obligations for goods and services arising after the Filing Date in the ordinary course of the Debtors' business, shall be paid by the Debtors in the ordinary course of their business, (i) in Cash, on the Distribution Date, or (ii) in accordance with the commercial credit terms extended by the creditor of such obligations or (iii) otherwise as required by law.

2.02   Fees of Professionals.  Professionals employed at the expense of the estate of the Debtors and entities which may be entitled to an allowance of fees and expenses from the estate of the Debtors pursuant to Sections 503(b)(2) through 503(b)(6) of the Bankruptcy Code shall be paid by the Debtors, in Cash, as soon as practicable after the order approving such allowance of compensation or reimbursement of expenses becomes a Final Order.  All professional fees for services rendered in connection with the Bankruptcy Cases and the Plan after the Confirmation Date including, without limitation, those relating to the occurrence of the Effective Date, the prosecution of causes of action preserved under the Plan, and the resolution of disputed Claims, are to be paid by the Debtors upon receipt of an invoice for such services, or on such other terms as the Debtors may agree to, without the need for further Bankruptcy Court authorization or

Library Cleveland Document #: 167504v13

entry of a Final Order. If the Debtors and any professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such professional, such amount is to be determined by the Bankruptcy Court.

2.03    Tax Claims. Allowed Unsecured Claims of governmental units of the kinds specified in Section 507(a)(8) of the Bankruptcy Code shall be paid by the Debtors, in Cash, on the Distribution Date or, if the Debtors so elect, in Cash, over a period not exceeding six years after the respective dates of assessment of such Claims. Such deferred payments shall be in the aggregate equal to one hundred percent (100%) of such respective Allowed Claims plus interest thereon from the Effective Date, at a rate determined by the Bankruptcy Court to be in compliance with Section 1129(a)(9)(C) of the Bankruptcy Code; *provided, however,* that Debtors retain the right to prepay any such Allowed Claim, or any remaining balance of such Allowed Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

2.04    Other Priority Claims. Except as otherwise provided in this ARTICLE 2 of the Plan, Allowed Unsecured Claims of the kinds specified in Sections 507(a) of the Bankruptcy Code shall be paid by the Debtors, in Cash, on the Distribution Date or on such later date as they become due and payable in accordance with their respective terms.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.01    Secured Claims. Class 1 shall consist of all Secured Claims

3.02    Unsecured Claims. Unsecured Claims shall comprise the following Classes:

(a)    Senior Claims. Class 2 shall consist of Unsecured Claims, if any, (i) that constitute Senior Indebtedness as defined in the Old Indenture for the Old Subordinated Notes, and (ii) that are not Class 3 Claims.

(b)    Convenience Claims. Class 3 shall consist of Unsecured Claims that are Convenience Claims.

(c)    Other Unsecured Claims. Class 4 shall consist of Unsecured Claims other than those Claims in Class 2 and Class 3.

3.03    Equity Interests. Class 5 shall consist of Equity Interests.

3.04    Disputes as to Class 3 Classification. With respect to any creditor designated by the Debtors as a member of Class 3, if the Bankruptcy Court determines that such creditor may not be appropriately included in Class 3 and that such inclusion violates the provisions of the Bankruptcy Code and renders the Plan unconfirmable, then such creditor will automatically be deemed to be a member of Class 4 and not a member of Class 3.

## ARTICLE 4
## TREATMENT OF CLASSES
## OF CLAIMS AND EQUITY INTERESTS

4.01   Treatment of Secured Claims. Class 1 Claims are not Impaired. The legal, equitable and contractual rights of the holders of the Class 1 Allowed Claims shall remain unaltered by the Plan.

4.02   Treatment of Senior Claims. Class 2 Claims are Impaired. In full settlement, release and discharge of all Class 2 Claims, the Debtors shall, on the Distribution Date, distribute to the holders of Class 2 Allowed Claims New Senior Notes in a principal amount of one hundred percent (100%) of their respective Class 2 Allowed Claims.

4.03   Treatment of Convenience Claims. Class 3 Claims are not Impaired. The legal, equitable and contractual rights of the holders of Class 3 Allowed Claims shall remain unaltered by the Plan.

4.04   Treatment of Other Unsecured Claims. Class 4 Claims are Impaired. In full settlement, release and discharge of all Class 4 Claims, the Debtors shall, on the Distribution Date, distribute to the holders of Class 4 Allowed Claims:

(a)     their Pro Rata share of Cash distributions of Asset Sale Proceeds, if any, distributed in increments of Fifty-Five Dollars ($55.00) and in reduction of the shares of New Preferred Stock otherwise to be issued as provided in Section 4.04(b) of the Plan;

(b)     one share of New Preferred Stock for each One Hundred Dollars ($100.00) of such holder's respective Class 4 Allowed Claim, *provided however,* that such number of shares shall be reduced by one share for each Fifty-Five Dollars ($55.00) of Cash distributed to such holder pursuant to Section 4.04(a) of the Plan; and

(c)     one share of New Common Stock for each One Hundred Dollars ($100.00) of such holder's respective Class 4 Allowed Claim.

4.05   Treatment of Equity Interests. Class 5 Equity Interests are Impaired. In full settlement, release and discharge of all Class 5 Allowed Equity Interests, the Debtors shall, on the Distribution Date, distribute to the holders of Class 5 Allowed Equity Interests their Pro Rata portion of an aggregate number of shares of New Common Stock, which amount represents seventeen and sixty-five one-hundredths percent (17.65%) of the total number of shares of New Common Stock issued from time to time to holders of Class 4 Allowed Claims.

4.06    Warrants, Stock Options and Similar Rights. Each holder of a warrant or stock option to purchase shares of Old Common Stock that is exercisable may elect to exercise such warrant or stock option on or before the Confirmation Date and upon such exercise shall be treated as a holder of Old Common Stock for all distributions and other purposes under the Plan. Holders of any such warrant or stock option shall receive no other distribution under the Plan in respect of such warrant or stock option and on the Effective Date any unexercised warrant or stock option shall be cancelled, void and of no further force or effect. Stock Purchase Rights, to the extent not triggered and exercised by their terms as of the Confirmation Date, shall receive no distribution under the Plan in respect of such unexercised Stock Purchase Rights and on the Effective Date any unexercised Stock Purchase Rights shall be cancelled, void and of no further force or effect.

4.07    Subordination Rights. The classification and treatment all Claims and Equity Interests under the Plan take into consideration all contractual, legal, and equitable subordination rights, whether arising under general principles of equitable subordination, Sections 510(b) and 510(c) of the Bankruptcy Code or otherwise, that a holder of a Claim or Equity Interest may have against other Claim or Equity Interest holders with respect to any distribution made in accordance with the Plan. As of the Effective Date, all contractual, legal, or equitable subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made in accordance with the Plan are discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined. Distributions under the Plan are not subject to payment to any beneficiaries of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by any beneficiary of such terminated subordination rights.

4.08    Withholding Taxes. The Debtors may deduct any applicable federal or state withholding taxes from any distributions made pursuant to the Plan.

4.09    Fractional Shares of New Stock. Fractional shares of New Stock shall not be issued. On the Distribution Date, each holder of an Allowed Claim or Allowed Equity Interest shall receive the total number of whole shares of New Stock to which it is entitled. Any remaining entitlement to fractions of shares of New Stock shall be treated by distributing unallocated shares of New Stock to the holders of Allowed Claims or Allowed Equity Interests having the greatest fractional entitlements until all unallocated shares of New Stock have been distributed.

4.10    Set Offs. The Debtors may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever which the Debtors may have against the holder of such Claim to the extent such claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, of any such claim or counterclaim that they may have against such holder.

4.11    Cram-Down. If any Impaired Class fails to accept the plan by the requisite statutory majorities, the Debtors reserve the right to confirm the Plan by a "cram-down" of such non-accepting Class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Bankruptcy Court declines to impose a "cram-down" on a non-accepting Class unless certain modifications are made to the terms and conditions of such Class' treatment under the Plan, the Debtors reserve the right, without re-solicitation to the extent permitted by the Bankruptcy Code

and the Bankruptcy Rules, to propose any such modifications and to confirm the Plan as modified by the required modification.

## ARTICLE 5
## IMPLEMENTATION OF THE PLAN

5.01    Prepackaged Plan. The Plan is intended as a prepackaged plan of reorganization, to implement the terms of financial proposals contained in a Term Sheet and Agreement between Kaiser and certain holders of Class 4 Claims acting through the Committee.

5.02    Substantive Consolidation. The Plan shall be implemented through a substantive consolidation of the assets and liabilities of the Debtors. The Confirmation Order shall contain findings supporting and conclusions providing for substantive consolidation for purposes of distribution on the terms set forth in this Section 5.02 of the Plan. The substantive consolidation of the assets and liabilities and properties of the Debtors shall have the effects set forth in this Section 5.02 of the Plan.

    (a)    The Bankruptcy Cases shall be consolidated into the case of Kaiser as a single consolidated case. All property of the estate of each Debtor shall be deemed to be property of the consolidated estates.

    (b)    All Claims against each estate shall be deemed to be Claims against the consolidated estates, any proof of claim filed against one or more of Debtors shall be deemed to be a single claim filed against the consolidated estates, and all duplicate proofs of claim for the same claim filed against more than one Debtor shall be deemed expunged.

    (c)    No distributions under the Plan shall be made on account of Claims based upon intercompany obligations between or among Debtors and between Debtors and their non-Debtor affiliates and all such intercompany obligations shall be eliminated as of the Effective Date and shall not be otherwise treated or affected by the Plan.

    (d)    All equity interests owned by one Debtor in another Debtor or in an affiliate shall remain outstanding after the Confirmation Date and shall not be affected by the confirmation of the Plan.

    (e)    Except as specifically provided herein, all guarantees by one Debtor in favor of any other Debtors shall be eliminated, and no distributions under this Plan shall be made on account of Claims based upon such guarantees.

    (f)    For purposes of determining the availability of the right of setoff under Section 553 of the Bankruptcy Code, Debtors shall be treated as one consolidated entity so that, subject to the other provisions of Section 553,

Library: Cleveland Document #: 167504v15

debts due to any of Debtors may be set off against the debts of any other of Debtors.

(g)     Substantive consolidation shall not merge or otherwise affect the separate legal existence of each Debtor for licensing, regulatory or other purposes, other than with respect to distribution rights under this Plan.

(h)     Substantive consolidation shall have no effect on valid, enforceable and unavoidable liens, except for liens that secure a Claim that is eliminated by virtue of substantive consolidation and liens against collateral that are extinguished by virtue of substantive consolidation.

(i)     Substantive consolidation shall not have the effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation.

(j)     Substantive consolidation shall not effect any applicable date(s) for purposes of pursuing any avoidance actions or other actions reserved to the Debtors pursuant to Section 5.07 of the Plan.

(k)     Substantive consolidation shall not impact or otherwise affect provisions in the Plan which provide that specific entities comprising the Debtors shall be liable on specific obligations under the Plan.

5.03    Ownership of the Reorganized Debtors.  On the Effective Date, simultaneous with the elimination of the Old Common Stock held by holders of Class 5 Equity Interests, Kaiser shall issue 100 shares of common stock to Kaiser Holdings, which shall become the sole shareholder of Kaiser as of the Effective Date.  In addition, on the Effective Date, Kaiser shall transfer to Kaiser Holdings the shares of direct subsidiaries of Kaiser other than Kaiser Government Programs, Inc.

5.04    Vesting of Assets.  Except as provided in Section 5.03 or elsewhere in the Plan, on the Effective Date the assets of each of the Debtors' bankruptcy estates shall vest in the respective Debtors free and clear of all liens and other encumbrances.  After the Effective Date, the reorganized Debtors may operate their businesses and may buy, use, acquire and dispose of their assets, free of any restrictions contained in the Bankruptcy Code.

5.05    Kaiser Government Programs Transactions.  Contemporaneously with the implementation of the Plan, Kaiser Government Programs is expected to consummate an exchange offer with the holders of Old Subordinated Notes.  In such transaction, Kaiser Government Programs will exchange its commitment, under certain circumstances, to purchase shares of New Preferred Stock held by such holders in return for the rights held by such holders under a guarantee issued by Kaiser Government Programs.

5.06    Operations of Reorganized Debtors.  On and after the Effective Date, the reorganized Debtors will continue to operate their businesses and will implement the terms of the Plan.

Library: Cleveland Document #: 167304v15

5.07   Causes of Actions. Debtors shall be the only parties authorized to object to Claims and Equity Interests, and to pursue actions to recover preferences, fraudulent conveyances, and other causes of action recoverable under Section 550 of the Bankruptcy Code. Unless Debtors consent, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any such actions. Notwithstanding confirmation of the Plan and except as otherwise provided in ARTICLE 13 of the Plan, all such actions and any other claims, rights or causes of action in favor of the Debtors shall be preserved and maintained for the benefit of the reorganized Debtors.

5.08   Continuation of Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

5.09   Cancellation of Existing Agreements. Notwithstanding Section 9.01 of the Plan, on the Effective Date (i) the Old Subordinated Notes and all warrants or options to purchase Old Common Stock and (ii) the obligations of the Debtors under the Old Indenture or any and all other agreements, indentures, deeds, guarantees and/or certificates of designations governing, securing, guaranteeing or relating to the Old Securities, as the case may be, shall be discharged.

5.10   Treatment of Guarantees Related to Kaiser-Hill. Notwithstanding Section 11.01 of the Plan or Section 1141 of the Bankruptcy Code, Kaiser's obligations to (i) the United States Department of Energy under its Performance Guaranty Agreement relating to the performance by Kaiser-Hill Company LLC under Contract DE-AC34-00RF1904 (Rocky Flats Closure Contract), and (ii) Bank of America N.A. under its Parent Company Letter Agreement dated November 2, 1999 relating to the performance by Kaiser-Hill Company LLC under a Business Loan Security Agreement dated as of November 2, 1999, shall not be discharged or otherwise effected by confirmation of the Plan, but shall remain in full force and effect notwithstanding such confirmation. Such obligations shall be assumed by Kaiser Holdings as of the Effective Date.

## ARTICLE 6
## PROVISIONS FOR TREATMENT OF
## DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS

6.01   Objections to and Estimation of Claims. The Debtors shall object to the allowance of Claims and Equity Interests with respect to which it disputes liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that the Debtors may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any objections to Claims or Equity Interests. In addition, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim. Unless otherwise ordered by the Bankruptcy Court, the Debtors shall serve and file any objections to Claims and Equity Interests as soon as practicable, but in no event later than the date that distributions would otherwise be made to holders of such Claims or Equity Interests under the Plan.

Library Cleveland Document #: 167304v15

6.02    Plan Reserves. On the Distribution Date, after calculating distributions to holders of Claims and Interests under the Plan, the Debtors shall retain such number of shares of New Common Stock and such New Preferred Stock and shall retain and set aside in the Reserve Fund an amount in Cash, such that the aggregate of such retained New Securities and the aggregate balance of the Reserve Fund (exclusive of any interest earned thereon) shall be sufficient to make all payments and distributions which may be subsequently required by Section 6.03 of the Plan, or such lesser number and amount as may be approved by the Bankruptcy Court from time to time. Cash held by the Debtors in the Reserve Fund shall be invested in accordance with the requirements contained in Section 6.05 of the Plan.

6.03    Subsequently Allowed Claims or Interests. Subsequent to the Distribution Date when a Claim or Interest shall become an Allowed Claim or Allowed Interest, the Debtors shall, as soon as practicable:

> (a)    Pay to the holder of such Allowed Claim, from the Reserve Fund, Cash in an amount equal to the Cash distributions which would have previously been made to such holder by the Debtors, if such Allowed Claim had been an Allowed Claim eligible for distribution on the initial Distribution Date; and

> (b)    Distribute to the holder of such Allowed Claim or Allowed Interest: (i) such amount of New Securities as would have been previously distributed to such holder if such Allowed Claim or Allowed Interest had been an Allowed Claim or Allowed Interest eligible for distribution on the initial Distribution Date; and (ii) an amount equal to any dividends or other payments which would have accrued in respect of such New Securities after the initial Distribution Date.

6.04    Disallowed Claims. Subsequent to the initial Distribution Date, when a Claim or portion of a Claim shall become disallowed by a Final Order, the Debtors shall transfer from the Reserve Fund to their general funds an amount of Cash equal to the amount which would have been required to be distributed pursuant to Section 6.03 of the Plan had such disallowed Claim or portion of a Claim been an Allowed Claim.

6.05    Investment of Reserve Fund. Amounts held in the Reserve Fund shall be invested by the Debtors in: (i) direct obligations of, or obligations secured by, the United States of America; (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; and (iii) certificates of deposit or other demand deposits at any bank or trust company which has, at the time such investment is made, a capital stock and surplus aggregating at least Twenty Five Million Dollars ($25,000,000).

6.06    Interest Earnings. On the last day of each calendar month after the Distribution Date, the Debtors shall transfer to their general funds all interest earned on the Reserve Fund since the last day of the preceding calendar month.

6.07    Payments and Distributions on Disputed Claims. No partial payments and no partial distributions shall be made with respect to a disputed Claim or disputed Equity Interest until the resolution of such disputes by settlement or Final Order. As soon as practicable after a disputed Claim or disputed Equity Interest becomes an Allowed Claim or Equity Interest, the holder of such Allowed Claim or Equity Interest shall receive all payments and distributions to which such holder is then entitled under the Plan.

6.08    Treatment of Cash Reserves for Disputed Class 4 Claims. Any Cash reserved for holders of disputed Claims shall, to the extent that such disputed Claims are disallowed or reduced, thereafter be deemed "Net Cash Proceeds" as provided in the Certificate of Incorporation of Kaiser Holdings and used to redeem shares of New Preferred Stock as provided therein.

6.09    Class 5 Distributions with Respect to Disputed Class 4 Claims. In addition to the distributions made as described in Section 6.07, as soon as practicable after a disputed Class 4 Claim becomes an Allowed Class 4 Claim, the Debtors shall distribute to the holders of Class 5 Allowed Equity Interests their Pro Rata portion of the additional shares of New Common Stock issuable as a result of the distributions made to such holder of an Allowed Class 4 Claim, *provided, however,* that the Debtors shall not be required to make a further distribution under this Section 6.09 more often than once in every six months.

## ARTICLE 7
## CLAIMS OR EQUITY INTERESTS BASED
## UPON INSTRUMENTS OR SECURITIES

7.01    Record Holders of Old Securities. Distributions to the holders of Claims or Equity Interests based on Old Securities shall be made to the owner of record on the Distribution Date. Except as otherwise provided herein, the reorganized Debtors and any transfer or distribution agent shall be entitled to treat the record holder of Old Securities as the sole holder of any Claim or Equity Interest evidenced thereby for purposes of all notices, payments or other distributions under the Plan. No notice of any transfer of any such Old Security shall be binding on the reorganized Debtors or any transfer or distribution agent, unless such transfer has been properly registered in accordance with the provisions of the governing indenture or agreement at least ten (10) business days prior to the day on which any such notice is given or any such payment or other distribution is made. If there is any dispute regarding the identity of the person entitled to receive payment or distribution in respect of a claim or interest under the Plan, no payment or distribution need be made in respect of such claim or interest until the dispute is resolved by the Bankruptcy Court pursuant to a Final Order.

7.02    Allowed Amount of Claims Based on Old Subordinated Notes. A Claim in the aggregate principal amount of $125 million, plus accrued interest through the Filing Date at the rate provided in the Old Indenture for the Old Subordinated Notes, shall be allowed on account of all Claims based on Old Subordinated Notes. Notwithstanding Section 7.01 of the Plan, distributions under ARTICLE 4 of the Plan with respect to the Old Subordinated Notes shall be made to the Old Indenture Trustee on account of such aggregate Allowed Claims. Such amounts

Library: Cleveland Document #: 167504v15

shall be further distributed to individual holders of Allowed Claims based on Old Subordinated Notes as provided in this ARTICLE 7.

7.03    Treatment of Claims Based on Old Subordinated Notes.    All holders of Claims based on Old Subordinated Notes shall surrender their respective Old Subordinated Notes to their respective Old Indenture Trustee in accordance with the written instructions of Kaiser and such Old Indenture Trustee. Upon surrender of such Old Subordinated Notes, the Old Indenture Trustee shall (i) cancel such Old Subordinated Notes and deliver such cancelled Old Subordinated Notes to Kaiser, and (ii) distribute to the holders of such Allowed Claims their Pro Rata share of the Cash and New Securities distributable on account of such Allowed Claim as described in ARTICLE 4 of the Plan.

7.04    Surrender of Old Subordinated Notes.    No distribution shall be made to holders of Claims based on Old Subordinated Notes until such time as such holders shall have surrendered or be deemed to have surrendered their Old Subordinated Notes in accordance with this ARTICLE 7.

7.05    Lost Instruments.    Any holder of a Claim based on Old Subordinated Notes that have been lost, stolen, mutilated or destroyed shall, in lieu of surrendering such Old Subordinated Notes as provided in this ARTICLE 7, deliver (i) evidence reasonably satisfactory to the respective Old Indenture Trustee and/or Kaiser, of the loss, theft, mutilation or destruction of such Old Subordinated Notes and (ii) such security or indemnity as may be reasonably required by the Old Indenture Trustee or Kaiser, to save each of them harmless with respect thereto. Upon compliance with this Section 7.05 by a holder of a Claim based on Old Subordinated Notes, such holder shall, for all purposes under the Plan, be deemed to have surrendered its Old Subordinated Notes.

7.06    Unsurrendered Instruments.    Any holder of a Claim based on Old Subordinated Notes, which shall not have surrendered, or be deemed to have surrendered, its Old Subordinated Notes within two (2) years after the Confirmation Date shall receive no distributions on such Claim under the Plan and shall be forever barred from asserting any claim thereon. Thereupon, the respective Old Indenture Trustee shall return to Kaiser the portion of the New Securities distributed to it pursuant to ARTICLE 4 of the Plan allocable to such non-surrendering holders of Claims based on Old Subordinated Notes. Upon the return of such funds by the Old Indenture Trustee, such Old Indenture Trustee shall have no further responsibility regarding the distributions otherwise required to be made by it pursuant to ARTICLE 4 of the Plan.

7.07    Cancellation of Old Indenture.    Except for (i) distributions for the benefit of holders of Claims based on Old Subordinated Notes under the Plan, and (ii) payment or reimbursement obligations owed by Kaiser to the Old Indenture Trustee for the Old Subordinated Notes, which obligations shall be satisfied and performed as Class 3 Claims, the rights and obligations of all parties under the Old Indenture and the Old Subordinated Notes issued thereunder shall be terminated and cancelled as of the Effective Date and all holders of Old Subordinated Notes will be deemed to have released all such claims against the Old Indenture Trustee, Debtors and all of Debtors' affiliates.

# ARTICLE 8
## CONDITIONS TO CONFIRMATION
## AND EFFECTIVENESS OF THE PLAN

8.01    Conditions to Confirmation.    The confirmation of the Plan by the Bankruptcy Court shall be subject to, and conditioned upon, (i) the Confirmation Order being entered in form and substance reasonably acceptable to the Debtors and the Committee, (ii) to the extent that the Plan has been amended or modified by the Debtors in any material respect, such modifications shall have been approved by the Committee, which approval shall not have been unreasonably withheld, and (iii) aggregate Claims based on Old Subordinated Notes shall have become Allowed Claims as provided in Section 7.02 of the Plan.

8.02    Conditions to Effectiveness.    The effectiveness of the Plan shall be subject to, and conditioned upon, (i) the Confirmation Order becoming a Final Order, (ii) no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code having been made, or, if made, remaining pending, (iii) the Debtors retaining sufficient Cash on the Effective Date to make required distributions to holders of Allowed Claims on the Distribution Date, (iv) the Debtors receiving all regulatory approvals and all other material approvals, permits, authorization, consents, licenses, and agreements from other third parties necessary or appropriate to permit the transactions contemplated by the Plan and any related agreements and to permit the Debtors to carry on its business after the Effective Date in a manner consistent in all material respects with the manner in which it was carried on before the Effective Date.

8.03    Effect of Failure of Conditions.    Notwithstanding entry of the Confirmation Order, if each of the conditions set forth in Section 8.02 of the Plan has not been satisfied or duly waived by the Debtors (with the approval of the Committee, which approval shall not have been unreasonably withheld) within 60 days after the Confirmation Date, then upon motion by the Debtors or any party in interest made before the time that each of the conditions has been satisfied or duly waived, the order confirming the Plan may be vacated by the Bankruptcy Court; *provided, however,* that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions set forth in Section 8.02 of the Plan is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 8.03 of the Plan, the Plan shall be void and of no effect.

## ARTICLE 9
### EXECUTORY CONTRACTS

9.01    Assumption of Executory Contracts. Any and all leases and executory contracts of the Debtors not expressly rejected by the Debtors pursuant to order of the Bankruptcy Court entered on or before the Confirmation Date shall be deemed assumed pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code upon the entry of the Confirmation Order.

9.02    Cure of Defaults on Assumed Contracts. The Debtors believe that, except as otherwise specifically set forth on Exhibit B to the Plan, they are current in the performance of the executory contracts and unexpired leases to be assumed under the Plan. As such, the Debtors have determined that there are no amounts to be paid as a condition to assumption of the executory contracts and unexpired leases under Section 365(b) of the Bankruptcy Code.

        (a)    Any objection to the assumption of any executory contract or unexpired lease and any proof of claim asserting that there are amounts or defaults that must be paid or cured as a condition to the assumption of any executory contract or unexpired lease must be filed with the Bankruptcy Court and delivered to the attorneys for the Debtors on or before the date and time set by the Court as the last date and time on which to file and deliver objections to the confirmation of the Plan.

        (b)    The holder of any such objections or cure claim shall be forever estopped from asserting such objection or claim if not so timely filed and delivered. The Debtors reserve the right to reject any executory contract or unexpired lease with respect to which any such objection or claim is filed.

        (c)    The Bankruptcy Court will resolve any such objection at the hearing on the confirmation of the Plan. Any such claim shall be treated as a disputed administrative expense under the Plan and shall be reviewed and, where appropriate, objected to by the Debtors and thereafter resolved in accordance with the Bankruptcy Code and the Bankruptcy Rules.

        (d)    Any unpaid amounts or uncured defaults that must be paid or cured as a condition of assumption under Section 365(b), will be paid by the Debtors promptly after the amount of such claim has been determined by as Final Order. A determination by the Court of the amount of such a Claim will bar the assertion of any additional Claim that was or could have been asserted for defaults or unpaid amounts under such executory contract or unexpired lease.

9.03    Executory Contracts Expressly Rejected. Set forth on Exhibit B to the Plan is a schedule of those executory contracts or unexpired leases that Debtors intend to reject upon confirmation of the Plan provided that the sublicense of the Grand Paroisse Process and Technical Information contained in Engineering, Procurement and Construction Agreement effective November 1, 1996 between PCS Nitrogen Fertilizer L.P. and ICF Kaiser Engineers,

Inc. and Henry J. Kaiser Company, Inc. is not executory and is not rejected.

9.04   Compensation and Benefit Programs. All employment and severance policies, and all compensation and benefit plans, policies, and programs of Kaiser applicable generally to its employees or retirees and the employees or retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, are treated as executory contracts under the Plan and shall be assumed pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code upon the entry of the Confirmation Order.

9.05   Approval of Assumption or Rejection. Entry of the Confirmation Order shall constitute: (i) approval, pursuant to Section 365(a) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 9.01 of the Plan; and (ii) approval pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases rejected in accordance with Section 9.03 of the Plan. Notwithstanding anything contained herein to the contrary, the Debtors hereby retain the right to add or delete any executory contract or unexpired lease that is designated for assumption or rejection at any time prior to the Confirmation Date, upon notice to parties affected by such change.

9.06   Post-Petition Date Contracts and Leases. Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by the Debtors shall be performed by the Debtors in the ordinary course of business.

9.07   Bar Date. All proofs of claim with respect to claims arising from the rejection of any contract or unexpired lease shall be filed with the Bankruptcy Court and served on counsel for the Debtors no later than thirty (30) days after the Confirmation Date. Any claim not filed within such date shall be forever barred from assertion against the Debtors and their respective estates.

## ARTICLE 10
## ORGANIZATION OF KAISER HOLDINGS

10.01   Certificate of Incorporation and ByLaws. The Certificate of Incorporation and ByLaws of Kaiser Holdings shall be as set forth in Exhibit C to the Plan.

10.02   Board of Directors. The initial board of directors of Kaiser Holdings shall consist of the persons described in the Disclosure Statement dated as of the date of the Plan or otherwise identified in materials filed with the Bankruptcy Court not less than ten (10) days prior to the Confirmation Date.

10.03   Corporate Actions. On the Effective Date, the operation of Kaiser Holdings shall become the general responsibility of its Board of Directors, subject to, and in accordance with, its Certificate of Incorporation and Bylaws. After the Effective Date, if Kaiser Holdings proposes to take an action that would require shareholder approval, but such approval may not be readily solicited because the distribution of the New Common Stock under the Plan has not been

completed, then, in lieu of shareholder approval, Kaiser Holdings may seek Bankruptcy Court approval of such action upon notice to all parties who are entitled to a distribution of New Common Stock under the Plan. Upon Bankruptcy Court approval, Kaiser Holdings shall be authorized to take such action.

## ARTICLE 11
## DISCHARGE

11.01 Discharge. Confirmation of the Plan shall discharge the Debtors from any debt that arose before the Confirmation Date, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:

(a)    a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

(b)    a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

(c)    the holder of a Claim based upon such debt has accepted the Plan.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.01 Retention of Jurisdiction.    The Bankruptcy Court shall retain exclusive jurisdiction of these proceedings for the following purposes, inter alia:

(a)    to determine any and all pending applications, adversary proceedings and contested matters;

(b)    to determine any and all objections to the allowance of Claims and Equity Interests;

(c)    to determine any and all applications for allowance of compensation and reimbursement of expenses;

(d)    to determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

(e)    to effectuate payments under and performance of the provisions of the Plan;

(f)    to enter such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     to determine the Debtor's motion, if any, to modify the Plan in accordance with Section 1127 of the Bankruptcy Code;

(h)     to issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the order confirming the Plan;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

(k)     to hear and determine any issue for which the Plan or any related document requires a Final Order of the Bankruptcy Court;

(l)     to enter a final decree closing the Bankruptcy Case; and

(m)     to determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

# ARTICLE 13
## RELEASES

13.01  Releases by Holders of Claims and Equity Interests. As of the Effective Date, in consideration for the obligations of the Debtors and the reorganized Debtors under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (i) each holder of a Claim or Equity Interest that votes in favor of the Plan and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or stockholder of any of the Debtors and that does not vote on the Plan will be deemed to forever release, waive and discharge all claims (including derivative claims), obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtors' or the reorganized Debtors' obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder or contracts assumed by the Debtors in connection therewith), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Bankruptcy Cases or the Plan that such entity has, had or may have against any Debtor, the members of the Committee and each of their respective present or former directors, officers, employees, attorneys, accountants, underwriters, investment bankers, financial advisors and agents, acting in such capacity (which release will be in addition to the discharge of Claims and termination of

Equity Interests provided in the Plan and under the Confirmation Order and the Bankruptcy Code).

13.02  Releases by the Debtors.  As of the Effective Date, for good and valuable consideration, each of the Debtors in their individual capacities and as a debtor in possession will be deemed to forever release, waive and discharge any present or former officer, director or employee of any of the Debtors, the members of the Committee and each of their respective present or former directors, officers, employees, attorneys, accountants, underwriters, investment bankers, financial advisors and agents, acting in such capacity, for and from any and all claims (including derivative claims), obligations, suits, judgments, damages, demands, debts, rights, rights of setoff (except as otherwise expressly provided in Section 13.03 of the Plan), causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date (excluding the right to enforce the terms of the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder).

13.03  Limitations on Releases.  The release set forth in Section 13.01 of the Plan shall not apply to claims (i) based on gross negligence, willful misconduct or fraud, and (ii) by holders of Claims or Equity Interests that have voted against the Plan or have objected to such release. The release set forth in Section 13.02 of the Plan shall not apply to claims (i) based on gross negligence, willful misconduct or fraud, (ii) for indebtedness of any released party to any of the Debtors for funds advanced to such released party, (iii) which are currently asserted in a case or proceeding brought by any Debtors and currently pending against such released party, and (iv) which are asserted solely as a set-off or counterclaim with respect to a Claim asserted by such released party, *provided, however,* that the amount of the set-off or counterclaim that is not released shall not exceed the aggregate amount of such released party's asserted Claim against the Debtors.

13.04  Savings Clause.  If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the releases provided for herein, then the Plan may be confirmed with such portion excised so as to give effect as much as possible to the foregoing releases without preventing confirmation of the Plan.

**ARTICLE 14**
**REGISTRATION RIGHTS**

14.01  Scope and Effect.  The provisions of this ARTICLE 14 shall be applicable with respect to any person or entity who or which shall become a Major Stockholder by virtue of the distribution of New Common Stock or New Preferred Stock (together, the "New Stock") under this Plan to such person or entity or the subsequent ownership thereof.  Major Stockholders shall have only such rights as are provided in this ARTICLE 14 respecting the subject matter hereof and, to the extent they avail themselves of such rights, Major Stockholders shall be deemed to have agreed to and shall be bound by the provisions of this ARTICLE 14.

14.02  Requests for Registration.  Subject to the provisions of this Section 14.02, a Major Stockholder may request in writing that Kaiser Holdings register all, but not less than all, of the New Common Stock and/or New Preferred Stock owned by the Major Stockholder.  Subject to the provisions of this Section 14.02, upon receipt of such a written request, Kaiser Holdings shall (i) promptly give written notice of such request to each other Major Stockholder, (ii) promptly prepare and file a registration statement under the Securities Act covering the New Stock that is the subject of such request and, subject to the provisions of this Section 14.02, all other shares of New Stock requested to be included in such registration statement by each other Major Stockholder by written notice given to Kaiser Holdings within 30 days after Kaiser Holdings' written notice to them, and (iii) use its best efforts to cause such registration statement to become effective as expeditiously as possible and, for other than an underwritten offering, maintain such registration statement current for 12 months.

(a)  In connection with the registration of New Stock, Kaiser Holdings agrees to use its best efforts to register or qualify the New Stock for offer or sale under state securities or Blue Sky laws of such jurisdictions in which Major Stockholders shall reasonably request; provided, however, that no qualification shall be required in any jurisdiction where, as a result thereof, Kaiser Holdings would be subject to service of general process or to taxation as a foreign corporation doing business in such jurisdiction to which it is not then subject.

(b)  If a requested registration involves an underwritten public offering in which the obligation of the underwriters is to take all of the shares to be sold if any are taken, other Major Stockholders may include shares of New Stock in such registration only to the extent that such inclusion will not interfere with the successful public offering and sale of the New Stock requested to be registered by the initial requesting Major Stockholder. (In connection with the registration of New Stock in an underwritten offering, Kaiser Holdings agrees to enter into a cross-indemnity agreement, in customary form, with each underwriter, if any, and each Major Stockholder included in such registration statement.)

(c)  If in the good faith judgment of the managing underwriter of such public offering, the inclusion of all shares of New Stock requested for inclusion by other Major Stockholders would so interfere with the successful public offering and sale of the securities requested to be registered by the initial requesting Major Stockholder, the number of shares of New Stock requested to be included by other Major Stockholders shall be reduced pro rata or, if necessary in such managing underwriter's good faith judgment, shall not be included in the registration.

(d)  No Major Stockholder shall be entitled to make a request for registration pursuant to this Section 14.02 until one year from the Effective Date, and no Major Stockholder shall be entitled to make more than one request for

Library: Cleveland  Document #: 167504v15

registration for the New Common Stock and/or the New Preferred Stock so held pursuant to this Section 14.02.

(e)  Kaiser Holdings shall not be obligated to file a registration statement under the Securities Act in response to a request from a Major Stockholder unless and until such time as Kaiser Holdings is eligible to use Form S-3 to register the New Stock in the context of a secondary offering (but Kaiser Holdings agrees for the benefit of the Major Stockholders to timely make all required filings under the Exchange Act to such end), and Kaiser Holdings shall not be required to effect more than one registration pursuant to this Section 14.02 in any twelve-month period.

(f)  The registration rights provided by this Section 14.02 shall expire on December 31, 2007. All reasonable fees, costs and expenses in connection with a registration effected under this Section 14.02, including (without limitation) all federal and state registration, filing and qualification fees, printing expenses, fees and expenses of counsel and accountants for Kaiser Holdings, shall be borne by Kaiser Holdings. The Major Stockholders shall bear their pro rata share of any underwriting discount and commission, and any fees and disbursements of legal counsel and accountants hired by them in connection with such registration. Notwithstanding the foregoing, Kaiser Holdings shall not be required to file a registration statement to include New Stock pursuant to this Section 14.02 if independent counsel, reasonably satisfactory to the Major Stockholders, renders an opinion to Kaiser Holdings that the New Stock proposed to be disposed of may be transferred pursuant to the provisions of Rule 144 under the Securities Act or otherwise without registration under the Securities Act.

14.03  Public Information. With a view to making available to the Major Stockholders the benefits of Rule 144 promulgated under the Securities Act and any other rule or regulation of the SEC that may at any time permit a Major Stockholder to sell securities of Kaiser Holdings to the public without registration or pursuant to a registration on Form S-3, Kaiser Holdings agrees to:

(a)  make and keep public information available, as those terms are understood and defined in SEC Rule 144, commencing 90 days after the Effective Date and so long as Kaiser Holdings remains subject to the periodic reporting requirements under Section 13 or 15(d) of the Exchange Act;

(b)  file with the SEC in a timely manner all reports and other documents required of Kaiser Holdings under the Securities Act and the Exchange Act; and

(c)  furnish to any Major Stockholder, so long as accurate and so long as the Major Stockholder owns any New Stock, forthwith upon request (i) a

Library: Cleveland Document #: 167704v15

written statement by Kaiser Holdings that it has complied with the reporting requirements of SEC Rule 144, the Securities Act and the Exchange Act, (ii) a copy of the most recent annual or quarterly report of Kaiser Holdings and such other reports and documents so filed by Kaiser Holdings, and (iii) such other information as may be reasonably requested in availing any Major Stockholder of any rule or regulation of the SEC which permits the selling of any such securities without registration.

14.04  Registration by Kaiser Holdings.  If at any time after the distribution of New Stock pursuant to this Plan and prior to December 31, 2007, Kaiser Holdings shall determine to file a registration statement under the Securities Act (on a form that can be used for a secondary distribution other than Form S-4 or Form S-8) in connection with a proposed underwritten public offering of Kaiser Holdings New Common Stock or New Preferred Stock solely for cash and for its own account, Kaiser Holdings shall give each Major Stockholder written notice of such determination.

(a)     Within 30 days after the giving of such notice by Kaiser Holdings, any Major Stockholder may request in writing that Kaiser Holdings include in such registration all or any portion of the shares of New Common Stock or New Preferred Stock, as the case may be, owned by such Major Stockholder.  Kaiser Holdings will cause all shares of New Common Stock or New Preferred Stock, as the case may be, which are the subject of such a request from a Major Stockholder to be included in such registration, subject to the provisions of this Section 14.04.

(b)     All shares of New Common Stock or New Preferred Stock owned by a requesting Major Stockholder and included in such registration shall be included in the underwriting on the same terms and conditions as the securities otherwise being sold through the underwriters.

(c)     If, however, in the good faith judgment of the managing underwriter of such public offering, the inclusion of all shares of New Common Stock or New Preferred Stock, as the case may be, requested for inclusion by Major Stockholders would interfere with the successful public offering and sale of the securities being offered by Kaiser Holdings, the number of shares of New Common Stock or New Preferred Stock, as the case may be, requested to be included by Major Stockholders shall be reduced pro rata or, if necessary in such managing underwriter's good faith judgment, shall not be included in the registration.

(d)     All of the reasonable fees, costs and expenses of a registration pursuant to this Section 14.04, including (without limitation) all federal and state registration, filing and qualification fees, printing expenses, fees and expenses of counsel and accountants for Kaiser Holdings, shall be borne by Kaiser Holdings, except that any Major Stockholder having shares of New Common Stock or New Preferred Stock, as the case may be, included

in any such registration shall bear its pro rata share of any underwriting discount and commission and shall bear any fees and disbursements of legal counsel and accountants hired by such Major Stockholder in connection with such registration.

14.05  Indemnification.

(a)  Kaiser Holdings will indemnify and hold harmless each Major Stockholder having shares of New Common Stock or New Preferred Stock included in a registration pursuant to this ARTICLE 14, together with each of its officers, partners and directors and each person controlling such Major Stockholder (within the meaning of Section 15 of the Securities Act), from and against all claims, losses, damages, costs and expenses to which any of them may become subject under the Securities Act, state securities laws or otherwise, arising out of or based upon any untrue statement or alleged untrue statement of a material fact contained in any registration statement, any prospectus or any other related document, or arising out of or based upon any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, except that Kaiser Holdings shall not be liable in any such case to the extent that any such claim, loss, damage, cost or expense arises out of or is based upon any untrue statement or alleged untrue statement or omission or alleged omission based upon information furnished to Kaiser Holdings by any Major Stockholder or any officer, partner, director or controlling person of a Major Stockholder.

(b)  Each Major Stockholder shall, severally and not jointly, if shares of New Common Stock or New Preferred Stock owned by it are included in a registration which is the subject of this ARTICLE 14, based pro rata on the number of each Major Stockholder's shares included in the registration, indemnify and hold harmless Kaiser Holdings and each of its officers and directors and each person controlling Kaiser Holdings (within the meaning of Section 15 of the Securities Act), and each other Major Stockholder with shares of New Common Stock or New Preferred Stock included in any such registration, together with the officers and directors of and each person controlling such other Major Stockholder (within the meaning of Section 15 of the Securities Act), from and against all claims, losses, damages, costs and expenses to which any of them may become subject under the Securities Act, state securities laws or otherwise, arising out of or based upon an untrue statement or alleged untrue statement of a material fact contained in any registration statement, any prospectus or any other related document, or arising out of or based upon any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, except that such Major Stockholder shall be liable in any such case only to the extent

that the untrue statement or alleged untrue statement or omission or alleged omission is based upon information furnished to Kaiser Holdings by such Major Stockholder specifically for use in such registration.

(c)    Promptly after receipt by an indemnified party under Section 14.05(a) or Section 14.05(b) of the Plan of notice of the commencement of any action involving the subject matter of the foregoing indemnity provisions, such indemnified party shall, if a claim is to be made against the indemnifying party pursuant to the provisions of Section 14.05(a) or Section 14.05(b) of the Plan, notify the indemnifying party of the commencement thereof, but the omission to so notify the indemnifying party shall not relieve it from any liability which it may have to an indemnified party. The indemnifying party shall have the right to participate in and, to the extent that it may wish, singly or jointly with any other indemnifying party similarly notified, to assume the defense thereof, with counsel reasonably satisfactory to such indemnified party, and after notice from the indemnifying party to such indemnified party of its election to so assume the defense thereof, the indemnifying party shall not be liable to such indemnified party pursuant to the provisions of said subsections (a) or (b) for any legal or other expense subsequently incurred by such indemnified party in connection with the defense thereof. No indemnifying party shall be liable to an indemnified party for any settlement of any action or claim without the consent of the indemnifying party, which consent may not be unreasonably withheld.

## ARTICLE 15
## MISCELLANEOUS

15.01  Headings.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

15.02  Severability.  Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

15.03  Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Virginia.

15.04  Successors and Assigns.  The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

Library: Cleveland Document #: 167504v15

15.05  Revocation of the Plan.  The Debtors reserve the right to revoke and withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtor.

15.06  Survival of Indemnification Obligations.  The obligations of Kaiser or the other Debtors to indemnify present or former directors, officers, agents, employees and representatives, pursuant to their certificates of incorporation and bylaws and applicable statutes, in respect of all future actions, suits and proceedings against any of such officers, directors, agents, employees and representatives, based upon any act or omission related to service with or for or on behalf of the Kaiser or the other Debtors, shall not, with respect to any such party that is bound by or otherwise agrees to the releases contained in Section 13.01 of the Plan, be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by Kaiser Holdings and the reorganized Debtors regardless of such confirmation, consummation and reorganization.  Such surviving indemnity obligations shall not include claims by present or former directors, officers, agents, employees and representatives currently named as defendants in any actions, suits or proceedings pending as of the Petition Date.

15.07  Effectuating Documents; Further Transactions; Timing.  Each of the officers of the Debtors shall be deemed to be authorized under resolutions of the respective Debtors' boards of directors to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and to take such action(s) as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

15.08  Exemption from Transfer Taxes.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of equity securities, or other estate property under the Plan shall not be subject to any stamp, real estate, transfer, mortgage, recording or other similar tax.

15.09  Exculpation.  Neither the Debtors nor any of their directors, officers, employees, advisors, affiliates or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with or arising out of, confirmation or consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence, and in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

15.10  Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of the Debtors, the holders of all Claims and Equity Interests and their respective successors and assigns.

15.11  Modification of Payment Terms.  The Debtors reserve the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

15.12  Notices.  Any notice required or permitted to be provided under the Plan shall be in writing and served by: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; or (c) reputable overnight carrier service, freight prepaid, to be addressed as follows:

If to the Debtors, to:

> Kaiser Group International, Inc.
> 9300 Lee Highway
> Fairfax, VA 22031
>     Attention: Chief Executive Officer
>         Fax:  (703) 934-3199

with a copy to:

> G. Christopher Meyer
> Squire, Sanders & Dempsey L.L.P.
> 4900 Key Tower
> 127 Public Square
> Cleveland, OH  44114-1304
>     Fax: (216) 479-8776

15.13  Dissolution of Official Committees.  Except as otherwise provided in any order of the Bankruptcy Court, on the Effective Date, any official committees of the holders of Claims or Equity Interests shall be dissolved and the members of any such committees shall thereupon be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Cases, except for the preparation and filing of applications for payment of professionals.

15.14  Post-Confirmation Fees And Reports.  Unless otherwise ordered by the Bankruptcy Court, the Debtors shall be responsible for the timely payment of all fees incurred pursuant to Section 1930 of Title 28 to the United States Code. Unless otherwise ordered by the Bankruptcy Court, the Debtors also shall file with the court, and serve on the U.S. Trustee, a quarterly financial report for each quarter (or portion thereof) that the Bankruptcy Cases remain open, in a format prescribed by the U.S. Trustee in accordance with the guidelines of the Office of the U.S. Trustee.

Library: Cleveland Document #: 167004v15

Received 11/15/2000 04:16PM in 01:06 on line [3] for 2228 WORKSRV1 printed B0077CEA on 11/15/2000  04:18PM  * Pg 2/2
       NOV 15 '00  05:15PM ICFKAISER ENGINEERS                                                        P.2

Fairfax, Virginia
November 15, 2000

**KAISER GROUP INTERNATIONAL, INC.**

By: _____ /s/ James V Maiwurm _____

James J. Maiwurm
Chairman, President and Chief
Executive Officer

## SUMMARY OF EXHIBITS

| Exhibit | Document | Plan Reference(s) |
|---------|----------|-------------------|
|         |          |                   |
| A | Definitions | 1.01 |
| B | Executory Contracts | 9.03 |
| C | Certificate of Incorporation and Bylaws of Kaiser Holdings | 10.01 |

# EXHIBIT A

## DEFINITIONS

"**Allowed**" shall mean, with respect to any Claim or Equity Interest, a Claim or Equity Interest, proof of which was filed on or before the date, if any, designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim or Equity Interest, or that has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim or Equity Interest as to which no objections to the allowance thereof has been filed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or Equity Interest in whole or in part.

"**Asset Sale Proceeds**" shall mean, as of any date, the net Cash proceeds held by the Debtor from sales of assets made by the Debtors during the Bankruptcy Cases pursuant to Section 363(b) of the Bankruptcy Code, together with interest earnings on such proceeds during the period between the Effective Date and the Distribution Date, after provision for (i) all legal, title and recording tax expenses, commissions and other fees and expenses incurred, and all Federal, state, foreign and local taxes required to be paid or accrued as a liability under generally accepted accounting principles, as a consequence of such sales, and (ii) Cash distributions required pursuant to the Plan, and (iii) amounts reasonably required by the Debtors for working capital purposes, after taking into account Debtors' revenues and other sources of working capital.

"**Bankruptcy Cases**" shall mean the bankruptcy case(s) commenced in the Bankruptcy Court by any of the Debtors.

"**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

"**Bankruptcy Court**" shall mean the court in the District of Delaware conferred with authority over the Debtor's Chapter 11 case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

"**Bankruptcy Rules**" shall mean the Bankruptcy Rules as in effect on the Petition Date, together with local rules adopted by the Bankruptcy Court, or such similar rules as may be in effect from time to time in the Bankruptcy Court.

"**Cash**" shall mean cash, cash equivalents, and other readily marketable securities or instruments.

"**Claim**" shall mean any claim against the Debtors as defined in the Bankruptcy Code which has not been disallowed by an order of the Bankruptcy Court or for which an order of disallowance of the Bankruptcy Court has been reversed on appeal by a Final Order of an appellate court.

"Class" shall mean any group of holders of Claims or Equity Interests as specified in ARTICLE 3 of the Plan.

"Committee" shall mean the unofficial noteholders' committee that prior to the commencement of the Bankruptcy Cases negotiated and approved the terms of the Plan, and if it is representative of the interests of the holders of Old Subordinated Notes and other creditors of the Debtors, the Official Unsecured Creditors' Committee appointed during the Bankruptcy Cases.

"Confirmation Date" shall mean the date on which the Confirmation Order is entered.

"Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Convenience Claims" shall mean Unsecured Claims of creditors for liabilities which would otherwise be Class 4 Claims but which either (i) are for $20,000 or less or which have been reduced to $20,000 at least ten days prior to the Distribution Date by written election of such creditors in form and substance satisfactory to the Debtors, or (ii) were incurred by the Debtors for the purchase of products or services in the ordinary course of business of the Debtors by creditors which have been identified by Debtors as vendors which are expected to continue to provide Debtors with products or services important to the Debtors' operations after the Confirmation Date.

"Debtors" shall mean, collectively, Kaiser and its affiliates that are debtors in the Bankruptcy Cases and, from and after the Effective Date, shall include Kaiser Holdings or any other successor to Kaiser or the other Debtors under the Plan.

"Distribution Date" shall mean the later of (i) the fifth business day after the Effective Date, and (ii) the date on which Debtors determine that the aggregate of Class 4 Allowed Claims and other Class 4 Claims for which a Cash reserve is required pursuant to Section 6.02 of the Plan has been reduced to less than $225 million, *provided, however,* that notwithstanding the amount of Class 4 Claims, the Distribution Date shall occur no later than one hundred twenty (120) days after the Effective Date, unless such period is extended by the Bankruptcy Court at the Debtors' request and for cause shown.

"Effective Date" shall mean the first business day after the latter of (i) the tenth day after entry the Confirmation Order and (ii) the date on which the conditions in Section 8.02 of the Plan have been satisfied or been waived in accordance with that Section.

"Equity Interest" shall mean any rights of holders of issued and outstanding shares of Old Common Stock or other equity securities of Kaiser in respect thereof, together with (i) any rights of holders of options, warrants or other rights to acquire such shares of Old Common Stock or equity securities of Kaiser as of the Filing Date, and (ii) any claim arising from rescission of a purchase or sale of any such security, or for damages arising from the purchase or sale of any such security, or for reimbursement or contribution on account of any such claim.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended.

"Filing Date" shall mean the date of the filing by the Debtors of their voluntary petitions commencing the Bankruptcy Cases.

"Final Order" shall mean an order as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for filing a notice of appeal or petition for certiorari has expired and no notice of appeal or petition for certiorari has been timely filed.

"Impaired" shall mean, with respect to any Claim, Equity Interest or Class, the condition or effects described in Section 1124 of the Bankruptcy Code.

"Kaiser" shall mean Kaiser Group International, Inc., a Delaware corporation and, from and after the Effective Date, shall include Kaiser Holdings or any other successor to Kaiser under the Plan.

"Kaiser Government Programs" shall mean Kaiser Government Programs, Inc., a Delaware corporation and wholly owned subsidiary of Kaiser that is not a debtor in any of the Bankruptcy Cases.

"Kaiser Holdings" shall mean Kaiser Group Holdings, Inc., a Delaware corporation.

"Major Stockholder" shall mean a holder of 10% or more of the outstanding shares of New Common Stock, or a holder of 10% or more of the outstanding shares of New Preferred Stock, or a person who is an "affiliate" (as defined in the Securities Act) of Kaiser Holdings.

"New Common Stock" shall mean the common stock of Kaiser Holdings, including the shares issued pursuant to ARTICLE 4 of the Plan.

"New Preferred Stock" shall mean the Series 1 Redeemable Cumulative Preferred Stock of Kaiser Holdings, having the terms set forth in the Certificate of Incorporation attached as Exhibit C the Plan, including the shares issued pursuant to ARTICLE 4 of the Plan.

"New Securities" shall mean the New Senior Notes, New Preferred Stock, and the New Common Stock, collectively.

"New Senior Notes" shall mean Kaiser Holdings' 12% Senior Notes due 2005, issued pursuant to ARTICLE 4 of the Plan.

"New Stock" shall mean the New Common Stock and the New Preferred Stock, collectively.

"Old Common Stock" shall mean the common stock, par value $.01 per share, of Kaiser.

"Old Indenture" shall mean the Indenture for the Old Subordinated Notes dated January 11, 1994, as amended.

"Old Indenture Trustee" shall mean The Bank of New York, as the trustee under the Old Indenture.